Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Richard R. Barker
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RONALD CRAIG ILG (a/k/a "SCAR215"),<br><br>Defendant. | 2:21-CR-00049-WFN-1<br><br>UNITED STATES' NOTICE PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b) |

The United States of America, by and through the United States Attorney for the Eastern District of Washington, Vanessa R. Waldref, and Assistant United States Attorney Richard R. Barker, hereby gives notice to the Defendant, Ronald Craig Ilg (a/k/a "SCAR215"), of the United States' intent to introduce evidence pursuant to Federal Rule of Evidence 404(b).

## BACKGROUND

Defendant is charged by way of a Superseding Indictment with seven counts relating to his efforts to hire hitmen and hackers from dark web. Defendant has also sought to prevent witnesses from testifying against him.

To begin, Defendant arranged for a hitman to target a one of Defendant's former work colleagues – Victim 1. In these messages, Defendant paid Bitcoin to a purported

UNITED STATES' FED. R. EVID. 404(b) NOTICE - 1

dark web hitman, directing that Victim 1 "should be given a significant beating that is obvious. It should injure both hands significantly or break the hands." ECF No. 80.

Around this same time, Defendant solicited hitmen to kidnap his estranged wife, Victim 2, in order to compel Victim 2 to drop divorce proceedings against Defendant and persuade Victim 2 to resume her relationship with Defendant. *Id.* To perpetrate the scheme, Defendant transferred more than $50,000 in Bitcoin currency to arrange for the hitmen to kidnap his estranged wife, extort her, and inject her with heroin. Defendant, again using the moniker Scar215, even structured a complex bonus scheme for paying the hitmen, who purported to be affiliated with the "Sinaloa Cartel":

> To earn the additional associated bonus, within 2 weeks of the target being released, she will have completed the specific goal.
>
> 1. Permanently withdraw all court motions and all mediated agreements. Bonus $10k
>
> 2. Return to your husband by asking to move back home AND fucking him at least three times within the 2 week time frame Bonus: $10k
>
> 3. Keep her mouth shut and tell no one, ever about the kidnapping Bonus $10k
>
> 4. Inject her daily with heroin and teach her to do it AND supply pics and videos of her injecting herself. $5k
>
> 5. Plant drugs and used needles with her DNA in the needles through her home. Provide some pics of drugs and needles scattered around $5k

Around this same time, Defendant placed an "order" and paid bitcoin for a dark web hacker to target Victim 2. *See id.* at 3-4. In messages recovered from Defendant's cell phone, Defendant expressed that he wanted a hacker to delete information from Victim 2's phone or make it unusable. In these same text messages, Defendant

UNITED STATES' FED. R. EVID. 404(b) NOTICE - 2

expressed his intent for the hacker to input messages into Victim 2's phone to make it appear that Victim 2 was a drug addict. *See* Bates 00000112.

After Defendant was arrested in this case, he sent a letter to Witness 1, imploring her to marry Defendant as soon as possible, so she could not be compelled to testify against him. *See* ECF No. 80. In the same letter, Defendant promised to pay tuition for Witness 1's children to attend two private schools – Gonzaga Prep and St. Aloysius – in Spokane, Washington. Finally, at the conclusion of the letter, Defendant directed Witness 1 to destroy the letter by burning it.

## LEGAL STANDARD

To establish that evidence of a prior bad act is admissible under Rule 404(b), the United States must show "(1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged." *United States v. Rodriguez*, 880 F.3d 1151, 1167 (9th Cir. 2018) (quoting *United States v. Lloyd*, 807 F.3d 1128, 1157–58 (9th Cir. 2015)). "If the evidence meets this test under Rule 404(b), the court must then decide whether the probative value is substantially outweighed by the prejudicial impact under Rule 403." *United States v. Martin*, 796 F.3d 1101, 1106 (9th Cir. 2015) (quoting *United States v. Bailey*, 696 F.3d 794, 799 (9th Cir. 2012)). As the Supreme Court has explained, "[e]xtrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." *Huddleston v. United States*, 485 U.S. 681, 685 (1988); *see, e.g.*, *United States v. Hinton*, 31 F.3d 817, 822–23 (9th Cir. 1994) (holding, in a prosecution for assault with intent to murder the defendant's wife, that evidence of the defendant's four prior assaults on his wife was admissible on the intent element, despite some differences between the prior assaults and the crime charged); *United States v. Jones*, 982 F.2d 380, 382 (9th Cir. 1992) (concluding, in a prosecution involving a drug trafficking

conspiracy, that evidence of the defendant's prior bad acts were admissible "so long as the acts tended to make the existence of his knowledge or intent more probable than it would be without the evidence").

