Carl J. Oreskovich, WSBA #12779
Andrew M. Wagley, WSBA #50007
Etter, McMahon, Lamberson,
Van Wert & Oreskovich, P.C.
618 West Riverside Avenue, Suite 210
Spokane, WA 99201
(509) 747-9100
(509) 623-1439 Fax
Email: carl@ettermcmahon.com
Email: awagley@ettermcmahon.com
*Attorneys for Defendant Ronald Craig Ilg*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>    v.<br><br>RONALD CRAIG ILG,<br><br>                    Defendant. | Case No. 2:21-cr-00049-WFN<br><br>**DEFENDANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED IN VIOLATION OF *MIRANDA***<br><br><u>With Oral Argument</u>:<br>  March 21, 2022 at 8:30 am<br>  Spokane, WA |

COMES NOW, the Defendant Ronald C. Ilg, MD ("Dr. Ilg"), by and through his attorneys of record, and hereby moves the Court for an Order suppressing any and all evidence obtained in violation of the Fifth Amendment of the Constitution of the United States and Dr. Ilg's rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966) and its progeny.

Defendant's Motion to Suppress
Evidence Obtained in Violation
of *Miranda*- Page 1

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201  (509) 747-9100

As explained fully below, Dr. Ilg was subject to approximately two hours of custodial interrogation by Federal Bureau of Investigation ("FBI") agents at the Spokane International Airport when he was isolated in an interview room, with no means of transportation, and his person, phone, and luggage were seized pursuant to a search warrant. However, the FBI did not advise Dr. Ilg of his *Miranda* rights at any point during the custodial interrogation. Furthermore, Dr. Ilg's right to counsel was violated during the course of this custodial interrogation as he unequivocally stated "I prefer . . . to have a lawyer present"; yet, the FBI then executed the search warrant and continued the interrogation despite multiple additional attempts by Dr. Ilg to invoke his right to counsel.

## <u>BACKGROUND</u>

This is a prosecution for attempted kidnapping and various other crimes relating to alleged dark web messages. (*See* ECF No. 80.) Dr. Ilg has pled not guilty and expressly maintains his innocence. The Government's theory of the case is that Dr. Ilg, using the moniker "Scar215," communicated "with various administrators/representatives from dark-web sites to hire someone to harm two individuals in Spokane, Washington." (ECF No. 1 at 4.) On April 11, 2021, Dr. Ilg was interrogated by FBI Agents Christian Parker and Eric Barker in a Spokane International Airport interview room. (ECF No. 1 at 17.) According to

Defendant's Motion to Suppress
Evidence Obtained in Violation
of *Miranda*- Page  2

ETTER, M<sup>c</sup>MAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

the FBI, "[d]uring the interview, ILG admitted to using the dark web to hire a hitman and acknowledged using the moniker SCAR'2something.'" (*Id*. at 16.)

At approximately 5:00 pm on April 11, 2021, Dr. Ilg, his fiancé Witness 1, and her children, were returning from an international trip to Mexico. (Decl. of Ronald C. Ilg, MD ("Ilg Decl.") at ¶ 2.) The couple was separately confronted by various FBI agents in Concourse A of the Spokane International Airport after exiting their Southwest Airlines flight. (Ilg Decl. at ¶ 3.) Dr. Ilg was approached by FBI Agent Parker, who indicated: "Dr. Ilg? Come this way. Special Agent Parker with the FBI." (Decl. of Andrew M. Wagley in Supp. of Def.'s Pretrial Motions ("Wagley Decl."), Ex. C at 3:15-16.) Agent Parker was accompanied by Agent Barker, both were wearing sport coats, and both showed Dr. Ilg their FBI credentials. (*See* Ilg Decl. at ¶ 3.)

