Carl J. Oreskovich, WSBA #12779
Andrew M. Wagley, WSBA #50007
Etter, McMahon, Lamberson,
Van Wert & Oreskovich, P.C.
618 West Riverside Avenue, Suite 210
Spokane, WA  99201
(509) 747-9100
(509) 623-1439 Fax
Email: carl@ettermcmahon.com
Email: awagley@ettermcmahon.com
*Attorneys for Defendant Ronald Craig Ilg*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RONALD CRAIG ILG,<br><br>Defendant. | Case No. 2:21-cr-00049-WFN<br><br>**DEFENDANT'S MOTION TO SUPPRESS EVIDENCE DERIVATIVE OF COINBASE SEARCH WARRANT**<br><br>With Oral Argument:<br>  March 21, 2022 at 8:30 am<br>  Spokane, WA |

COMES NOW, the Defendant Ronald C. Ilg, MD ("Dr. Ilg"), by and through his attorneys of record, and hereby moves the Court for an Order suppressing any and all evidence derivative of the unconstitutional Search Warrant issued for Bitcoin transactions and records maintained by Coinbase.

Defendant's Motion to Suppress
Evidence Derivative of Coinbase
Search Warrant- Page  1

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

As explained below, the Court must suppress all evidence derivative of the violation of the Fourth Amendment of the Constitution of the United States as:

(1)     The Coinbase Search Warrant was issued absent probable cause. (*See* Decl. of Andrew M. Wagley in Supp. of Def.'s Pretrial Motions ("Wagley Decl."), Ex. A.)   The "copied-and-pasted" alleged dark web messages do not provide adequate reliability, veracity, and basis of knowledge regarding the news organization's anonymous source. (*See* Wagley Decl., Ex. A.)

(2)     The Federal Bureau of Investigation ("FBI") failed to adequately corroborate the alleged messages based upon future activity.  *See United States v. Luong*, 470 F.3d 898, 903 (9th Cir. 2006) (information provided by anonymous source "must predict future actions by the suspect that are subsequently corroborated by the police").   The only attempted corroboration by the FBI was either publicly available information or innocuous text messages provided by Dr. Ilg's estranged wife in the middle of a contentious divorce.

(3)     Any and all fruit of the poisonous tree must be excluded.  The "good faith" exception to the exclusionary rule does not apply based upon the complete lack of probable cause in the Search Warrant.

Defendant's Motion to Suppress
Evidence Derivative of Coinbase
Search Warrant- Page  2

ETTER, MᶜMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

## **BACKGROUND**

This is a prosecution for attempted kidnapping and various other crimes relating to alleged dark web messages.  (*See* ECF No. 80.)  Dr. Ilg has pled not guilty and expressly maintains his innocence.  (*See* ECF No. 90.)  The Government's theory of the case is that Dr. Ilg, using the moniker "Scar215," communicated "with various administrators/representatives from dark-web sites to hire someone to harm two individuals in Spokane, Washington."  (ECF No. 1 at 4.)  On April 9, 2021, the FBI obtained a Search Warrant "for information related to the certain Bitcoin Transactions . . .  which are stored on premises controlled by Coinbase, a virtual currency exchange."  (Wagley Decl., Ex. B at 1.)  The Coinbase Search Warrant was granted by United States Magistrate Judge John T. Rodgers based upon an Application authored by FBI Special Agent ("SA") Eric Barker.  (Wagley Decl., Ex. A.)

Pursuant to the Application, the alleged dark web messages were provided by an unknown source, to an international news organization, to one of the alleged victims, and then to the FBI.  (*See* Wagley Decl., Ex. A at 14-15.)  The Application alleges that Victim 1 is Dr. Ilg's former colleague and Victim 2 is Dr. Ilg's "estranged wife."  (*Id*. at 2.)  Pursuant to the Application, "[o]n April 5, 2021, FBI learned from Bevan Maxey, who is an attorney for VICTIM 2 . . . ,

Defendant's Motion to Suppress
Evidence Derivative of Coinbase
Search Warrant- Page  3

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

that the British Broadcasting Company ('BBC') was conducting an investigation for a podcast series related to murder-for-hire on the dark web." (*Id.* at 14.) During conversations with the FBI, individuals from BBC indicated that "BBC obtained the communications themselves <u>from a source and/or sources unknown to the FBI</u>, which describe ongoing negotiations between **Scar215** and various monikers to assault one victim and to kidnap, assault, and extort a second victim, in exchange for a cryptocurrency payment." (*Id.* at 14-15.)

