Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Richard R. Barker
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RONALD CRAIG ILG (a/k/a "SCAR215"),<br><br>Defendant. | Case No.: 2:21-CR-00049-WFN-1<br><br>Government's Response to Defendant's Motion to Suppress Evidence |

Plaintiff, United States of America, by and through United States Attorney Vanessa R. Waldref and Assistant United States Attorney Richard R. Barker, respectfully submits the following response to the Defendant's Motion to Suppress, ECF No. 97.

The motion should be denied for three reasons: (I) the FBI had probable cause for the search warrant at issue; (II) the FBI submitted and executed the search warrant at issue in good faith; and (III) the government obtained the records at issue through alternate legal process.

## BACKGROUND

Defendant, Ronald Craig Ilg (hereafter "Ilg" or "the Defendant"), is charged by Superseding Indictment with numerous counts after paying more than $50,000 in

United States' Response to
Defendants Motion to Suppress - 1

Bitcoin to hire hitmen to assault Defendant's former co-worker (hereafter, Victim 1) and estranged wife (Victim 2) in early 2021. *See* ECF No. 80.

In early April 2021, FBI received information about the plot from one of the victim's attorneys as well as from a news agency. ECF No. 1. Specifically, the FBI obtained what appeared to be verbatim transcripts describing the nefarious plot for a hitman from a drug cartel to seriously injure these two women. ECF No. 98, Ex. 1 (Coinbase Search Warrant Application and Affidavit). The FBI was able to corroborate much of the information in the dark web messages, including Defendant's motive, and his animosity toward both victims. The FBI also obtained additional text messages in which Defendant's then-girlfriend (hereafter Witness 1) indicated that Defendant paid a dark web hitman to harm his estranged wife. *Id.* Through witness interviews, the FBI confirmed numerous details laid out in the dark messages. *Id.* The FBI then confirmed there were a number of actual Bitcoin payments consistent with those described in the dark messages. *See id.* at ¶20. Based on the FBI's analysis of these transactions, the FBI's Virtual Currency Response Team confirmed that the majority of the payments originated from Coinbase.com – a cryptocurrency trading platform. *See id.*

Based on this information, the FBI sought to confirm whether Defendant owned a Coinbase.com account and, if so, to compare transaction records from his account(s) with the payments described in the dark web messages. *Id.* Initially, the government sought to procure these records through a subpoena. *See id.* at p. 30 n.10. The government then elected to seek the Coinbase records through alternative process – namely through an April 9, 2021 search warrant to Coinbase, Inc. *See id.* A full and complete copy of the search warrant is enclosed in ECF No. 98, Exhibit 1.

Coinbase, Inc. complied with both the search warrant and the grand jury subpoena, providing the records to the government around April 9, 2021. The grand jury records actually were provided before Coinbase, Inc. responded to the search

warrant. Following receipt of the Coinbase records, which confirmed that Defendant's Coinbase account was one of the sources for the payments to harm Victim 2, the United States sought additional search warrants for Defendant's phone and home. Through additional investigation, the FBI recovered the username and password for the dark websites inside Defendant's biometric safe. ECF No. 1. Using these login credentials, the FBI obtained many of the dark web messages in which Defendant solicited hitmen to harm his victims. *See id.* Additional facts are set forth below.

## DISCUSSION

### I. The Search Warrant Is Supported by Probable Cause.

#### A. Legal Standard

"[P]robable cause means a fair probability that contraband or evidence of a crime will be found in a particular place, based on the totality of the circumstances." *United States v. Diaz*, 491 F.3d 1074, 1078 (9th Cir. 2007) (internal quotations omitted). The Ninth Circuit has explained, "whether there is a fair probability depends upon the totality of the circumstances, including reasonable inferences, and is a commonsense, practical question. Neither certainty nor a preponderance of the evidence is required." *United States v. Kelley*, 482 F.3d 1047, 1050-51 (9th Cir. 2007) (internal quotation omitted). Probable cause "is not a high bar: It requires only the kind of 'fair probability' on which 'reasonable and prudent [people,] not legal technicians, act.'" *Kaley v. United States*, 571 U.S. 320, 337 (2014). Ultimately, "an affidavit must establish a reasonable nexus between the crime or evidence and the location to be searched." *United States v. Crews*, 502 F.3d 1130, 1136–37 (9th Cir. 2007). "It need only be reasonable to seek the evidence at the location indicated in the affidavit." *Id.* at 1137.

