# **EXHIBIT F**

1
2
3
4
5
6

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF SPOKANE

7
8   In Re:                              )
9   J████ I██                          )   CAUSE NO.  20-3-01154-32
                          Petitioner,   )
10  And                                 )   AGREED ORDER REGARDING
                                        )   VISITATION
11  RONALD ILG,                         )
                          Respondent.   )
12  _____     )

13                      **I.  BASIS**

14      The parties, J████ I██ , Petitioner, through her attorney, BEVAN MAXEY and MAXEY LAW

15  OFFICES, PLLC and Respondent, RONALD ILG, through his attorney, EVAN DOBBS and DAVID J.

16  CROUSE & ASSOCIATES, PLLC move the Court for entry of an order regarding a temporary

17  residential schedule.

18
19                      **II.  FINDINGS**

20      The Court finds that there is good cause to enter said order in that the Parties agree to the terms

21  addressed herein.

22
23                      **III.  ORDER**

24  **IT IS HEREBY ORDERED** that the Parties are bound to the following terms:

25      a.  The parenting schedule is a shared residential schedule. This is a temporary plan until further

        order of the Court. The parties shall operate a week-on, week-off schedule, with the exchanges to

AGREED ORDER REGARDING VISITATION
- 1 of 2

Maxey Law Office, PLLC
1835 W. Broadway
Spokane, WA 99201
(509) 326-0338 Phone
(509) 325-4490 Fax

take place on Fridays at pick-up at daycare/preschool. Father may elect to not have the child in daycare on his residential time, but must have the child in daycare/preschool on the Fridays of exchanges. If the daycare/preschool facility is closed for any reason, then the exchanges shall be at the Albertsons on Francis and Nevada, but only in the event of a facility closure.

b. The non-residential parent shall have reasonable phone contact with the child, at a reasonable time and for a reasonable duration. Reasonable time shall be when the residential parent is in a position to accept a call with the non-residential parent. Phone conversations with the child shall be appropriate and not suggestive of current placement or litigation. This contact shall also be subject to the provisions of the Agreed Civil No-Contact Order.

c. Neither parent shall disparage the other in the presence of the child, nor allow any third-party to do so.

d. Neither parent shall discuss details of the case or litigation in the presence of the child.

DONE IN OPEN COURT this _____ day of January, 2021.

KEVIN STEWART
Court Commissioner

_____
JUDGE/COURT COMMISSIONER

Presented by:                              Approved for entry by:

MAXEY LAW OFFICES, PLLC          DAVID J. CROUSE & ASSOCIATES, PLLC

_____    _____
BEVAN MAXLEY, WSBA# 13827        EVAN DOBBS, WSBA# 54247
Attorney for Petitioner                  Attorney for Respondent

Maxey Law Office, PLLC
1835 W. Broadway
Spokane, WA 99201
(509) 326-0338 Phone
(509) 325-4490 Fax

**COPY**
Original Filed

**MAR 1 0 2021**

TIMOTHY W. FITZGERALD
SPOKANE COUNTY CLERK

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**Superior Court of Washington County of Spokane**

In re:

J█████ L█ ,

                                    Petitioner,

And

RONALD ILG,

                                    Respondent.

No. 20-3-01154-32

**Agreed Order for Trial Continuance**

## I.    BASIS

This matter is set on the trial calendar with this Court on April 19, 2021.  The parties move the Court for an order to continue trial.

## II.    FINDINGS

The parties have shown good cause for a continuance of the trial scheduled for April 19, 2021 at 9:00 a.m. in that the parties agree to a trial continuance.  The parties need additional time to mediate should this case proceed to trial. Pursuant to LCR 40(17)(e) Counsel hereby certifies that they have consulted with their clients and have received consent to enter this continuance order.