Evidence that is "inextricably intertwined" with the charged crime <u>need not</u> meet the requirements of Federal Rule of Evidence 404(b). Rather, courts allow evidence to be admitted "when it constitutes a part of the transaction that serves as the basis for the criminal charge." *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995). By way of example, the Ninth Circuit has held, in a case admitting the contemporaneous sale of different types of drugs in a single transaction:

> "The policies underlying rule 404(b) are inapplicable when offenses committed as part of a 'single criminal episode' become other acts simply because the defendant 'is indicted for less than all of his actions."

*United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir.1993) (quoting *United States v. Soliman*, 813 F.2d 277, 278 (9th Cir.1987)). When it is clear that particular acts of the defendant are part of, and thus inextricably intertwined with, a single criminal transaction, courts have generally held that the admission of evidence regarding those acts does not violate Rule 404(b).

Similarly, the Ninth Circuit has allowed "other act" evidence to be admitted when it was necessary to do so in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime. *See Vizcarra-Martinez*, 66 F.3d at 1012 – 1013. As the Court explained in *Vizcarra-Martinez*,

> [I]t is obviously necessary in certain cases for the government to explain either the circumstances under which particular evidence was obtained or the events surrounding the commission of the crime. . . . For example, in *United States v. Daly*, 974 F.2d 1215, 1216 (9th Cir.1992), evidence regarding a shoot-out was considered to be "inextricably intertwined" with the charge that the defendant was a felon in possession of a firearm. We based our holding upon the fact that "evidence regarding the shoot-out was necessary to put [the defendant's] illegal conduct into context and to rebut his claims of self-defense." *Id.* Recognizing the difficulty that the prosecution would encounter in proving that the defendant possessed a gun and in rebutting his proffered defense without relating the facts

UNITED STATES' FED. R. EVID. 404(b) NOTICE - 4

surrounding the commission of the crime, we observed that "the prosecution is not restricted to proving in a vacuum the [charged] offense. '[The jury] cannot be expected to make its decision in a void – without knowledge of the time, place, and circumstances of the acts which form the basis of the charge.'"

*Id.*

Where the other bad act is not "inextricably intertwined" with the offense conduct, Federal Rule of Evidence 404(b) simply provides another mechanism for introducing evidence of a "crime, wrong, or other act." While the Rule does not allow such evidence to "prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," such evidence is properly admissible for other purposes such as "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(1) – (2). Notably, Rule 404(b), is "a rule of inclusion—not exclusion." *United States v. Curtin*, 489 F.3d 935, 944 (9th Cir. 2007) (en banc). It also "covers not just other crimes or wrongs, but also explicitly other acts – if the other acts are relevant to the purposes specified in the rule." *Id.* at 943 n.3.

## DISCUSSION

The United States notices the government's intent to introduce evidence at trial pursuant to Federal Rule of Evidence 404(b) regarding Defendant's activities leading up to and relating to the charges set forth in the Superseding Indictment dated February 1, 2021. These include evidence falling generally within three categories:

(1) Evidence demonstrating Defendant's motive to threaten Victim 1 and corroborating Defendant's identity as the person who used the Dark Web moniker Scar215 to solicit and pay a hitman to threaten and physically assault Victim 1;

(2) Evidence demonstrating Defendant's pattern and practice of seeking control over Victim 2, corroborating Defendant's identity as the person who used the Dark Web moniker "Scar215" to solicit and pay hitmen to threaten and abduct Victim 2, so Defendant could maintain control over Victim 2; and

UNITED STATES' FED. R. EVID. 404(b) NOTICE - 5

(3) Evidence demonstrating Defendant's consciousness of guilt after he was identified by law enforcement as Scar 215.