FBI Agents Parker and Barker led Dr. Ilg away from the public area of the Spokane International Airport into an internal area with various hallways, offices, and cubicles. (Ilg Decl. at ¶¶ 4-5.) After exiting the public area, the door was shut to the internal area. (*Id.*) The FBI Agents led Dr. Ilg through the internal area for approximately 30-to-45 seconds to an interview room. (*Id.*) This area was poorly lit and appeared to be vacant. (*Id.*) However, Dr. Ilg noticed multiple individuals standing near the cubicles, who later assisted in the

Defendant's Motion to Suppress
Evidence Obtained in Violation
of *Miranda*- Page 3

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

forensic download of his phone.  (*Id.*)  Based upon the route to the interview room, Dr. Ilg was unable to recall how to return to the public area.  (*Id.*)

According to the FBI, "Ilg was taken to a meeting room near the Airport Police office."  (Wagley Decl., Ex. E at 1.)  The "meeting room" had no windows and FBI Agents Parker and Barker sat between Dr. Ilg and the door. (Ilg Decl. at ¶ 6.)  During the course of the interrogation, the FBI retrieved Dr. Ilg's luggage and similarly placed it between him and the door. (*Id.*)  While being questioned, Dr. Ilg could see the firearm of one of the Agents holstered on the inside of his sport coat.  (*Id.*)  The entire encounter with the FBI at the Spokane International Airport lasted over two hours.  (*Id.* at ¶ 8.)

During the interrogation, FBI Agent Barker indicated: "We received some allegations regarding some threats to your wife."  (Wagley Decl., Ex. C at 4:22-24.)  Agent Barker continued:

> We're trying to get things—you know, get some answers to these questions.  Get you in here and get you out of here.  <u>As soon as we're done here, you're out of there.  So we'll, hopefully get you on the road as quick as we can.</u>

(*Id.* at 5:10-14.)  Dr. Ilg responded: "I can catch an Uber, if I need to. . . .  They do have Uber here in Spokane[?]". (*Id.* at 5:15-22.)  Dr. Ilg had originally traveled to the airport in Witness 1's vehicle.  (Ilg Decl. at ¶¶ 2 and 9.)

Defendant's Motion to Suppress
Evidence Obtained in Violation
of *Miranda*- Page  4

ETTER, M<sup>c</sup>MAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

During the beginning stages of the interrogation, FBI Agent Barker asked about "any contacts that you have that might kind of point us in the right direction to either prove this out, disprove it or prove it out." (Wagley Decl. Ex. C at 6:9-12.)  The FBI inquired into Dr. Ilg's divorce, job situation, no-contact order, and child with Victim 2.  (*Id*. at 6-12.)  Multiple minutes in, Agent Parker asked: "Do you have any crypto accounts? . . .  Where?"  (*Id*. at 17:11-14.)  In response, Dr. Ilg stated "should I have a lawyer?"  (*Id*. at 17:15.)  Agent Parker responded: "That's your call. . . .  You're here of your own free will. . . .  we can't give legal advice." (*Id*. a 17:16-23.)  In response, Dr. Ilg provided:

> I watched a recent video about three months ago.  There was a prosecutor and a detective. And both of them said: Never talk to a police officer without a lawyer present.  It doesn't matter if you're guilty or not, never talk to them.  <u>So, I prefer that, at this point, is to have a lawyer present</u>.  Not because I have anything to hide.

(*Id*. at 17:24-25—18:1-7.)

After Dr. Ilg invoked his right to counsel, FBI Agent Parker stated: "<u>With that, we do have a warrant for your personal device. . . .  Well, we actually have a warrant for your person and all your luggage</u>." (Wagley Decl., Ex. C at 18:12-16.)  Agent Parker than mentioned the seizure of Dr. Ilg's phone:

> If you are—if you are interested, as I mentioned, we have a warrant for—for digital items in general but, specifically, for a phone.  <u>If you would like us to forensically image that for you right now and</u>

Defendant's Motion to Suppress
Evidence Obtained in Violation
of *Miranda*- Page 5

ETTER, M<sup>c</sup>MAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

have you wait, when we're done, you can take it with you.  Or we
can take it and you can be on your way.