The dark web messages are attached as "Exhibit 1" to the Application. (*See* Wagley Decl., Ex. A at 37-51.) The messages appear to be "copied-and-pasted" into a word document and are not screenshots or files of the alleged original messages. (*See id.*) In an obscure footnote, the Application states:

> <u>The BBC utilized a confidential source of information, who is unknown to the FBI</u>. This BBC group, utilizing the same source, identified an earlier murder-for hire plot that resulted in the FBI arrest of a woman in Milwaukee, Wisconsin for attempting to kill her husband via dark web murder-for-hire services. On April 6, 2021, the FBI sought to obtain identification information for the confidential source. <u>BBC has not provided identification information at this time</u>. The FBI is unaware of any incident to which the source has failed to provide accurate information.

(*Id.* at 15.)

The alleged messages range from February 23, 2021 through April 8, 2021, between "Scar215" and "Admin Internet Killers," "Miguel," and "Juan admin

Defendant's Motion to Suppress
Evidence Derivative of Coinbase
Search Warrant- Page 4

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201  (509) 747-9100

Sinaloa Cartel." (*See* Wagley Decl., Ex. A at 15-30.)  The Application indicates that the messages contain the "home address" of Victim 1, a request "to physically assault VICTIM 1," and a picture of Victim 1 from her employer's website.  (*Id*. at 14-16.)  The Application further indicates that the messages provide the "home address" of Victim 2 and a "payment for a hitman to physically kidnap, assault, drug, and extort VICTIM 2."  (*Id.* at 18.)  The messages regarding Victim 2 allegedly identify her "father" and "dog."  (*Id*. at 19.)  SA Barker notes "[d]uring my investigation, I interviewed VICTIM 2, who confirmed that she has a dog and her father lives in the Spokane area." (*Id*.)

The Application provides that further messages regarding Victim 2 allegedly state that she has "a part-time job at SpaBlue," indicates "[s]he works there every other Wednesday night and closes the business by herself," and "[h]er schedule gets complicated because she has kids every other week." (Wagley Decl., Ex. A at 22.)  SA Barker states in the Application that he verified "VICTIM 2 does work part time at Spa Blue and works evenings on weeks that she does not have her kids." (*Id.* at 23.)  Importantly, Victim 2's work schedule with SpaBlue was posted on her employer's website for purposes of appointment availability, and the parties' temporary parenting plan was

Defendant's Motion to Suppress
Evidence Derivative of Coinbase
Search Warrant- Page 5

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201  (509) 747-9100

publicly available from the Spokane County Superior Court, and both these schedules were generally known by their network of family and friends.

The Application likewise identifies alleged messages "between an apparent escrow service and the individual who was using the dark web to solicit someone to kidnap, assault, extort, and drug VICTIM 2." (Wagley Decl., Ex. A at 27.) An alleged April 1, 2021 message from the escrow service provides: "The funds will be sent back to the address you provided, and the transaction is being canceled." (*Id*. at 29.) The Application further allegedly identifies a message from "Scar215" to "Juan admin Sinaloa Cartel" dated April 8, 2021 discussing the transfer of funds into a new escrow. (*Id. at* 30.) However, no new escrow account is identified in the Application. (*See id*.)

At no point during the investigation did the FBI correspond with "Scar215" or direct such correspondence to occur. (*See* Wagley Decl., Ex. A.) In the application, the FBI attempted to corroborate Dr. Ilg's involvement by virtue of three pieces of alleged evidence obtained from Dr. Ilg's estranged wife, Victim 2. (*See id.* at 31-35.) The Application provides that Dr. Ilg and Victim 2 "are currently engaged in <u>contentious divorce proceedings</u> and maintain joint custody of their child." (*Id*. at p. 33.) Furthermore, Victim 2 told the FBI that Dr. Ilg "located [Witness 1] on the internet and invited her into a sexual relationship"

Defendant's Motion to Suppress
Evidence Derivative of Coinbase
Search Warrant- Page  6

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

with Dr. Ilg and Victim 2 after the birth of their child.  (*Id.* 32)  The Application

continues: "As time passed, [Dr. Ilg] became more interested in [Witness 1],

leaving VICTIM 2 <u>increasingly uncomfortable with the relationship</u>."  (*Id.*)

In the Application, the three alleged pieces of corroborating information

are: (1) text messages between Dr. Ilg and his former girlfriend ("Witness 1"),

(2) test messages between Dr. Ilg and a former nanny ("Nanny"), and (3) text

messages between Witness 1 and Victim 2. (Wagley Decl., Ex. A at 31-35.)