A reviewing court affords "great deference" to an issuing judge's finding that probable cause supports a warrant. *United States v. Krupa*, 658 F.3d 1174, 1177 (9th Cir. 2011). The duty of a reviewing court is to "ensure that the magistrate had a

United States' Response to
Defendants Motion to Suppress - 3

substantial basis for concluding that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 214 (1983). "In borderline cases, preference will be accorded to warrants and to the decision of the magistrate issuing it." *United States v. Martinez*, 588 F.2d 1227, 1234 (9th Cir. 1987).

Where a search warrant is based primarily on information from an anonymous source, a reviewing magistrate court evaluates the tip through a totality of the circumstances analysis that "permits a balanced assessment of the relative weights of all of the various indicia of reliability (and unreliability) attending an informant's tip." *Gates*, 462 U.S. at 233. The "detailed nature of the information disclosed in the tip" is also a consideration in determining whether there is probable cause. *See, e.g.*, *United States v. Jennen*, 596 F.3d 594, 599 n.4 (9th Cir. 2020), *abrogated on other grounds by Descamps v. United States*, 570 U.S. 254 (2013), *and Mathis v. United States*, 579 U.S. 500 (2016).

Although "a conscientious assessment of the basis for crediting [anonymous] tips is required by the Fourth Amendment, a standard that leaves virtually no place for anonymous citizen informants is not." *Gates*, 462 U.S. at 238. While "it is clear that an uncorroborated anonymous tip is not sufficient to establish probable cause, nevertheless when . . . the information is sufficiently detailed as to remove suspicion of rumor or revenge; and that information is verified through independent investigation; and the cumulative effect of all information" gathered meets establishes probable cause, this is sufficient. *United States v. Rollins*, 699 F.2d 530, 533 (11th Cir. 1983).

The Ninth Circuit has held that an anonymous tip "must include a 'range of details." *United States v. Luong*, 470 F.3d 898, 903 (9th Cir. 2006). For example, the ability of an informant to predict future actions of others with specificity is one indicator of reliability. *Gates*, 462 U.S. at 245-46. Indeed, before acting on a tip from a source of unknown trustworthiness, police must corroborate the tipster's ability to predict future

United States' Response to
Defendants Motion to Suppress - 4

actions "not easily ascertained by public observation," or otherwise independently verify that the illegal conduct alleged in the tip is likely occurring. *United States v. Lopez*, 907 F.3d 472, 480–81 (7th Cir. 2018); *see also United States v. Morales*, 252 F.3d 1070, 1075 (9th Cir. 2001) (a search warrant based on an anonymous tip and nothing more "must predict future actions by the suspect that are subsequently corroborated by the police").

### B. The FBI Sufficiently Corroborated the Information in the Dark Messages that Defendant Was Hiring a Hitman to Kidnap His Estranged Wife.

Defendant alleges in his motion that the FBI failed to corroborate the information contained in the messages obtained from the dark web. *See generally* ECF No. 97. According to Defendant, probable cause is lacking here because the FBI did not corroborate some predictive aspect of the dark web messages by identifying some future action by Defendant. ECF No. 97 at 2, 16, 17, 18, 24. This argument, however, appears to be based on an overly narrow reading of the search warrant affidavit.

The affidavit in this case contains significant corroboration that Defendant had hired a dark web hitman to carry out a *future* kidnapping of Defendant's estranged wife. Here, the Magistrate Judge correctly found probable cause based on the following: (i) detailed nature of the dark web messages; (ii) corroboration through contemporaneous text messages; (iii) witness statements corroborating Defendant's motive to harm his victims; and (iv) cryptocurrency payments of approximately $50,000 consistent with those alleged in the dark messages.

### i. The dark web messages contained detailed information corroborated by the FBI.

The dark web messages are verbatim transcripts, containing timestamps, identification of certain victims, address information, links to photographs, etc. The transcripts, as provided to the FBI, consist of 16 pages of messages purportedly between Scar215 (later identified as Defendant) and operators of certain dark websites. ECF No.

United States' Response to
Defendants Motion to Suppress - 5

98, Ex. 1 at pp. 43-60. The messages themselves are jarring in their specificity for how Victims 1 and 2 were to be assaulted, and, in Victim 2's case, kidnapped.