## III.    ORDER

**IT IS ORDERED** that:

1.    Trial is continued to June 28, 2021.

2.    A new case scheduling order shall issue to reflect this revised trial date.

AGREED ORDER FOR TRIAL CONTINUANCE        -1-

*Crouse Erickson*
*Family Law Attorneys*
422 West Riverside, Suite 920
Spokane, Washington 99201
(509) 624-1380
Fax (509) 747-6722

Dated: 3-10-21

HONORABLE RACHELLE ANDERSON
Superior Court Judge

Presented by:

Approved for entry:

EVAN C. DOBBS, WSBA #54247
Attorney for Respondent

BEVAN J. MAXEY, WSBA#13827
Attorney for Petitioner

AGREED ORDER FOR TRIAL CONTINUANCE          -2-

*Crouse Erickson*
*Family Law Attorneys*
*422 West Riverside, Suite 920*
*Spokane, Washington 99201*
*(509) 624-1380*
*Fax (509) 747-8725*

# EXHIBIT G

September,24,2020

I R█ S█ worked for J███████ I█ and Ron Ilg as their live- in nanny from March to July of 2018. My daughter and I lived above the garage In our own private Mother in law -Suite. My Job was simply to just care for their son L█ occasionally help pick up and drop off their other children at sporting activities, and some light housework. The first month J██████was home due to giving birth to L██ and I believe had about 4 to 6 weeks off before returning to school at Glen Dow Academy. That first month I obviously didn't do much with the baby. When not working my daughter and I would stay up in our mother in law -suite or we would spend some weekends at home (my mom's house) given there wasn't much for me to do at the time. J██████ was very easy to work for. We got along great and she always made sure to accommodate anything my daughter and I needed. When J█████returned to school I did not communicate all that much with her which meant most communication was left to Ron.

Ron was very accommodating in the beginning as well but After about two months Ron would say or text gestures that not only made me uncomfortable but did not seem appropriate as my boss. (see text enclosure 1)

I needed this job and felt conflicted and confused on what to do so I simply ignored the texts and tried my best to just keep it a professional setting and not feed to much into the texts.

Another month goes by and Ron starts to text more inappropriate things to me. For example, Ron had asked me to set out sexual clothes and toys for him and J█ ( I at the time had no idea what they were he just asked if I could set some things out for J█) he then went into detail on what the items were and how they are used for. I politely told him I was not interested in doing something like that after he asked if that's something id consider doing. (see text enclosure 2)

At this point I knew things would probably just get worse from here and did not feel safe or comfortable being there or having my daughter in that environment. I knew I was going to tell J█████and no longer continue to work for them. J█████had no recollection of what was going on as I was afraid to express what he was doing. There was a weekend in July that Ron had left out of town for work and J█████had school on that Saturday so I had L█with me for the day. J█████ gave me permission to take L█to my cousin's baby shower that day. The entire time I was there Ron was texting me all day nonstop and I was not responding which I believe aggravated him for some reason. He ended up sending a

very scathing text message that was not only inappropriate but completely out of line as somebody who is supposed to be my employer. I called my mom who'd known a little bit about what was going on and told her what he had texted me.(see text enclosure 3) We both agreed this was the final straw of being here and she came and we packed up my things to leave. J█████ arrived home mid packing and I explained to her what Ron had been doing the last two months and how uncomfortable I felt and did not feel safe being there anymore and I would no longer be working for them. She was processing what I had showed her and understood why I would no longer be working for them. Again, J█████ had no idea what was being said or texted, I felt scared and did not know how to communicate with her what was going on. Although he did not physically harm me or come onto me the text messages and gestures were enough to make me extremely uncomfortable and take an emotional toll on me.

Not once did J█████make me feel unsafe or uncomfortable while working for her. For the amount of time I spent with her and interacted with her I also don't believe she in anyways has any sort of alcohol problems. J█████ is a great person and great mom. None of which were ever something I questioned.

00000072.03

# Enclosure 1:



# Enclosure 2:



.ıll AT&T 📶    9:07 AM    22% 🔋⚡

‹    **Ron**    ⓘ

What time are you getting back. I may want some things laid out for j█ but not when they are coming through to look at the bathroom.