Evidence relating to each of these categories is set froth in further detail below. In this regard, nearly all of the evidence the United States notices pursuant to Rule 404(b) is inextricably intertwined with the offenses charged in the Superseding Indictment. But even if certain of the evidence described below is not inextricably intertwined with the charged offenses, this evidence is admissible pursuant to Rule 404(b) to show motive, identity, and to demonstrate consciousness of guilt. Such evidence is especially relevant to the extent Defendant puts his identity and/or motive at issue by denying he is Scar215.

1. Evidence Demonstrating Defendant's Motive to Threaten Harm to Victim 1

Counts 1 and 2 of the Superseding Indictment charge Defendant with Threats in Interstate Commerce and Cyberstalking targeted at Victim 1 – Defendant's former work colleague. ECF No. 80. These charges stem from Defendant's efforts to hire a hitman to physically assault Victim 1. *Id.* Specifically, Defendant paid bitcoin currency so the hitman would break Victim 1's hands, which would have been detrimental to Victim 1's livelihood and her medical practice. *Id.*

At trial, the United States therefore anticipates introducing evidence establishing Defendant's intent to harm Victim 1. This evidence consists of the following:

- In December 2019, Victim 1 took a new job, leaving Defendant's practice group. After Victim 1 provided notice that she was leaving the practice, Defendant created a "hostile work environment" for Victim 1 for the remaining time she was there. Bates 00000057. Defendant also made threatening statements toward Victim 1, including a threat to the effect of "if someone goes after [Defendant's] livelihood, they are going after his family, and he takes that directly." *Id.* at 00000057.01-02.

- Defendant blamed Victim 1 for an anonymous complaint while the two were working together. Bates 00000010. As Victim 1 put it, Defendant "hates her." Bates 00000057.01-02.

UNITED STATES' FED. R. EVID. 404(b) NOTICE - 6

- Defendant made unwanted romantic advances toward Victim 1 while they were working together. Bates 00000010. Victim 1, however, rebuffed these advances. *Id.*

- In December 2020, after Defendant was fired from his practice group, Defendant made calls to Victim 1 about joining her practice. Victim 1 did not return Defendant's calls. Bates No. 00000010.

- Consistent with Victim 1's account of Defendant's animosity toward her, Defendant told Witness 1 he made statements that either Victim 1 or another person were responsible for causing Defendant to lose his job. Bates 00000095.04. Victim 2 similarly confirmed Defendant faulted Victim 1 when Defendant did not even receive a call back or interview for a job at Victim 1's new medical practice. Bates 00000109.

In short, Defendant's animosity toward Victim 1 and his frustration with the perceived complaints are inextricably intertwined with Counts 1 and 2 because Defendant's intent is an element of those offenses. Additionally, because Defendant has denied sending threating communications over the Dark Web, Defendant has placed his identity and intent directly at issue. The United States therefore gives notice that the Government will introduce evidence of Defendant's animosity and motive for harming Victim 1 in the government's case-in-chief at trial.

2. Evidence Demonstrating Defendant's Motive to Threaten Victim 2 and His Continuous Efforts to Exert Control over Victim 2

Counts 3-6 of the Superseding Indictment relate to Defendant's scheme to kidnap Victim 2, drug her, extort her, and hack her phone. ECF No. 80. This scheme on its face was intended to compel Victim 2 to return to the failed marriage with Defendant. *Id.* It also demonstrates Defendant's repeated efforts to control Victim 2 and her actions. Significantly, and for purposes of demonstrating identity, motive, and intent, Defendant was trying to control various aspects of Victim 2's life at the time the purported hitmen were hired to kidnap and harm Victim 2. Evidence of Defendant's contemporaneous efforts to control Victim 2 include the following:

- As his marriage with Victim 2 deteriorated, Defendant placed tracking devices

UNITED STATES' FED. R. EVID. 404(b) NOTICE - 7

on Victim 2's car on multiple occasions. These included a diagnostic tool as well as magnetic GPS trackers placed under Victim 2's car. *See* Bates 00000048. Specifically, Defendant placed GPS trackers on Victim 2's car in August 2019, April 2020, and June 2020. Bates 00000198.18. Defendant similarly downloaded a child tracker application to Victim 2's phone in 2019 and threatened to take Victim 2's phone and car away from if she refused to call him "Sir" and did not acquiesce to his sexual requests. *Id.*

- As part of the pattern and practice of exercising control over Victim 2, Defendant directed what Victim 2 would eat as well as her workout routine. Bates 00000057.02. Defendant also exercised control by putting drugging Victim 2, including by putting Xanax in her drinks. *See* Bates 00000060.03.

- During their marriage, Defendant directed Victim 2 to call him "sir" 24/7. Bates 00000060.02. When Victim 2 separated from Defendant and left their shared home, she had to do so while Defendant was out of town. After she left, Defendant "tried everything to get her back" and claimed Victim 2 was "ruining their family." Bates 00000060.02.

- In July 2020, Defendant invited a third party – the Ilg family's 22-year-old nanny – to participate in a "kidnapping scenario" in which Victim 2 would be blindfolded, kidnapped, led outside and placed into a car." Bates 00000072. While the "kidnapping" was discussed in the context of a "roleplay or threesome scenario," the text messages in which Defendant describes the "kidnapping scenario" demonstrate Defendant previously contemplated and even discussed kidnapping Victim 2. *Id.* at 00000072.07

- Consistent with Defendant's request for the Dark Web hitmen to get Victim 2 to drop the divorce proceedings, Defendant attempted to persuade Victim 2 to return to the failed relationship by claiming he would be filing a $10 million wrongful termination suit against his former employer. Defendant also promising Victim 2 he would give her $1,000,000 if she came back to Defendant. Bates 00000109.01.

- At the time Defendant sent the Dark Web messages, he was subject to a protective order. Bates 00000198; 00000199. That order was issued due to Defendant's history of harassing Victim 2. *Id.* at 00000198. Notwithstanding the protective order and a mediated agreement that limited their contact to matters involving their minor child, Defendant continued to harass Victim 2 by writing her unwanted letters, emailing her, and waiting for her outside her place of employment. *Id.* As a result of Defendant's repeated violations of the mediated agreement, Victim 2 sought a second protective order. *Id.*

UNITED STATES' FED. R. EVID. 404(b) NOTICE - 8

- In the time leading up to the Dark Web messages, Defendant left a note by his car with Victim 2's name on it, even though their mediated agreement precluded Defendant from sending such communications to Victim 2. Bates 00000198. When Victim 2 tried to ignore the letter, Defendant directed her to take it. Bates 00000198.10. In the letter, Defendant seeks to manipulate Victim 2 to reconcile with Defendant writing that he has "not moved on" and "can't" move on from Victim 2. Bates 0000198.31. Defendant's letter continues, "I picture you every minute of every day. I long for you to be with me." *Id.* Defendant even states, "I will sell this house and get one that you can call ours. I will put the new house only in your name." *Id.* The letter in some ways is quite similar to the letter Defendant sent to Witness 1, which is the subject of the witness tampering charge in Count 7 of the Superseding Indictment. ECF No. 80.

- Notwithstanding Defendant was already subject to a no-contact order, Defendant repeatedly sent texts and emails about meeting, having dinner, and begging Victim 2 to reconsider her decision to separate from Defendant. Bates at 00000198.11-12. Defendant sent 100s of messages to Victim 2 in December 2020 – just a short time before the kidnapping plot. In these messages, Defendant detailed fantasies pertaining to the relationship with Victim 2. He also sought to pay Victim 2 money if she came back to the relationship. Defendant also threatened to go to Victim 2's home despite Victim 2's opposition. Bates 00000198.17.