(*Id*. at 19:11-18.)  In response, Dr. Ilg stated: "Umm. Boy.  It's my only means of communication is why I hesitate."  (*Id*. at 19:19-20.)  Later in the conversation, Agent Parker indicated "we'll get you on your way as soon as we're done with your phone."  (*Id.* at 51:19-21.)

After further discussion of the search warrant, Dr. Ilg provided: "There's one thing that I will share with you. . . .  I will just read it to you, because you are going to see it anyway."  (Wagley Decl., Ex. C at 20:14-17.)  Agent Parker inquired: "Is there a specific app you're looking for or something?" and "If you know the name of it, you can search there."  (*Id*. at 20:22-25—21:1.)  Dr. Ilg indicated: "The last several months have been very difficult. . . .  I have occasionally visited the dark web over the last couple of years and out of curiosity, look at porn and then buying steroids."  (*Id* at 21:5-14.)  Dr. Ilg further allegedly provided that "[t]he hitmen sites intrigued me," "about six to eight weeks ago, my depression was probably at its worse," and "I constantly contemplated suicide."  (*Id*. at 23:7-25.)  Dr. Ilg allegedly stated that he contacted hitmen associated with "MS-13" and "the Sandinista cartel" and transferred Bitcoin to an escrow account. (*Id*. at 25:15-25—29:1-16.)

Defendant's Motion to Suppress
Evidence Obtained in Violation
of *Miranda*- Page  6

ETTER, MᶜMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

Throughout the interrogation, Agent Parker asked various questions, such as "[h]ow long ago was that at his point?" and "how did you communicate?" (Wagley Decl., Ex. C at 26:24-25 and 31:9-10.)   Dr. Ilg then indicated again "I should have a lawyer here." (*Id*. at 32:13.)   After further discussion, Dr. Ilg stated "if we go much further than that, I want to have a lawyer." (*Id*. at 39:12-14.) Agent Parker indicated:

> We know your moniker is "Scar215." . . .  And we have your transcript, as you communicated with the cartel.  So, the document that you've read is a great document to deflect.  It's a great document to explain why the Bitcoin was transferred.  But it doesn't match up with the transcript.  Any explanation for that?

(*Id*. at 40:8-19.)  Dr. Ilg allegedly responded: "The only person that was going to be hurt, in my mind, was going to be me." (*Id*. at 40:20-23.)

Thereafter, the interview transitioned into Dr. Ilg assisting the FBI locate the dark web hitmen.  FBI Agent Parker stated:

> When somebody gets jammed up, you get yourself unjammed by helping us go after other people.  We would love to go after these guys, these hitmen.  If you can recreate that, that's going to help you in your case.  Because we—I'm being honest with you, we have information. We have the transcripts of your communications. It's not good.

(*Id*. at 43:14-24.)  Thereafter, Agent Parker asked about "[getting] logged into your account" to "communicate with these guys again." (*Id*. at 44:21-23.)  After

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201    (509) 747-9100

indicating multiple times that he did not remember the login credentials and never intended to hurt anybody, Dr. Ilg provided "<u>I would like to have a lawyer representing me and helping to negotiate</u>." (*Id*. at 45:8-10.)

After further questioning, Dr. Ilg continued to request a lawyer:

> **Agent Parker:**  So helping you out is not on the horizon yet.  I would like to help you out.  We would like to get these guys that you're communicating with.  But we can't do that until you begin to acknowledge the conversations you've had. . . .
>
> **Dr. Ilg:**  Again, I'm willing to help out in any way that I can.  And to negotiate that piece of it, <u>I think a good lawyer would do better than what I'm going to be able to do</u>.

(*Id*. at 50:4-15.)    In response to Agent Parker's comment "we've got conversations this week, very recent, with some urgency to get this kidnapping done," Dr. Ilg again responded "the best way to negotiate that <u>is to have a lawyer that's going to help me</u>." (*Id*. at 51:3-12.)  Agent Parker continued:

> So, one thing I'll share with you, Dr. Ilg, is there's a statute.  It's Title 18, United States Code, Section 1001, dealing with false statements.  There's a—I'm sure you know Martha Stewart.  That's why Martha Stewart went to prison. . . .  So, again, as we sit here tonight, nobody has been hurt.  That could all change if we don't take control of the situation now.  <u>If we leave this room tonight with what's been said, we can demonstrate that you've provided false statements to us</u>.  We don't . . . we don't want to go there.