The alleged text messages between Dr. Ilg and Witness 1 provide:

> **Witness 1:**  you hired someone to hurt [Victim 2] from the dark
> web using bitcoin stop now . . . leave me alone forever I am scared
> of you
> . . .
> **Dr. Ilg:**  <u>I absolutely did not hire anyone</u>.  That's a lie. . . .  And
> you said Bryce could contact his dealers and get people to hurt me
> and my family . . .  That is real.

(*Id.* at 32.)

The Application further states that "VICTIM 2 provided the FBI with a

statement and supporting text messages from a person VICTIM 2 identified as a

nanny" that are undated and likely from the divorce proceedings.  (Wagley

Decl., Ex. A at 33.)  These undated and stale messages provide:

> **Dr. Ilg:**  It would depend on what I decide the scenario would be
> and your comfort level.  As an example, if it was a kidnapping
> scenario.  Something many women fear and yet sorta fantasize

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

about. . . .  It heightens the experiences, gets the adrenaline flowing and neatly changes the whole dynamic with just that little bit of difference.  Of course it would have to be planned out well ahead of time so it certainly wouldn't be anytime soon.  But, knowing that I could have that extra tid bit of help adds dramatically.
. . .

**Nanny:**  Mmmmm I though a lot about it and I think I'm going to have to decline.  I've never been the one to take part in <u>any kind of threesome or role play with another couple</u> haha . . .   <u>If it were between a boyfriend maybe that would be different</u>.  Lol

(*Id*. at 33.)  The Application indicates that "[t]he FBI has not yet contacted the nanny to confirm the content of the messages provided by VICTIM 2." (*Id*.)

Finally, the Application provides that "[o]n April 8, 2021, [Witness 1], who is currently in a relationship with [Dr. Ilg] sent the following text message to VICTIM 2." (Wagley Decl., Ex. A at 34.)  The alleged message in the Application merely provides: "Some strange stuff has happened while we have been here . . . I need to talk to you asap when we get back." (*Id*.)  The message is vague and does not even mention Dr. Ilg. (*See id*.)

Based upon the Coinbase Search Warrant, the Government allegedly tied the Bitcoin escrow transactions to an account registered to Dr. Ilg. (*See* ECF No. 1 at 10.)  The FBI alleges that the results of the Coinbase Search Warrant "indicate that ILG used Coinbase.com to transfer approximately $56,308.12 into escrow to pay for the assault of VICTIM 1 and for the plan to kidnap, assault,

Defendant's Motion to Suppress
Evidence Derivative of Coinbase
Search Warrant- Page  8

ETTER, MᶜMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

extort, and drug VICTIM 2." (*Id.*) Thereafter, the Government obtained additional search warrants, interviewed Dr. Ilg at the Spokane International Airport on April 11, 2021, and developed probable cause to arrest Dr. Ilg. (*See id.*) Dr. Ilg now brings the current Motion to Suppress.

## POINTS & AUTHORITIES

The Fourth Amendment of the Constitution of the United States provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated." The Fourth Amendment protects against "the 'general warrant' abhorred by the colonists," which allowed "a general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). Therefore, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. Evidence obtained in violation of the Fourth Amendment must be suppressed as the "fruit of the poisonous tree." *Wong Sun v. United States,* 371 U.S. 471, 488 (1963).