With respect to Victim 1 – a medical doctor, whose professional livelihood depends on her ability to examine and treat patients with her hands – Scar215, the author of the dark messages, directed this victim "should be given a significant beating that is obvious. It should injure both hands significantly or break the hands." *Id.* at ¶11. The author of the dark messages, Scar 215, separately directed the following scheme for Victim 2 so that this second victim would return to a failed marriage with Defendant and drop her divorce proceedings against Defendant:

> The target destroyed two families and walked away as if she did nothing. I want the target kidnapped for 7 days. While being held, she will be given injections of heroin at least two times per day. She will be taught to do it herself and pics and videos of her doing on her own should be collected. Also, while being held, all means necessary will be done to get the following goals with in 2 weeks of her release. First, cancel all court proceedings immediately. Second, return to the chaos she left with her husband and the 3rd party she invited into the house, and third she will tell absolutely no one about her kidnapping and goals. She should be told that her families health, including her father and her kids, depend on her completing these rules. It would be unfortunate if her older boy became addicted to heroin. Or her dad be severely beaten or her dog be slaughtered. Any and all persuasion should be used. This needs to be done around April 9 to the 18th. If it is done at this time and the goals are achieved, the payment will be doubled

*Id.* at ¶14 (grammatical and typographical errors in original).

While the assault and kidnapping directives are troubling in their own right, the author included specific details about Victim 2's work schedule, childcare arrangements, family, and even the author's perception of Victim 2's stubbornness:

> The information shared with me regarding the target is she has a full time job and a part-time job at SpaBlue, https://spabluespokane.com/. She works there every other Wednesday night and closes the business by herself around 7 pm. I dont know for sure if she is actually working tonight,

United States' Response to
Defendants Motion to Suppress - 6

but it is likely. Her schedule gets complicated because she has kids every other week. This week she does not have kids. She will have kids starting Friday after work, around 4 . . . She is stubborn. The vendor/team will have to be very persuasive to get her to follow through with the goals.

ECF No. 91 at ¶ 16 (grammatical and typographical errors in original).

Consistent with these details, the FBI was able to confirm that victim 2 worked part time at Spa Blue and worked evenings on weeks that she does not have her children. *Id.* The FBI also confirmed that Defendant and Victim 2 would transfer custody of their child every Friday afternoon. *Id.* In other words, the FBI corroborated sensitive information contained in the dark messages that few, other than Defendant, would know – e.g., the victims' addresses, work schedules, family situations, court proceedings, and pets. *Id.* at ¶ 16. This level of detailed accuracy strongly corroborates that the dark messages themselves were reliable. *Jennen*, 596 F.3d at 599 n.4 (explaining that "the detailed nature of the information disclosed in the tip" is a consideration for determining whether there is probable cause).

Notwithstanding the depth and extent of information provided in the dark messages, the defense attempts to downplay these messages, claiming all of this information could have been obtained from a simple internet search. *See* ECF 97 at 16. Not so. This combination of information that included private divorce proceedings, personal work schedules, addresses, childcare arrangements, information about the victim's family, details regarding her pet dog are not easily accessible to the public. The messages themselves and the corroborated detail therein demonstrate the author of these messages had intimate level of personal knowledge regarding Victim 2's job, familial relationships, private life, and personality.

    ii. <u>The FBI obtained text messages corroborating that Defendant had considering harming and even kidnapping Victim 2.</u>

The FBI's Corroboration that Defendant was planning a future kidnapping – which was to take place around April 9 or April 18 – is found in contemporary text

United States' Response to
Defendants Motion to Suppress - 7

messages involving Defendant. In a series of messages on February 16, 2021, Witness 1 specified that Defendant was trying to hire someone from the dark web to hurt his estranged wife. ECF No. 98, Ex. 1 at ¶21. In the same string of messages, Witness 1 expressed, "I am afraid you will hire someone now to kill me." *Id.* Although Defendant later denied hiring anyone and claimed the dark web was a scam, the text messages strongly corroborate the dark messages obtained by the FBI, which set out Scar215's plan to hire a dark web hitman. It is not a mere coincidence that the FBI obtained dark web messages detailing Defendant's kidnapping plot shortly after Defendant was called out by his girlfriend about his efforts to hire someone on the dark web using Bitcoin to harm that same victim. *See Kelley*, 482 F.3d at 1050-51 (permitting the magistrate judge to draw reasonable inferences from the evidence presented in the search warrant affidavit).