> When are they coming back again?

> 230? I can be back before that or like 3:00. I think we are going to workout after she gets done with school

3 would work

> Sounds good

Fri, Jul 13, 3:01 PM

So before j█ gets home, in the bottom right drawer of the armoire (the one with the mirror) there is a black corset, a pink handheld device and a small bag. Lay these out on the bed for me. I will let her know what to do with them.

> Okay haha did you guys already leave for Wenatchee? And did you

---

.ıll AT&T 📶    9:07 AM    22% 🔋⚡

‹    **Ron**    ⓘ

3 would work

> Sounds good

Fri, Jul 13, 3:01 PM

So before █ gets home, in the bottom right drawer of the armoire (the one with the mirror) there is a black corset, a pink handheld device and a small bag. Lay these out on the bed for me. I will let her know what to do with them.

> Okay haha did you guys already leave for Wenatchee? And did you lock the pantry on purpose?

Yes we left for Wenatchee yes I locked it on purpose because the boys wont stop eating all the snacks. The keys are next to the TV in my room will open it

> Oh okay I wasn't sure. Okay sounds good!





I hope you had a good workout tonight.

Sorry I was cleaning the kitchen for J▇ and L▇ was kinda fussy I didn't have time to reply haha But I didn't end up working out I wasn't feeling good.

I'm just trying to take it in I think haha I haven't done anything like that. J▇ doesn't seem like the type that's kinda funny 😬

You would be surprised.  What once was an "absolutely no way" became a "why did I wait so long to try?"  There are alot of opportunities, one just needs to keep an open mind.  For instance the pink thing you set out. She was skeptical at first, now, it's a favorite.

I didn't get here in time to workout either. Definitely tomorrow though.

So, if it's fairly straightforward would you be up for it?

So what will I be doing again, I guess I'm confused on the part lol

It would depend on what I decide the scenario would be and your comfort level.  As an example, if it was a kidnapping scenario. Something many women fear and yet sorta fantasize about. ▇ wouldn't be able to see (and it's almost impossible for her to know it's not me) but if someone was opening doors for me as I lead her outside and into a car it would add a significant amount of intrigue and uncertainty. It heightens the experience, gets the adrenaline flowing and really changes the whole dynamic with just that little bit of difference.  Of course it would have to be planned out well ahead of time so it certainly wouldn't be anytime soon.  But, knowing that I could have that extra tid bit of help adds dramatically



It would depend on what I decide the scenario would be and your comfort level.   As an example, if it was a kidnapping scenario. Something many women fear and yet sorta fantasize about. j wouldn't be able to see (and it's almost impossible for her to know it's not me) but if someone was opening doors for me as I lead her outside and into a car it would add a significant amount of intrigue and uncertainty. It heightens the experience, gets the adrenaline flowing and really changes the whole dynamic with just that little bit of difference.   Of course it would have to be planned out well ahead of time so it certainly wouldn't be anytime soon.   But, knowing that I could have that extra tid bit of help adds dramatically

I hope that sounds fairly safe on your part. And if you wanted to be more adventurous then that's possible too

   

     

US v. Ilg



ahead of time so it certainly wouldn't be anytime soon. But, knowing that I could have that extra tid bit of help adds dramatically

I hope that sounds fairly safe on your part. And if you wanted to be more adventurous then that's possible too

Let me know what you think

Sat, Jul 14, 9:45 AM

Let me know what you think

Mmmmm I thought a lot about it and I think I'm going to have to decline. I've never been the one to take part in any kind of threesome or role play with another couple haha
If it was between a boyfriend maybe that would be different. Lol

No problems. I appreciate you giving it some consideration. I'm always open to questions or discussion 😉

00000072.09



Don't forget the life jacket.

> Yeah if I'm ever curious or something I definitely will ask!!
> I hope this doesn't affect anything. I think I'm just not that open to new things haha
> And I won't!