In sum, the primary and likely only material issue at trial is whether Defendant is the person who solicited messages threatening to harm his victims by hiring hitmen on the Dark Web. Defendant's obsession with Victim 2 and repeated efforts to keep the relationship together and control Victim 2 strongly corroborate that Defendant used the Scar215 moniker to hire hitmen on the dark websites.[1]

---

[1] As set forth in the parties' pleadings relating to detention in this case as well as in Count 7 of the Superseding Indictment, Defendant also made repeated efforts to control Witness 1, including by sending her a letter imploring her to testify so that Defendant can be part of the decision whether Witness 1 testifies at trial. *See* ECF No. 80. While the United States may not seek to introduce additional evidence of Defendant's efforts to maintain control over Witness 1, the United States reserves the

UNITED STATES' FED. R. EVID. 404(b) NOTICE - 9

    3.   <u>Evidence Demonstrating Defendant's Consciousness of Guilt after FBI Confronted Him with Scar215's Dark Web Plot.</u>

Finally, and while not necessarily subject to Rule 404(b), Defendant's actions and statements after Defendant was confronted with his scheme to hire hitmen on the Dark Web reflect a guilty mind. Stated otherwise, Defendant's admissions by his statements and conduct demonstrate consciousness of Defendant's guilt and authorship of the dark web messages that are the subject of this case. In this regard, the United States hereby notices, the following acts/statements:

- On the evening of April 11, 2021 – the same day Defendant met with the FBI – he attempted to take his own life by taking approximately 40 Xanax pills. Defendant left a suicide note, which was next to FBI Special Agent Barker's business card. In the note, Defendant described his behavior as an "irrevocable fuck up" and pleaded for "forgiveness." He also stated he wanted the "Norm back," but "couldn't see the path. I fucked it up." Defendant further wrote Victim 2 had "a big heart that [Defendant] destroyed," but then added that Victim 2 "mocked my love, you made fun of it." Bates 00000392.09-10.

    Notably, by including the references to Victim 2, whom Defendant was trying to blame as he attempted to take his life, Defendant's letter further corroborates Defendant was upset about Victim 2 leaving him. In other words, just like the author of the Dark Web messages, Defendant expressed anger at Victim 2 for leaving him – i.e., further corroborating that Defendant was the author of the Dark Web messages.

- During the time leading up to, and throughout the period covered in the Superseding Indictment, Defendant made repeated statements to Witness 1 about his dark web activities, even describing an epiphany in which Defendant confessed to Witness 1 that he hired hackers and hitmen from the dark web to target Victim 2. Defendant's statements in text messages and orally to Witness 1 corroborate that Defendant is Scar215. *See, e.g.*, Bates 00000083; 00000144.

---

right to introduce such evidence – e.g., the Master/Slave contract, evidence of physical and sexual abuse, as well as evidence that Defendant confined Witness 1 in a septic tank as a form of punishment – in the event Defendant opens to door to such evidence.

UNITED STATES' FED. R. EVID. 404(b) NOTICE - 10

- Defendant ran a shredder app on his phone on or about April 11, 2021 – i.e., not long before Defendant was interviewed by the FBI. Bates 00000112.01. The shredder app would have deleted much of the content on Defendant's phone. *See id.*

- After Defendant attempted to kill himself and was recovering in the hospital, Defendant made incriminating statements regarding information that he previously provided to the FBI. In a statement, which FBI Senior Supervisory Special Agent overheard, Defendant was speaking on the phone and asked, "Do I tell the attorney the story I started with[,] or do I tell him everything and say, 'what do I do.'" Bates 00000044.

Again, Defendant's statements and actions reflect consciousness of guilt and are admissible as substantive evidence in the United States' case-in-chief.

## CONCLUSION

Discovery relating to the enclosed notice has previously been provided to the defense. As set forth herein, the United States anticipates introducing the foregoing acts as evidence at trial.

Dated this 4th day of February 2022.

        Vanessa R. Waldref
        United States Attorney

        *s/ Richard R. Barker*
        Richard R. Barker
        Assistant United States Attorney

UNITED STATES' FED. R. EVID. 404(b) NOTICE - 11

## **CERTIFICATION**

I hereby certify that on February 4, 2022, I electronically filed the foregoing with the Clerk of the Court and counsel of record using the CM/ECF System.

*s/Richard R. Barker*
Richard R. Barker
Assistant United States Attorney