(*Id*. at 58:22-25—59:1-17.)  In response, Dr. Ilg stated: "I would love to help you as much as I can.  And the best way for me to understand how that can be

Defendant's Motion to Suppress
Evidence Obtained in Violation
of *Miranda*- Page  8

ETTER, M<sup>c</sup>MAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

negotiated would be <u>with a lawyer helping me with that</u>." (*Id*. at 60:15-18.)

Towards the conclusion of the interrogation, SA Parker provided:

> Not tonight, but in the future <u>you're likely to be arrested</u>. And if we can get ahead of that, it's all—not "all." But it becomes more in your court. The ball is in your court. You come in and surrender on your own terms, rather than us getting an arrest warrant.

(*Id*. at 61:21-25.) Dr. Ilg again responded: "I would love to help the best way that I can. . . . But at the same time, <u>I need somebody that has a clearer mind than mine . . . to help me to navigate that</u>." (*Id*. at 63:3-8.)

"At the conclusion of the search and interview at approximately 7:00 pm, SSRA Parker and SA Barker provided transportation for Ilg from the airport to his residence where another search warrant was being executed." (Wagley Decl., Ex. E at p. 1.) Based on the information obtained during the custodial interrogation, the FBI subsequently arrested Dr. Ilg and used the interrogation statements to obtain additional search warrants.

## **POINTS & AUTHORITIES**

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." In *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial

Defendant's Motion to Suppress
Evidence Obtained in Violation
of *Miranda*- Page  9

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201    (509) 747-9100

interrogation of the defendant <u>unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination</u>."  These safeguards are "prophylactic procedural measures to guarantee that a suspect is advised of his Fifth Amendment rights before custodial interrogations."  *United States v. Craighead*, 539 F.3d 1073, 1082 (9th Cir. 2008).

The procedural safeguards warranted by *Miranda* are that the suspect be advised he "has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney."  *Miranda*, 384 U.S. at 444.  A defendant may waive these rights, "provided the waiver is made voluntarily, knowingly and intelligently."  *Id.*

**A.  <u>The FBI Subjected Dr. Ilg to Custodial Interrogation at the Spokane International Airport Absent *Miranda* Warnings.</u>**

The warnings required by *Miranda* and its progeny recognize "that 'custodial interrogation' is inherently coercive."  *United States v. Kennedy*, 573 F.2d 657, 660 (9th Cir. 1978).  Custodial interrogation requires:  (1) "'questioning,'" (2) "'initiated by law enforcement officers,'" (3) "'after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'"  *Kennedy*, 573 F.2d at 660 (quoting *Miranda*, 384 U.S. at 444).  "Whether a defendant was the focus of a custodial

Defendant's Motion to Suppress
Evidence Obtained in Violation
of *Miranda*- Page 10

ETTER, M<sup>c</sup>MAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

interrogation is a factual determination that must be made on a case-by-case basis." *United States v. Wauneka*, 770 F.2d 1434, 1438 (9th Cir. 1985).

### 1. Questioning.

The first requirement for *Miranda* warnings is questioning. *Kennedy*, 573 F.2d at 660. Under this requirement, interrogation "'may be either express questioning <u>or its functional equivalent</u>, and . . . include[s] any statements or actions that the police should know are reasonably likely to elicit an incriminating response.'" *Wauneka*, 770 F.2d at 1438 (quoting *United States v. Booth*, 669 F.2d 1231, 1237 (9th Cir. 1981)). This element is easily met by FBI Agents Parker and Barker multiple questions regarding Dr. Ilg's marriage, Bitcoin, and involvement in the dark web. *See Wauneka*, 770 F.2d at 1438.