### A. **The Information and Alleged Dark Web Messages Provided By the Unknown Source Do Not Establish Probable Cause.**

In determining probable cause for a search warrant, "a court must view the 'totality of circumstances' set forth in the affidavit" to determine if "there is a

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201    (509) 747-9100

fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. DeLeon*, 979 F.2d 761, 764 (9th Cir. 1992); *accord Illinois v. Gates*, 462 U.S. 213 (1983). "'All data necessary to show probable cause for the issuance of a search warrant must be contained within the four corners of a written affidavit given under oath.'" *United States v. Luong*, 470 F.3d 898, 904 (9th Cir. 2006); *accord Franks v. Delaware*, 438 U.S. 154, 165 (1978) ("It is established law that a warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter.").

"When a search warrant is based solely on an informant's tip, the proper analysis is whether probable cause exists from the totality of the circumstances to determine a sufficient level of reliability and basis of knowledge for the tip." *United States v. Bishop*, 264 F.3d 919, 924 (9th Cir. 2001). In other words, "officers must provide some basis to believe that the tip is true" as "hearsay from an unknown informant is highly suspect." *United States v. Clark*, 31 F.3d 831, 834 (9th Cir. 1994). "An anonymous tip standing alone does not demonstrate an informant's veracity or reliability because an anonymous tipster cannot be held accountable if he or she provides inaccurate information, and the police cannot assess the tipster's reputation." *United States v. Morales*, 252 F.3d

Defendant's Motion to Suppress
Evidence Derivative of Coinbase
Search Warrant- Page  10

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

1070, 1074 (9th Cir. 2001).  As such, "[a]n anonymous tip, without more, does not constitute probable cause." *United States v. Mendonsa*, 989 F.2d 366, 368 (9th Cir. 1993).  In other words, "an anonymous tip is entitled to little or no weight in a probable cause evaluation if it is entirely uncorroborated and lacks any indication of reliability." *Clark*, 31 F.3d at 834.

The crux of the Court's probable cause inquiry under the totality of the circumstances is: (1) the unknown source's veracity, (2) the reliability of the information, (3) the unknown source's basis of knowledge, and (4) independent police corroboration.  *See Gates*, 462 U.S. at 230; *accord Morales*, 252 F.3d at 1074; *see also United States v. Landis*, 726 F.2d 540, 543 (9th Cir. 1984).

### 1. *Veracity.*

The first factor for the Court to consider in the totality of the circumstances analysis is the unknown source's veracity.  Adequate veracity is present if the informant's "information was reliable in the past." *Landis*, 726 F.2d at 543. The veracity of an anonymous source must be known to law enforcement and may not be conclusory provided by a third party.  *See, e.g., United States v. Shipstead*, 433 F.2d 368, 372 (9th Cir. 1970) ("the averment 'This informant has supplied law enforcement officers with information over the last five or six months which has resulted in three arrests' is legally sufficient").  In this vein,

Defendant's Motion to Suppress
Evidence Derivative of Coinbase
Search Warrant- Page  11

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

"[i]t is the magistrate, and not the affiant, that is responsible for making this determination" regarding veracity. *United States v. Summage*, 481 F.3d 1075, 1078 (8th Cir. 2007). As such, when the veracity of an anonymous source is completely unknown to law enforcement, the Court must "require the officer to take steps to test the informant's veracity." *United States v. Crawford*, 943 F.3d 297, 306 (6th Cir. 2019).

Here, SA Barker's Application provides absolutely nothing regarding the veracity of BBC's anonymous source. (*See* Wagley Decl., Ex. A at 14-15.) To the contrary, SA Barker acknowledges that the BBC obtained such alleged communications "from a source and/or sources unknown to the FBI." (*Id*. at 14.) A footnote further elaborates: "The BBC utilized a confidential source of information, who is unknown to the FBI. . . . BBC has not provided identification information at this time." (*Id*. at 15.) Although the Application states "the same source" provided information "that resulted in the FBI arrest of a woman in Milwaukee, Wisconsin," such information clearly was provided by BBC and not verified by SA Barker. (*Id*.) Further, the statement that "[t]he FBI is unaware of any incident to which the source has failed to provide accurate information" is disingenuous as the source's track-record is completely

Defendant's Motion to Suppress
Evidence Derivative of Coinbase
Search Warrant- Page  12

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

unknown and unproven to the FBI in the Application. (*Id*.)  This factor strongly

leans against probable cause.  *See Gates*, 462 U.S. at 230.