Other text messages further corroborate the information in the dark messages obtained by the FBI. For example, the FBI corroborated that Defendant openly had discussed kidnapping his estranged wife in a text message with Defendant's nanny.[1] ECF No. 98, Ex. 1 at ¶ 23. In yet another message, Defendant's then-girlfriend confirmed Defendant had been acting very strangely during their trip to Mexico, which happened to correspond with the exact timing of the planned kidnapping. *Id.* at ¶ 25. While there may be innocent explanations for Defendant's behavior, it is also reasonable to infer Defendant was acting strangely because of the messages he was

---

[1] Defendant asserts that the message between Defendant and the nanny describe a sort of "sexual fantasy scenario." ECF No. 97 at 17. While that is certainly one interpretation of the message, the evidence that Defendant openly discussed kidnapping Victim 2 corroborates that Defendant previously considered kidnapping this victim – whether as part of some roleplay scenario or otherwise. *See Krupa*, 658 F.3d at 1177 (describing the "great deference" afforded to an issuing judge's finding of probable cause).

United States' Response to
Defendants Motion to Suppress - 8

sending via the dark web. *See Gates*, 462 U.S. at 243, n.13 (explaining that "seemingly innocent activity" may become "suspicious in the light of the initial tip").

### iii. Defendant's motive.

If this was not enough, the FBI confirmed through its initial investigation that no one, other than Defendant, had a motive for attempting to both (i) assault Victim 1 and (ii) kidnap Victim 2. Other than Defendant, no one else was identified who might have animosity toward these two victims, who share no apparent connection other than their association with Ronald Craig Ilg.

With respect to Victim 1, the author of the dark web messages directed and paid for a hitman to give Victim 1 "a significant beating that is obvious. It should injure both hands significantly or break the hands." ECF No. 98, Ex. 1.at 11. As noted in the search warrant affidavit, Victim 1 is a medical doctor that previously worked with Defendant. *Id.* at ¶24. Victim 1 confirmed to the FBI that Defendant did not like her. Rather, Defendant blamed Victim 1 for a workplace complaint filed against him and for his inability to obtain employment at Victim 1's medical practice in Idaho. *Id.*

Defendant had a separate motive for his plot to have Victim 2 kidnapped, injected with heroin, and extorted. Victim 2 confirmed – consistent with the dark messages – that she and Defendant were in contentious divorce proceedings. ECF No. 98, Ex. 1 at ¶¶22-23. Consistent with Defendant's motive to blackmail Victim 2 to return to Defendant's open marriage with a third person, who had been "invited into the relationship," the FBI corroborated that Defendant had in fact invited Witness 1 into the relationship. *Id.* This made Victim 2 increasingly uncomfortable in the period leading up to the divorce proceedings. *Id*. Here, the information provided to the FBI – and again corroborated in numerous respects – was specific and intimate, indicating the source was in "a special position to know about [Defendant's] clandestine lawbreaking." *See United States v. Wheat*, 278 F.3d 722, 735 (8th Cir. 2001).

United States' Response to
Defendants Motion to Suppress - 9

Relatedly, the specific timing and directives in the dark messages indicate the author was attempting to establish an alibi for Defendant. As explained in the affidavit, Defendant was in Mexico in early April 2021. He was scheduled to return on April 11. *Id.* at ¶25. Days earlier, on April 6, the author of the dark messages pressed for the kidnapping to take place on the weekend of April 9 – i.e., before Defendant returned. *Id.* at ¶18. It was reasonable for the Magistrate Judge to infer that Defendant authored the dark messages and was anxious for the kidnapping to take place before he returned from Mexico. This would have given Defendant – the estranged husband and a potential suspect in the event Victim 2 suddenly disappeared – an alibi for when Victim 2 was abducted.

        iv.     Analysis of Bitcoin Transactions.