No. It absolutely doesn't affect anything!! I've found that what limits people is their inability to just talk about stuff. Once you get past that, it opens up so many opportunities, in all things. Kind of like what we talked about, fear of failure and rejection. So, not being open to new things is understandable. But leaving a door open to talk about stuff can be eye opening to lots of possibilities. For instance, just knowing that one can spice things up in alot of different ways is good information to have to avoid the "typical" which, let's face it, can become typical. So, in short, everything is good, and dont hesitate to discuss anything

   
      

Enclosure 3:



I gotta think of something else.

Yes, if you can get some tomorrow that would be great

Well if you cant sleep, send me a text I've been sleeping really poorly lately

Yesterday 10:42 AM

Have a great day.  Not sure if you've left yet or not,  but if not pick a cute outfit just in case you can get some photos.  Maybe some with k  in them too.  If not, we can always plan an official photo shoot sometime@

Today 7:59 AM

No response after I reached out a couple times.  Thus either a direct or indirect message on your part. So, we will go with the standard "nanny model."  No worries, that's fine.

Today 10:23 AM



**Ron**

Today 10:23 AM

Sorry when I'm home on the weekends I don't usually have my phone my a lot because we're always busy doing something!
I try not to be on my phone a lot in general

Today 7:30 PM

Well, the easiest thing would be to simply say "ok" and leave it at that. But, when I see BS I have a tendency to call it out. You saw them, on your phone that you almost always have with you, and blew them off for likely one of two reasons. 1. You were so busy that you couldn't type out something like "you too, I will let you know how it goes," or "we couldn't get a single photo but maybe we can do something later." If you were too busy to acknowledge with something like that, then I was so low on your priority list that it's almost depressing. 2nd option, you





... my perception of them.

Well, the easiest thing would be to simply say "ok" and leave it at that. But, when I see BS I have a tendency to call it out. You saw them, on your phone that you almost always have with you, and blew them off for likely one of two reasons. 1. You were so busy that you couldn't type out something like "you too, I will let you know how it goes," or "we couldn't get a single photo but maybe we can do something later." If you were too busy to acknowledge with something like that, then I was so low on your priority list that it's almost depressing. 2nd option, you didn't want to because of some concern, question or feeling you have/had. There may be others but your original stab at it was BS. And like I've said in the past, I'm really good at reading and understanding people. And obviously, the responses I get from people colors my perception of them.

# **EXHIBIT H**



**LUKINS&ANNIS** | ATTORNEYS

717 W. SPRAGUE AVE., STE. 1600
SPOKANE, WA 99201-0466
(509) 455-9555
billing@lukins.com
TAX ID #91-0931326

November 11, 2020

DR RONALD ILG
7207 E UHLIG
SPOKANE, WA 99217

Invoice #:      413154
Client #:       032481
Matter #:       00003
Billing Atty:   Franklin

## INVOICE SUMMARY

For professional services rendered and costs advanced through October 31, 2020:

RE: ███████

| | |
|---|---|
| Professional Services | $ |
| Total Costs Advanced | |
| **TOTAL THIS INVOICE** | |
| Outstanding Invoices | |
| **TOTAL BALANCE DUE** | |

*Paid 11/23*

**PAYMENT DUE UPON RECEIPT**
12% APR Service Charge Imposed On All Invoices Not Paid Within 30 Days of the Invoice Date
This statement may not include expense items for which we have not yet been billed.

# **EXHIBIT I**

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Washington

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>*RONALD CRAIG ILG* | )<br>)  Case No.: 2:21-MJ-00203-JTR<br>)<br>)<br>) |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the Eastern District of Washington *(identify the person or describe the property to be searched and give its location)*: **SEARCH OF PERSON RONALD CRAIG ILG as further described in Attachment A,** which is herein incorporated by reference.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized):* See Attachment B, which is herein incorporated by reference.