### 2. Law Enforcement.

The second requirement for the need to issue *Miranda* warnings is that such interrogation be conducted by law enforcement. *Kennedy*, 573 F.2d at 660. This element is easily met as the two-hour interrogation of Dr. Ilg was conducted by FBI Agents Parker and Barker. (*See* Wagley Decl., Ex. C.)

### 3. Custody.

The final requirement for *Miranda* warnings is that the interrogation must be custodial. *Kennedy*, 573 F.2d at 660. "An officer's obligation to give a

Defendant's Motion to Suppress
Evidence Obtained in Violation
of *Miranda*- Page 11

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

suspect *Miranda* warnings before interrogation extends only to this instances where the individual is 'in custody.'"  *United States v. Kim*, 292 F.3d 969, 973 (9th Cir. 2002) (quoting *Oregon v. Mathiason,* 429 U.S. 492, 495 (1977)). Custody may arise by virtue of either a formal arrest or "if the suspect has been 'deprived of his freedom of action in any significant way.'"  *Craighead*, 539 F.3d at 1082 (quoting *Miranda*, 384 U.S. at 444).  An individual's freedom of action is curtailed in a significant way if "a reasonable person in those circumstances would 'have felt he or she <u>was not at liberty to terminate the interrogation and leave</u>.'"  *Craighead*, 539 F.3d at 1082 (quoting *Thompson v. Keohane,* 516 U.S. 99, 112 (1995)); *accord Wauneka*, 770 F.2d at 1438.

In determining custody, the Court "examine[s] the totality of the circumstances surrounding the interrogation."  *Craighead*, 539 F.3d at 1082. Relevant factors include, but are not limited to:

> [1] the language used to summon the individual; [2] the extent to which the defendant is confronted with evidence of guilt; [3] the physical surroundings of the interrogation; [4] the duration of the detention; and [5] the degree of pressure applied to detain the individual.

*United States v. Beraun-Panez*, 812 F.2d 578, 580 (9th Cir. 1987).  The Court may also consider the following factors:

Defendant's Motion to Suppress
Evidence Obtained in Violation
of *Miranda*- Page  12

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

[6] the number of law enforcement personnel and whether they were armed; [7] whether the suspect was at any point restrained, either by physical force or by threats; [8] whether the suspect was isolated from others; and [9] whether the suspect was informed that he was free to leave or terminate the interview, and the context in which any such statements were made.

*Craighead*, 539, F.3d at 1084.  This inquiry "focuses on the <u>objective circumstances of the interrogation</u>, not the subjective views of the officers." *Kim*, 292 F.3d at 973.

The Court is not restricted to these factors and "[o]ther factors may also be pertinent to, and even dispositive."  *Kim*, 292 F.3d at 974.  The Court may consider if the suspect had means of transportation to leave the interrogation and the seizure of the suspect's personal belongings.  *See United States v. Toliver*, 480 F. Supp. 2d 1216, 1219 (D. Nev. 2007) (noting the suspect "brought a bag of personal belongings into the building, including a cell phone, money, keys, and some jewelry" and the suspect "had no means of transportation and depended on the officer to take him home"), *aff'd*, 380 Fed. Appx. 570 (9th Cir. 2010); *accord Wauneka*, 770 F.2d at 1439.  The Court may also consider whether the interrogation is coupled with the execution of a search warrant. *Craighead*, 539 F.3d at 1083; *United States v. Bekowies*, 432 F.2d 8, 13 (9th Cir. 1970); *Kim*, 292 F.3d at 971.  Finally, "<u>[t]he mere recitation of the statement that</u>

Defendant's Motion to Suppress
Evidence Obtained in Violation
of *Miranda*- Page 13

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

the suspect if free to leave or terminate the interview, . . . does not render an interrogation non-custodial." *Craighead*, 539 F.3d at 1088.  Rather, the Court "must consider the delivery of these statement within the context of the scene as a whole." *Craighead*, 539 F.3d at 1088; *accord United States v. Bravo*, 295 F.3d 1002, 1011 (9th Cir. 2002) ("Certainly an officer cannot negate a custodial situation simply by telling a suspect that he is not under arrest."); *see also United States v. Lee*, 699 F.2d 466, 467-68 (9th Cir. 1982).