### 2.  *Reliability.*

The second factor for the Court to consider is the reliability of the unknown

source's information.  In general, reliability takes into account whether such

information is generally trustworthy.  In evaluating reliability, the Court may

consider "any apparent motive to fabricate the tip."  *United States v. Rowland*,

464 F.3d 899, 908 (9th Cir. 2006); *accord Bishop*, 264 F.3d at 926 ("[i]t would

have to be a very naive magistrate who would suppose that a confidential

informant would drop in off the street with such detailed evidence and not have

an ulterior motive"); *see also Cruz v. Kauai County*, 279 F.3d 1064, 1069 (9th

Cir. 2002) (probable cause lacking when law enforcement "knew [suspect's ex-

wife] was <u>potentially biased and had reason to fabricate, but he conducted no</u>

<u>investigation into the truth or falsity of her allegations</u>").  Information provided

by a news organization may be less reliable if associated with an apparent

motive to sensationalize a story.  *See id*.  Similarly, information provided by an

estranged spouse is accompanied by a motive to fabricate.  *See id*.

Here, the Application provides no indication of reliability.  (*See* Wagley

Decl., Ex. A.)  First, the information is funneled through various sources—from

the anonymous source, to the BBC, to Victim 2's attorney, and then finally to the FBI.  (*Id*. at 14-15.)  Second, not only had the BBC refused to provide its source to the FBI, but BBC was "conducting an investigation for a <u>podcast series related to murder-for-hire on the dark web</u>."  (*Id*. at 14.)  Third, the Application provides that Victim 2 is Dr. Ilg's "estranged wife," that they "are currently engaged in <u>contentious divorce proceedings</u>," and that Victim 2 became "<u>increasingly uncomfortable</u>" after Dr. Ilg invited Witness 1 "into a sexual relationship."  (*Id*. at 32.)  Fourth—and most importantly—the alleged dark web messages themselves are "copied-and-pasted" into a document and are not actual screenshots or files of the original messages.  (*See id*. at 37-51.)

These unauthenticated messages, provided by an international news organization conducting a podcast investigation, are unreliable as a matter of law.  The BBC would clearly have a motive to sensationalize, fabricate, and/or generate the alleged messages to create a story regarding a wealthy doctor, in the middle of a contentious divorce, resorting to paying the cartel via Bitcoin on the dark web to kidnap his estranged wife after bringing another woman into the relationship.  (*See* Wagley Decl., Ex. A.)  Furthermore, the FBI was aware that Dr. Ilg was involved in a contentious divorce and brought another woman into the relationship, but still relied upon attempted corroborating information from

Defendant's Motion to Suppress
Evidence Derivative of Coinbase
Search Warrant- Page  14

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

his estranged wife.  (*See id*.)  Based upon the motive to fabricate, this factor weighs strongly against probable cause.  (*See id*.)

### 3.   *Basis of Knowledge.*

The third factor for the Court to consider is the basis of knowledge of the confidential source's alleged information.  Necessarily, an informant is more reliable if his or her "information was not based on hearsay, but came from first-hand knowledge."  *Bishop*, 264 F.3d at 925.  Here, the basis of information for the unknown source(s) is unknown.  (*See* Wagley Decl., Ex. A at 14-15.)  As indicated in the Application: "On April 6, 2021, the FBI sought to obtain identification information for the confidential source.  BBC has not provided identification information at this time."  (*Id*. at 15.)  As admitted by the Application, it is likely more than one individual involved in the dark web messages.  (*See id*. at 15 (noting "a source and/or sources unknown to the FBI").)  In addition, if these messages are authentic and true, the unknown source(s) would be implicated in a multitude of crimes regarding solicitation and conspiracy to kidnap over the dark web.  (*See id*.)