The FBI also corroborated that the transactions described in the dark messages were real cryptocurrency transactions that occurred around the times denoted in the messages themselves. ECF No. 98 at Ex. 1, ¶20. As noted in the search warrant affidavit, Bitcoin transactions are saved on a public ledger, run by a decentralized network containing an immutable historical record of every transaction. *Id.* at ¶4(e)-(f). The FBI's analysis of the transactions confirmed several of transactions in question paid out from a Coinbase.com account – which is a cryptocurrency exchange. *Id.* at ¶20. The fact that the FBI was able to confirm actual cryptocurrency transactions further corroborated the information in the dark messages that someone was paying more than $50,000 in cryptocurrency to dark websites purportedly associated with one or more dark web hitmen. *See id.*

    C.  <u>Further Corroboration of Some Additional Unspecified Future Action Is Not Required to Establish Probable Cause in This Case.</u>

Notwithstanding that the FBI sufficiently corroborated Defendant's plan for future kidnapping of Victim 1, as alleged in the dark web messages, Defendant presses that probable cause is lacking because the "anonymous tip" did not "predict future

actions" that were "subsequently corroborated by the police." *See e.g.*, ECF No. 97 at 16. To be sure, the Ninth Circuit held in *Luong* that certain "unverified" anonymous tips "must predict future actions by the suspect that are subsequently corroborated by the police." 470 F.3d at 903. The selected language from *Luong* is inapplicable in this case for at least two reasons. *First*, unlike in *Luong*, the dark messages do not detail future steps Defendant might take to perpetrate the kidnapping. Rather the dark messages document the steps Defendant *already* had taken toward hiring a hitman to kidnap his estranged wife. *Second*, the source in this case, unlike the tipster in *Luong*, previously had proven reliable in another FBI case.

*First*, by the time tip was made known to the FBI, the Defendant already had largely completed the crime – attempted kidnapping – with which he has now been charged. In this context, courts have held that the "emphasis on the predictive aspects of an anonymous tip may be less applicable to tips purporting to describe contemporaneous, readily observable criminal actions." *See, e.g.*, *United States v. Wheat*, 278 F.3d 722, 734 (8th Cir. 2001); *United States v. Anderson*, 2012 WL 3309696, at *5 (N.D. Cal. Aug. 13, 2012) (a tip need not "predict future action" when "the tip at issue was not that Defendant was about to commit a crime; rather it was that Defendant had committed a crime.").

In this case, the defense would have the Court believe that absent corroboration of a *future* action, probable cause can never be found, even if, as is in the instant case, there is significant independent corroboration of the informant's reliability. *See* ECF No. 97 at ¶¶ 2, 16, 17, 18, 24. The law, however, does not "requir[e] that a tip predict future action" in every case. *Wheat*, 278 F.3d at 734. To the contrary, the Supreme Court has held that the reliability of the informant's information turns on the totality of the particular circumstances involved. *Id.*

United States' Response to
Defendants Motion to Suppress - 11

*Second*, this is not a case involving a completely anonymous, unreliable tipster. Courts recognize that a source who has provided credible information in the past is deemed more reliable than an anonymous letter writer or 911 caller. As the Ninth Circuit has explained, when "making a probable cause determination," a search warrant affidavit should "support an inference that the source was trustworthy and that the source's accusation of criminal wrongdoing was made on the basis of information obtained in a reliable way." *United States v. Landis*, 726 F.2d 540, 543 (9th Cir. 1984). Where a source's "information was reliable in the past and her current information was based on personal observation," this "lend[s] credibility to a confidential source." *Id.*

The confidential source in this case is distantly different than a purely anonymous informant. Here, the source who identified the dark web messages also provided information leading to federal murder-for-hire charges against another defendant in a prior case. *See* ECF No. 98, Ex. 1 at ¶11 n.7. As specified in the search warrant affidavit at issue, the informant "identified an earlier murder-for-hire plot that resulted in the FBI arrest of a woman in Milwaukee, Wisconsin for attempting to kill her husband via dark web murder-for-hire services." *Id*. In the instant case, the same source provided verbatim transcripts of the dark web messages. *See* ECF No. 98, Ex. 1 at 14. The fact that information from this source previously was deemed credible in another case provides strong indicia that the dark web transcripts – which included usernames, specific Bitcoin transaction information, timestamps authentication codes, personal identifying information, etc. – are reliable as well.[2]