**YOU ARE COMMANDED** to execute this warrant on or before **April 23, 2021** *(not to exceed 14 days)*

☑ in the daytime  6:00 a.m. to 10 p.m.                    ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____John T. Rodgers_____
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
    ☐ for ____ days *(not to exceed 30)*  ☐ until, the facts justifying, the later specific date of

Date and time issued:    4-10-21 @ 3:35 p.m.              _____
                                                                                          *Judge's signature*

City and state:    Spokane, Washington              John T. Rodgers, United States Magistrate Judge
                                                                              *Printed name and title*

*AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)*

| **Return** | | |
|---|---|---|
| Case No.: **2:21-MJ-00203-JTR** | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

| **Certification** |
|---|
| I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge. |

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## **ATTACHMENT A**

### *No. 2:21-MJ-00203-JTR*

### **Person to Be Searched**

The person to be searched is Ronald Craig Ilg, a male born on ████████ ████ with brown hair and blue eyes, approximately 5'10" tall and 170 pounds, including all personal items and containers in his physical possession, on his person, or in areas within his immediate control to include all checked luggage, as Ilg is currently traveling.



## ATTACHMENT B

### *No. 2:21-MJ-00203-JTR*

I.    **Items to be Seized**

1.  The items to be seized are evidence, contraband, fruits, or
instrumentalities of violations of 1) 18 U.S. C. § 373 - Solicitation to Commit a
Crime of Violence (Kidnapping); 2) 18 U.S.C. § 1201(a), (d) – Attempted
Kidnapping; 3) 18 U.S.C. § 1201(c) – Conspiracy to Kidnap; 4) 18 U.S.C §
875(b)-(c) – Extortion; and, 5) 21 U.S.C. § 846, 841 – Conspiracy to distribute
heroin (hereafter and collectively, the "SUBJECT OFFENSES"):

    a.    Records, correspondence, journals, contracts, letters and memoranda
of agreements between potential coconspirators, receipts, phone
records, phone books, address books, notations and other papers, and
any files relating to the  ordering or purchasing of Violence-for-Hire.

    b.    Financial records to include expenses incurred in obtaining dark-web
Violence-for-Hire services.

    c.    Receipts, notes, ledgers, records, programs, and applications relating
to Bitcoin and other cryptocurrencies to include wallet identification
and recovery seeds.

    d.    Records reflecting names, addresses, telephone numbers, internet
monikers, and other contact or identification data for others involved
in the exchange of bitcoin and other cryptocurrencies.

    e.    Any digital device potentially used to facilitate the above listed
violations of the SUBJECT OFFENSES and forensic copies thereof.

2.  As used herein, the terms "records," "documents," "programs,"
"applications," and "materials" include records, documents, programs,

2

US v. Ila

20000004.62

applications, and materials created, modified, or stored in any form, including in digital form on any digital device and any forensic copies thereof.

3. As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as telephone paging devices, beepers, mobile telephones, and smart phones; digital cameras; gaming consoles (including Sony PlayStations and Microsoft Xboxes); peripheral input/output devices, such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media; related communications devices, such as modems, routers, cables, and connections; storage media, such as hard disk drives, floppy disks, memory cards, optical disks, and magnetic tapes used to store digital data (excluding analog tapes such as VHS); and security devices. ***The United States will apply for separate search warrants to examine any digital devices seized.***

***PROVIDED FURTHER: If searchers encounter evidence of a crime other than that specified on the face of this Warrant application, this search shall cease and a separate warrant obtained.***

3

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Washington

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) | Case No.: 2:21-MJ-00206-JTR |
| | ) | |
| | ) | |
| *Smartphone belonging to Ronald Craig Ilg* | ) | |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the Eastern District of Washington *(identify the person or describe the property to be searched and give its location)*: **Smartphone belonging to Ronald C. Ilg as further described in Attachment A,** which is herein incorporated by reference.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*: See Attachment B, which is herein incorporated by reference.