As such, multiple authorities have held that a suspect is subject to custodial interrogation when "interviewed" by law enforcement in an isolated airport room.  *See United States v. Carr*, 63 F. Supp. 3d 226, 236 (E.D.N.Y. 2014) (suspect "was physically removed from the public screening area and escorted by four armed officers to a separate, private pat-down room"); *see also United States v. Hartwell*, 296 F. Supp. 2d 596, 606–07 (E.D. Pa. 2003) ("Defendant was in a small private room, surrounded by two TSA agents and a police officer blocking the exit, and had just produced a suspicious item that he had been exceedingly reluctant to reveal"), *aff'd,* 436 F.3d 174 (3d Cir. 2006); *accord United States v. Griffin*, 7 F.3d 1512, 1519 (10th Cir. 1993) (suspect "was separated from her friend and asked to accompany an officer to a small private office within a police-controlled area of the airport").  The custodial nature of a

Defendant's Motion to Suppress
Evidence Obtained in Violation
of *Miranda*- Page 14

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

police interview in a private airport room is increased when the reason for the contact is based upon a suspected crime unrelated to traveling. *See id.*

Here, Dr. Ilg was clearly in custody while interrogated by FBI Agents in the interview room of the Spokane International Airport. First, Dr. Ilg was confronted by two FBI Agents, isolated from his travel companions, and ordered to "[c]ome this way." (Wagley Decl., Ex. C at p. 3:15-16.) Second, Dr. Ilg was led through various twist and turns in an internal office area and brought to an interview room with no windows. (*See* Ilg Decl. at ¶ 5.) Third, Dr. Ilg was interrogated by two FBI agents while various other agents were in the vicinity. (*Id.*) Fourth, Dr. Ilg had no means of transportation and was dependent upon "an Uber." (Wagley Decl., Ex. C at 5:15-22.) Fifth, the FBI executed a search warrant for Dr. Ilg's luggage, person, and phone during the interview. (*See id.* at 18:12-16 and 19:11-18.)

Sixth, not only was one of the FBI Agents visibly armed, but Agents Parker and Barker sat between Dr. Ilg and the door, and similarly placed Dr. Ilg's luggage between him and the door. (*See* Ilg Decl. at ¶ 6.) Seventh, the interrogation lasted for approximately two-hours. (*Id.* at ¶ 8.) Eighth, during the course of the interrogation, the FBI Agents made threats of prosecution under 18 U.S.C. § 1001, as well as confronting Dr. Ilg with alleged evidence of

Defendant's Motion to Suppress
Evidence Obtained in Violation
of *Miranda*- Page 15

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

his guilt, all while implying that his assistance would result in leniency.  (*See* Wagley Decl., Ex. C at 43:14-24, 50:4-15, 58:22-25—59:1-17, and 61:21-25.)

Ninth, multiple times throughout the interview, Dr. Ilg indicated that he was in a vulnerable mindset, had been contemplating suicide, and was not thinking clearly.  (*See* Wagley Decl., Ex. C at 21:5-14, 23:7-25, 63:3-8.)  Tenth, Dr. Ilg attempted to invoke his right to counsel at least six times during the interview, but the FBI Agents persisted.  (*See id.* at 17:24-25—18:1-7, 45:8-10, 50:4-15, 51:3-12, 60:15-18, 63:3-8.)  Eleventh, FBI Agent Parker explicitly stated "in the future you're likely to be arrested."  (*Id*. at 61:21-25.)  Twelfth, at the end of the interrogation, the FBI "provided transportation for Ilg from the airport to his residence" so that he could "voluntarily" open "two safes with his fingerprint." (Wagley Decl., Ex. E at 1.)