### 4.   *Independent Corroboration.*

The fourth factor for the Court to consider is independent corroboration. The totality-of-the-circumstances analysis recognizes "the value of

Defendant's Motion to Suppress
Evidence Derivative of Coinbase
Search Warrant- Page  15

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

corroboration of details of an informant's tip by independent police work."
*Gates,* 462 U.S. at 241. The purpose behind corroboration is to "reduce[] the
changes of a reckless or prevaricating tale." *Id.* at 244–45. In the Ninth Circuit,
to establish probable cause an anonymous tip "'must predict future actions by
the suspect that are subsequently corroborated by the police.'" *Luong,* 470 F.3d
at 903 (quoting *Morales,* 252 F.3d at 1075); *accord Clark,* 31 F.3d at 834.
Further, "[m]ere confirmation of innocent static details in an anonymous tip
does not constitute corroboration." *Clark,* 31 F.3d at 834-35; *Mendonsa,* 989
F.2d at 369 (detective "merely verified 'innocent' facts; he did not corroborate
predications of future activity"). Information "which is equally consistent with
both legal or illegal activity" is insufficient. *Clark,* 31 F.3d at 835.

The Application not only completely fails to corroborate future actions by
the suspect, but merely provides publicly available information, along with texts
from the suspect's estranged wife. (*See* Wagley Decl., Ex. A.) Any details in
the alleged dark web messages are based upon static, publicly available
information—home addresses, online work profiles, a pending divorce and
parenting schedule, the fact that Victim 2 had a father and dog, etc. (*See id.* at
15-30.) This information could conceivably be ascertained within minutes by
anyone conducting a simple internet search. (*See id.* at 37 (typed "Notes" from

Defendant's Motion to Suppress
Evidence Derivative of Coinbase
Search Warrant- Page 16

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

the anonymous source containing website links regarding Victim 1, Victim 2, and Dr. Ilg, as well as providing: "There is a 'Dr. Ron C. Ilg' who is a neonatologist <u>who might</u> connect the two.".)

Additionally, the text messages provided by Victim 2 are innocuous and provide no indication of criminal activity. (*See id*. at 31-35.) In the alleged text messages between Dr. Ilg and Witness 1, Dr. Ilg expressly states: "<u>I absolutely did not hire anyone.  That's a lie</u>." (*Id*. at 32.) In the alleged messages between Dr. Ilg and the nanny, Dr. Ilg is clearly describing a sexual fantasy scenario that "heightens the experience, gets the adrenaline flowing." (*Id*. at 33.) In response, the nanny stated: "I've never been the one to take part in any kind of threesome or role play with another couple haha . . .  <u>If it were between a boyfriend maybe that would be different.  Lol</u>." (*Id*. at 33.) Finally, the alleged text message exchange between Victim 2 and Witness 1 only provides: "Some strange stuff has happened while we have been here . . . I need to talk to you asap <u>when we get back</u>." (*Id*. at 34.) If the scenario were urgent, the conversation would not have to wait until "when we get back." (*Id*.)

Suffice it to say, further corroboration, particularly through the form of future actions, was required to establish probable cause. *See Clark*, 31 F.3d at 835 (affidavit failed to establish "what steps law enforcement agents took to

Defendant's Motion to Suppress
Evidence Derivative of Coinbase
Search Warrant- Page  17

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

corroborate the information"); *accord Luong*, 470 F.3d at 903 ("Beyond the mere presence of a chemist on a plane, [the affidavit] lacks any predictive information, the occurrence of which would verify the tip."); *but see Gates*, 462 U.S. at 244-46 (independent corroboration of predicted future activities contained in anonymous letter established probable cause).   In this vein, a similar FBI matter involving the dark web was corroborated by virtue of "[a]n undercover FBI agent, posing as a hitman," who "made contact with [the suspect]," "sent a photo of Victim 1," and confirmed "final . . . payment via Western Union."  (Wagley Decl., Ex. D at 2.)  Based upon the failure of the FBI to corroborate the anonymous messages in the situation at hand, probable cause fails as a matter of law.  *See id*.

## B. <u>The Exclusionary Rule Warrants Suppression of All Derivative Evidence Obtained as a Result of the Coinbase Search Warrant.</u>

The Supreme Court of the United States has "establish[ed] an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial." *Herring v. United States*, 555 U.S. 135, 139 (2009).  "[T]his judicially created rule is '<u>designed to safeguard Fourth Amendment rights generally through its deterrent effect</u>.'" *Herring*, 555 U.S. at 139-40 (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)).  The purpose of the exclusionary

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

rule is to promote "police professionalism" and help "secure good evidence without violating the law and the rights of American citizens." *United States v. Underwood*, 725 F.3d 1076, 1085 (9th Cir. 2013).  As such, any and all fruit of the poisonous tree (*i.e.*, an unconstitutional search) must be suppressed.  *See id.* This includes not only the Coinbase Search Warrant, but the custodial interrogation of Dr. Ilg at the Spokane International Airport, subsequent search warrants, and all obtained discovery.  (*See* ECF No. 1 at 10-12.)