---

[2] Defendant's motion cites *United States v. Crawford*, 943 F.3d 297, 306 (6th Cir. 2019), and claims that the FBI was required to take additional steps to verify the source's information because the "veracity" of the anonymous source was completely unknown to law enforcement. ECF No. 97 at 12 (quoting *United States v. Crawford*, 943 F.3d 297, 306 (6th Cir. 2019)). As set forth herein, the source's veracity was not unknown. Rather, the source had proven accurate in the Western District of

United States' Response to
Defendants Motion to Suppress - 12

In fact, aside from Defendant here, this source has provided information leading to criminal charges against other suspects who attempted to hire dark web hitmen. These include the following criminal cases – several of which have already resulted in a plea and/or sentencing:

- *United States v. Kelly Harper*, 3:21-cr-00018-WMC-1 (Defendant sentenced in October 2021 to 72 months in murder for hire scheme in the Western District of Wisconsin)
- *United States v. Neslon Paul Replogle*, 3:21-cr-00118-RLJ-DCP-1 (Defendant sentenced to 87 months of incarceration on February 24, 2022, for murder for hire scheme in the Eastern District of Tennessee)
- *United States v. Scott Quinn Berkett*, 2:21-cr-00292-MCS-1 (Defendant entered guilty plea in the Central District of California on May 3, 2022, in connection with murder for hire plot)
- *United States v. Deanna Marie Stinson*, 8:21-cr-00343-SDM-AAS-1 (Defendant sentenced to 78 months of incarceration on April 21, 2022, in a murder for hire scheme in the Middle District of Florida)
- *United States v. Christopher Pence*, 1:21-cr-393-TJM (Defendant indicted on murder-for-hire charges on November 9, 2021 in the Northern District of New York)
- *United States v. Kelsey Leigh Curles*, 1:21-cr-00789-MGL-1 (Defendant pled guilty on March 24, 2022 to cyberstalking in connection with dark web plot in the District of South Carolina)

In short, and irrespective of the subsequent cases in which the source's information lead to criminal convictions, the source of the dark web messages in this

---

Wisconsin. Even still, the FBI did take proactive steps to confirm the source's information – i.e., confirming Defendant's motive, identifying text messages in which Defendant was accused by his then-mistress of hiring a hitman on the dark web using Bitcoin, confirming Bitcoin transactions, etc. On this record, there was probable cause to believe Defendant was attempting to kidnap his estranged wife and probable cause to trust the reliability of the informant, who provided transcripts of the dark messages.

United States' Response to
Defendants Motion to Suppress - 13

case had proven to be reliable at the time of the search warrant. ECF No. 98, Ex. 1 at ¶ 14 n.7. Such reliability clearly has been borne out over time.

## II. Even If the Search Warrant Lacked Probable Cause, the Executing Officers Nonetheless Acted in "Good Faith."

Under the good faith exception, even if a warrant is not based on probable cause, the evidence need not be suppressed if an officer relies on the warrant in "good faith." *See United States v. Leon*, 468 U.S. 897, 922-23, n. 24 (1984). An officer is permitted to rely in "good faith" on a judicially approved search warrant where the officer acts "in objectively reasonable reliance" on the warrant. *See United States v. Underwood*, 725 F.3d 1076, 1085 (9th Cir. 2013). "To determine whether the officer acted in objectively reasonable reliance, 'all of the circumstances – including whether the warrant application had previously been rejected by a different magistrate – may be considered.'" *Id.* (quoting *Leon*, 468 U.S. at 922 n.23). The exception, however, doesn't apply "if the officers' conduct showed 'deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights.'" *United States v. King*, 985 F.3d 702, 710 (9th Cir. 2021) (quoting *Davis v. United States*, 564 U.S. 229, 238 (2011)).

"The central question is 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" *Id.* (quoting *Leon*, 468 U.S. at 922 n.23). Evidence will not be suppressed "when the magistrate, not the officer, errs." *United States v. Mendonsa*, 989 F.2d 366, 369 (9th Cir. 1993). However, information provided to the magistrate must be truthful "in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Franks v. Delaware*, 438 U.S. 154, 165 (1978). Evidence should be suppressed only if: (1) the magistrate has abandoned his detached and neutral role, (2) the officers were dishonest or reckless in preparing their affidavit, or (3) the officers could not have "harbored an objectively reasonable belief that probable cause existed." *Leon*, 468 U.S. at 926. It is the government's burden to demonstrate that the officers' reliance on an

United States' Response to
Defendants Motion to Suppress - 14

invalid warrant was reasonable. *See Center Art Galleries-Hawaii, Inc. v. United States*, 875 F.2d 747, 752 (9th Cir. 1989) *superseded by statute on other grounds as noted in J.B. Manning Corp. v. United States*, 86 F.3d 926, 927 (9th Cir.1996). For good faith to be lacking, the affidavit must lack even "a colorable argument for probable cause." *Luong*, 470 F.3d at 903.