**YOU ARE COMMANDED** to execute this warrant on or before **April 23, 2021** *(not to exceed 14 days)*

☑ in the daytime  6:00 a.m. to 10 p.m.          ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____John T. Rodgers_____
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for ____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____

Date and time issued:     4-10-21 @ 3:59 p.m.          _____
                                                                                                  *Judge's signature*

City and state:     Spokane, Washington          John T. Rodgers, United States Magistrate Judge
                                                                                      *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: **2:21-MJ-00206-JTR** | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

| Certification |
|---|
| I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge. |

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

20000007.62

## **ATTACHMENT A**

### *2:21-MJ-00206-JTR*

## I.    Device to be Searched:

The personal cellular device of RONALD CRAIG ILG, believed to be on his person and responding to the telephone number (        the number known by investigators to be utilized by RONALD CRAIG ILG.

**ATTACHMENT B**

*2:21-MJ-00206-JTR*

## I.    **Items to be Seized**

1.      The following records, documents, files, or materials, in whatever form, that constitute or contain evidence, instrumentalities, or fruits of violations of 1) 18 U.S. C. § 373 - Solicitation to Commit a Crime of Violence (Kidnapping); 2) 18 U.S.C. § 1201(a), (d) – Attempted Kidnapping; 3) 18 U.S.C. § 1201(c) – Conspiracy to Kidnap; 4) 18 U.S.C § 875(b)-(c) – Extortion; and, 5) 21 U.S.C. § 846, 841 – Conspiracy to distribute heroin (hereafter and collectively, the "SUBJECT OFFENSES"):

> b.  any and all documents, records or information relating to the negotiation and purchase of Violence-for-Hire services.
>
> c.  any and all documents, records or information relating to the transfer, purchase, sale or disposition of cryptocurrency;
>
> d.  any and all documents, records, or information relating to the access and utilization of hidden (Tor-based) services;
>
> e.  any and all documents, records, or information relating to email accounts used in furtherance of these offenses;
>
> f.  any and all records and electronic data reflecting names, addresses, or telephone numbers of co-conspirators, or identifying information of individuals operating on the "dark web"
>
> g.  all bank and other financial records.
>
> h.  any documentation, operating logs and reference manuals regarding the operation of the digital device or other electronic storage media or software;

i.   any applications, utility programs, compilers, interpreters, and other software used to facilitate direct or indirect communication with the computer hardware, storage devices, or data to be searched;

j.   evidence of who used, owned, or controlled the digital device or other electronic storage media at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

k.   evidence of software that would allow others to control the digital device or other electronic storage media, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

l.   evidence of the lack of such malicious software;

m.   evidence of the attachment to the digital device of other storage devices or similar containers for electronic evidence;

n.   evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the digital device or other electronic storage media;

o.   evidence of the times the digital device or other electronic storage media was used;

p.   passwords, encryption keys, and other access devices within the device, that may be necessary to access other applications within the digital device or other electronic storage media;

q.   contextual information necessary to understand the evidence described in this attachment.

r.   records of Internet Protocol addresses used;

s.   records of internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search

3

terms that the user entered into any internet search engine, and records of user-typed web addresses.

t.  Any and all hidden services accounts used in furtherance of the offenses described above, including, but not limited to, darknet market accounts, associated darknet forum accounts and Tor-based email accounts.

u.  Any and all peer to peer (P2P) cryptocurrency trading platform accounts, with no registered or identified service provider to which legal process may be served, used in furtherance of the offenses described above.

v.  Cryptocurrency in any format, including but not limited to, wallets (digital and paper), public keys (addresses), private keys, and recovery seeds.