In totality, Dr. Ilg was clearly in custody during the lengthy FBI interrogation.  (*See* Wagley Decl., Ex. C; *accord* Ilg Decl.)  Not only did the FBI show force based upon the detention, number of officers involved, and execution of the search warrant, but admittedly told Dr. Ilg he would likely be arrested.  (*Id.*)  Dr. Ilg had no means of terminating the interrogation and calling an Uber as his phone was seized.  (*Id.*)  A reasonable person in such circumstances would clearly believe they were not free to leave.  (*See* Ilg Decl.

Defendant's Motion to Suppress
Evidence Obtained in Violation
of *Miranda*- Page  16

ETTER, MᶜMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201    (509) 747-9100

at ¶ 9.)  The FBI violated Dr. Ilg's Fifth Amendment rights by failing to advise him of his rights pursuant to *Miranda* prior to this custodial interrogation.

### B. The FBI Continued the Custodial Interrogation After Dr. Ilg Unequivocally Invoked His Right to Counsel.

In addition to the complete failure to advise Dr. Ilg of his *Miranda* rights, the FBI also continued such custodial interrogation after Dr. Ilg unequivocally invoked his right to counsel multiple times.  In addition to the right to remain silent, the Fifth Amendment also implicates "the right to have counsel present at any custodial interrogation."  *Edwards v. Arizona*, 451 U.S. 477, 485-86 (1981). "If the individual states that he wants an attorney, the interrogation must cease until an attorney is present." *Miranda*, 384 U.S. at 474; *accord Fare v. Michael C.*, 442 U.S. 707, 719 (1979). The right to counsel under *Miranda* must be "unequivocally" asserted.  *Tobias v. Arteaga*, 996 F.3d 571, 589 (9th Cir. 2021); *see United States v. Booker*, __ F. Supp. 3d __, 2021 WL 4244895, at *9 (S.D. Cal. 2021) (statement "I would rather have a lawyer" sufficient).

Once the right is invoked, the suspect "is not subject to further interrogation by the authorities unless the accused himself initiates further communication, exchanges, or conversations with the police." *United States v. Most*, 789 F.2d 1411, 1416 (9th Cir. 1986).  The purpose of this requirement is

Defendant's Motion to Suppress
Evidence Obtained in Violation
of *Miranda*- Page  17

ETTER, MᶜMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

"to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights." *Rodriguez v. McDonald*, 872 F.3d 908, 921 (9th Cir. 2017). Under this analysis, an officer's statement still qualifies as interrogation "if it is 'reasonably likely to elicit an incriminating response.'" *Booker*, 2021 WL 4244895, at *10. On the other hand, "an accused is considered to initiate the conversation if their statement indicates a 'desire . . . to open upon a more generalized discussion relating directly or indirectly to the investigation.'" *Booker*, 2021 WL 4244895, at *10 (quoting *Oregon v. Bradshaw*, 462 U.S. 1039, 1045 (1983)). In this vein, the suspect's subsequent statements must be unprompted and not a result of law enforcement comments regarding cooperation, the execution of a search warrant, or the substance of the investigation. *See Martinez v. Cate*, 903 F.3d 982, 988 (9th Cir. 2018) (finding that statement including "all I wanted was your side of the story," coupled with suggestion that making a statement would prevent suspect from being booked for murder, to be interrogatory); *accord Booker*, 2021 WL 4244895, at *10 ("statement was in response to the agents' explanation of the search warrants, not an unprompted invitation to discuss the investigation more generally").

Here, Dr. Ilg invoked his right to counsel multiple time during the "un-*Miranda*-ized" custodial interrogation. When asked about cryptocurrency

Defendant's Motion to Suppress
Evidence Obtained in Violation
of *Miranda*- Page 18

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

accounts, Dr. Ilg unequivocally stated: "I prefer . . . to have a lawyer present." (Wagley Decl., Ex. C at 18:4-7.)  Immediately thereafter, FBI Agent Parker indicated: "With that, we do have a warrant" and provided Dr. Ilg with the ultimatum of: "If you would like us to forensically image [your phone] for you right now and have you wait. . . .  Or we can take it and you can be on your way." (*Id*. at 18:12-16 and 19:11-18.)  In response, Dr. Ilg stated "[i]t's my only means of communication" after previously indicating that he was reliant on an Uber to get home.  (*Id*. at 19:19-20.)  After the conversation continued, Dr. Ilg attempted to invoke his right to counsel at least five additional times to no avail. (*See id.* at 45:8-10, 50:4-15, 51:3-12, 60:15-18, 63:3-8.)