## C. **The Good Faith Exception to the Exclusionary Rule in Inapplicable.**

The Government may argue that the "good faith" exception to the exclusionary rule applies.  In general, "[e]ven though a warrant is based on insufficient probable cause, the evidence need not be suppressed if an officer relies in good faith on the warrant's validity." *Mendonsa*, 989 F.2d at 369 (detective relied upon advice from county attorneys).  "The burden of demonstrating good faith rests with the government." *Underwood*, 725 F.3d at 1085.  The "good faith" exception does not apply "when the affiant knowingly or recklessly misleads the judge with false information," or "when the affidavit is so lacking in indicia of probable cause that official belief in its existence is objectively unreasonable." *Luong*, 470 F.3d at 902.  The Ninth Circuit has held that there must be "'binding appellate precedent . . . [that] specifically authorizes

Defendant's Motion to Suppress
Evidence Derivative of Coinbase
Search Warrant- Page  19

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

the police's search.'" *Cano*, 934 F.3d at 1021 (quoting *United States v. Lara*, 815 F.3d 605, 613 (9th Cir. 2016)).  Pursuant to this standard, it is not enough if the issue is "'unclear' or for the government's position to be 'plausibly . . . permissible.'" *Cano*, 934 F.3d at 1021 (quoting *Lara*, 815 F.3d at 613-14).

First, the good faith exception does not apply based upon a "critical deficiency" in the affidavit predicated upon "an unverified tip as the lynchpin for its theory of probable cause." *Luong*, 470 F.3d at 903.  As indicated *supra*, the unverified tip is the lynchpin of the Application at issue.  Second, at the very least, there is no binding appellate authority regarding the FBI's search.  To the contrary, the Application is insufficient to establish probable cause based upon the multitude of authority cited herein.  *See, e.g., Gates*, 462 U.S. at 230.

The Application at issue was carefully crafted by SA Barker to lure Magistrate Rodgers into believing the FBI had probable cause.  (*See* Wagley Decl., Ex. A at 19.)  In this vein, SA Barker overstates alleged corroboration of completely static details, such as that Victim 2 "confirmed that <u>she has a dog and her father lives in the Spokane area</u>."  (*Id*. at 19.)  Further, SA Barker states that the source(s) provided information "that resulted in the FBI arrest of a woman in Milwaukee" and "[t]he FBI is unaware of any incident in which the source has failed to provide accurate information," while in the same breath

Defendant's Motion to Suppress
Evidence Derivative of Coinbase
Search Warrant- Page  20

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

acknowledging "<u>BBC has not provided identification information</u>" and the "<u>source and/or sources [are] unknown to the FBI</u>." (*Id*. at 15.)  Finally, the FBI predicated the invasion of an individual's personal privacy on unauthenticated, "copied-and-pasted" messages provided by an international news organization, all while attempting to corroborate via text messages provided by the suspect's estranged wife. (*See id*.)  The good faith exception is clearly inapplicable.

## <u>CONCLUSION</u>

Based upon the foregoing, the Defendant respectfully requests that the Court suppress any and all evidence derivative of the Coinbase Search Warrant.

RESPECTFULLY SUBMITTED this 28th day of February, 2022.

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.


By: /s/ Andrew M. Wagley
    Carl J. Oreskovich, WSBA #12779
    Andrew M. Wagley, WSBA #50007
    *Attorneys for Ronald C. Ilg, MD*

Defendant's Motion to Suppress
Evidence Derivative of Coinbase
Search Warrant- Page  21

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

1
2

## **CERTIFICATE OF SERVICE**

3
4
5
6
7
8

I hereby certify that on the 28th day of February, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all attorneys of record in this matter.

9
10

EXECUTED in Spokane, Washington this 28th day of February, 2022.

11
12
13

By: /s/ Jodi Dineen
    Jodi Dineen, Paralegal

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32

Defendant's Motion to Suppress
Evidence Derivative of Coinbase
Search Warrant- Page  22

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100