When courts evaluate, "whether the *Leon* good-faith exception applies," the reviewing court is able to consider facts outside the affidavit. *See United States v. Martin*, 297 F.3d 1308, 1318 (11th Cir. 2002) ("[W]e find that we can look beyond the four corners of the affidavit and search warrant to determine whether [the officer] reasonably relied upon the warrant."); *United States v. Procopio*, 88 F.3d 21, 28-29 (1st Cir. 1996) (noting that information known to the police, but not included in the warrant, supported application of the *Leon* good faith exception to the exclusionary rule).

Turning again to the information adduced in this case, the executing officers acted in good faith reliance on the motion. In his motion, Defendant asserts broadly that "the Application is insufficient to establish probable cause based upon the multitude of authority cited herein" because of the unverified informant. ECF 96 at 20. As discussed at length herein, the informant provided reliable information that was corroborated by numerous data points – e.g., witnesses, text message, and Bitcoin transaction history. The affidavit also was detailed and expansive, explaining in depth the steps the FBI took to complete a diligent investigation in a very short period of time prior to Defendant's arrival from Mexico. Here, the affidavit is far from "so lacking in indicia of probable cause as to render official belief in its existence unreasonable" *Leon*, 468 U.S. at 922. Because the executing officers acted in good faith, suppression of evidence obtained during the execution of the search warrant would be an inappropriate remedy.

United States' Response to
Defendants Motion to Suppress - 15

### III. Even If the Search Warrant Lacked Independent Probable Cause, which It Does Not, the Exclusionary Rule Counsels Against Suppression.

"The inevitable discovery doctrine acts as an exception to the exclusionary rule, however, and permits the admission of otherwise excluded evidence 'if the government can prove that the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching by the police' *United States v. Reilly,* 224 F.3d 986, 994 (9th Cir. 2000) (quoting *Nix v. Williams*, 467 U.S. 431, 447 (1984)).

The inevitable discovery doctrine applies only when the fact that makes discovery inevitable is born of circumstances other than those brought to light by the illegal search itself. *Reilly*, 224 F.3d at 995. To prevail under the inevitable discovery doctrine, the government must prove by preponderance of the evidence that the evidence inevitably would have been discovered. *Nix*, 467 U.S. at 444. *See United States v. Vilar*, 729 F.3d 62, 82 (2d Cir. 2013) (admitting evidence seized during an unlawful search of the defendants' office under the inevitable discovery doctrine because the grand jury subpoena required the defendants to produce the documents seized during the search).

In this case, the United States independently obtained the records through the search warrant by other legal process, specifically through a grand jury subpoena that was returned on April 9, 2021 – the same day the search warrant was executed. *See* Bates 00000270-271 (subpoena return).[3] Because of the seriousness of the allegations and the nature of Defendant's messages on the dark web, the government submitted both a grand jury subpoena to Coinbase and sought a search warrant for these records.

---

[3] The subpoena return is a Microsoft Excel file that previously was provided to the defense in discovery. Because of the volume of information, the United States will make this file available to the Court for review to the extent necessary in resolving the pending motion. The United States is not aware of any dispute pertaining to the return of these records via subpoena.

United States' Response to
Defendants Motion to Suppress - 16

In any event, because the records would were also discovered through the grand jury subpoena, the evidence obtained during the execution of the search warrant should not be suppressed. To the extent that Defendant asserts that the information obtained from Coinbase was not lawfully obtained pursuant to the search warrant, such information was obtained through an alternate means.

## CONCLUSION

For the reasons set forth herein, the United States requests that the Court deny Defendant's Motion to Suppress.

DATED May 19, 2022

    Vanessa R. Waldref
    United States Attorney

    *s/ Richard R. Barker*
    Richard R. Barker
    Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to counsel of record.

    *s/ Richard R. Barker*
    Richard Barker
    Assistant United States Attorney