2.      The seizure of digital devices or other electronic storage media and/or their components as set forth herein is specifically authorized by this search warrant, not only to the extent that such digital devices or other electronic storage media constitute instrumentalities of the criminal activity described above, but also for the purpose of conducting off-site examinations of their contents for evidence, instrumentalities, or fruits of the aforementioned crime

3.      This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied

//

4

electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

   ***PROVIDED FURTHER: If searchers encounter evidence of a crime other than that specified on the face of this Warrant application, this search shall cease and a separate warrant obtained.***

# EXHIBIT J

AO 93 (Rev. 11/13) Search and Seizure Warrant

## UNITED STATES DISTRICT COURT

for the

Eastern District of Washington

| In the Matter of the Search of | ) |
|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) Case No.: 2:21-MJ-00204-JTR |
| | ) |
| M███████ R. P███████ | ) |
| | ) |

### SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the Eastern District of Washington *(identify the person or describe the property to be searched and give its location):* **SEARCH OF PERSON M███████ R. P███████ as further described in Attachment A,** which is herein incorporated by reference.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized):* See Attachment B, which is herein incorporated by reference.

**YOU ARE COMMANDED** to execute this warrant on or before **April 23, 2021** *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10 p.m.     ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ John T. Rodgers _____
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for ___ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of

Date and time issued:    4-10-21 @ 3:43 p.m.    _____
                                                      *Judge's signature*

City and state:    Spokane, Washington    John T. Rodgers, United States Magistrate Judge
                                              *Printed name and title*



US v. Ilg

20000005.59

*AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)*

| Return | | |
|---|---|---|
| Case No.: **2:21-MJ-00204-JTR** | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

| Certification |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date:
_____

_____
*Executing officer's signature*

_____
*Printed name and title*

## **ATTACHMENT A**

### *No. 2:21-MJ-00204-JTR*

### **Person to Be Searched**

The person to be searched is M█████ R███ P█████, a female born on ████████████████████ with brown hair and brown eyes, approximately 5'4" tall and 150 pounds, including all personal items and containers in her physical possession, on her person, or in areas within her immediate control, to include all checked luggage, as P████ is currently traveling.



## ATTACHMENT B

### *No. 2:21-MJ-00204-JTR*

I.  **Items to be Seized**

1.  The items to be seized are evidence, contraband, fruits, or instrumentalities of violations of 1) 18 U.S. C. § 373 - Solicitation to Commit a Crime of Violence (Kidnapping); 2) 18 U.S.C. § 1201(a), (d) – Attempted Kidnapping; 3) 18 U.S.C. § 1201(c) – Conspiracy to Kidnap; 4) 18 U.S.C § 875(b)-(c) – Extortion; and, 5) 21 U.S.C. § 846, 841 – Conspiracy to distribute heroin (hereafter and collectively, the "SUBJECT OFFENSES"):

   a.  Records, correspondence, journals, contracts, letters and memoranda of agreements between potential coconspirators, receipts, phone records, phone books, address books, notations and other papers, and any files relating to the  ordering or purchasing of Violence-for-Hire.

   b.  Financial records to include expenses incurred in obtaining dark-web Violence-for-Hire services.

   c.  Receipts, notes, ledgers, records, programs, and applications relating to Bitcoin and other cryptocurrencies to include wallet identification and recovery seeds.

   d.  Records reflecting names, addresses, telephone numbers, internet monikers, and other contact or identification data for others involved in the exchange of bitcoin and other cryptocurrencies.

   e.  Any digital device potentially used to facilitate the above listed violations of the SUBJECT OFFENSES and forensic copies thereof.

2.  As used herein, the terms "records," "documents," "programs," "applications," and "materials" include records, documents, programs,

applications, and materials created, modified, or stored in any form, including in digital form on any digital device and any forensic copies thereof.

3. As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as telephone paging devices, beepers, mobile telephones, and smart phones; digital cameras; gaming consoles (including Sony PlayStations and Microsoft Xboxes); peripheral input/output devices, such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media; related communications devices, such as modems, routers, cables, and connections; storage media, such as hard disk drives, floppy disks, memory cards, optical disks, and magnetic tapes used to store digital data (excluding analog tapes such as VHS); and security devices. ***The United States will apply for separate search warrants to examine any digital devices seized.***

***PROVIDED FURTHER: If searchers encounter evidence of a crime other than that specified on the face of this Warrant application, this search shall cease and a separate warrant obtained.***

3