Dr. Ilg unequivocally invoked his right to counsel based upon the statement "I prefer . . . to have a lawyer present."  (Wagley Decl., Ex. C at 18:4-7.)  The custodial interrogation only continued as the FBI—who was aware that Dr. Ilg had no means of transportation and was dependent upon his phone—presented him with a false dichotomy that he would be able to retrieve his phone and leave if he continued to answer questions.  (*Id*. at 18:12-16 and 19:11-18.)  The FBI violated Dr. Ilg's Fifth Amendment right to counsel multiple times during the custodial interrogation.  *See, e.g., Booker*, 2021 WL 4244895, at *10.

Defendant's Motion to Suppress
Evidence Obtained in Violation
of *Miranda*- Page 19

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

**C.** **Any and All Evidence Derivative of the Violation of Dr. Ilg's *Miranda* Rights Must Be Suppressed.**

Statements obtained in violation of *Miranda* are inadmissible in the Government's case-in-chief. *Tekoh v. Cty. of Los Angeles*, 985 F.3d 713, 720 (9th Cir. 2021), *cert. granted sub nom. Vega v. Tekoh*, 142 S. Ct. 858 (2022). However, a *Miranda* violation does not automatically result in suppression of all fruits of the poisonous tree. *United States v. Patane*, 542 U.S. 630, 633-34 (2004). Instead, "the admissibility of the fruits of a *Miranda* violation likewise turns on the voluntariness of the unwarned statement." *Booker*, 2021 WL 4244895, at *12. In determining whether a statement is "voluntarily made . . . the finder of fact must examine the surrounding circumstances and the entire course of police conduct." *Oregon v. Elstad*, 470 U.S. 298, 318 (1985).

In the situation at hand, suppression of both the direct statements of Dr. Ilg obtained in violation of *Miranda*, as well as any and all fruit of the poisonous tree, is warranted. As indicated *supra*, Dr. Ilg provided any and all statements during the approximately two-hour custodial interrogation at the Spokane International Airport absent *Miranda* warnings. Additionally, Dr. Ilg invoked his right to counsel multiple times during the custodial interrogation to no avail. Fruit of the poisonous tree must also be suppressed as Dr. Ilg's statements were

Defendant's Motion to Suppress
Evidence Obtained in Violation
of *Miranda*- Page 20

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

involuntary based upon his documented mental state during the interrogation. Further, his will was overborn based upon the persistent FBI questioning, threats, and confrontation of alleged evidence, all while he was dependent upon the FBI for transportation from the airport.

## **CONCLUSION**

Based upon the foregoing, the Defendant respectfully requests that the Court suppress his statements obtained in violation of *Miranda* and its progeny, as well as any and all evidence derivative thereof.

RESPECTFULLY SUBMITTED this 28th day of February, 2022.

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.


By: /s/ Andrew M. Wagley
    Carl J. Oreskovich, WSBA #12779
    Andrew M. Wagley, WSBA #50007
    *Attorneys for Ronald C. Ilg, MD*

Defendant's Motion to Suppress
Evidence Obtained in Violation
of *Miranda*- Page 21

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

1
2

## **CERTIFICATE OF SERVICE**

3
4
5
6
7
8

    I hereby certify that on the 28th day of February, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all attorneys of record in this matter.

9
10

    EXECUTED in Spokane, Washington this 28th day of February, 2022.

11
12
13

            By: /s/ Jodi Dineen
               Jodi Dineen, Paralegal

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100