Carl J. Oreskovich, WSBA #12779
Andrew M. Wagley, WSBA #50007
Etter, McMahon, Lamberson,
Van Wert & Oreskovich, P.C.
618 West Riverside Avenue, Suite 210
Spokane, WA  99201
(509) 747-9100
(509) 623-1439 Fax
Email: carl@ettermcmahon.com
Email: awagley@ettermcmahon.com
*Attorneys for Defendant Ronald C. Ilg, MD*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br> v.<br><br>RONALD CRAIG ILG,<br><br>      Defendant. | Case No. 2:21-cr-00049-WFN<br><br>**DEFENDANT'S MOTION TO EXCLUDE ALLEGED DARK WEB MESSAGES AND WEBSITES**<br><br>**Oral Argument:**<br> July 20, 2022 at 9:00 am<br> Spokane, WA |

COMES NOW, the Defendant Ronald C. Ilg, MD ("Dr. Ilg"), by and through his attorneys of record, and hereby submits the following Motion to Exclude Alleged Dark Web Messages and Websites.  As explained below, the alleged dark web messages, transcript, and dark websites must be excluded as:

(1) The evidence violates the Confrontation Clause as its primary

    purpose is to establish events in a subsequent criminal prosecution

Defendant's Motion to Exclude Alleged Dark
Web Messages and Websites- Page  1

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

and the Government has not produced the unknown source(s).  *See Davis v. Washington*, 547 U.S. 813, 822 (2006) (statements are "testimonial" when the "primary purpose" is to "establish or prove past events potentially relevant to later criminal prosecution").

(2)    The Government is unable to adequately authenticate the dark web evidence via a witness with direct knowledge or adequate circumstantial evidence.  *See United States v. Vayner*, 769 F.3d 125, 131 (2nd Cir. 2014) (social media website not authenticated by virtue of testimony that agent "saw [the website] and this is what it says," despite that "the agent does not know who created it").

(3)    Such evidence constitutes inadmissible hearsay.  *See* ER 801(c).

## FACTUAL BACKGROUND

This is a prosecution for attempted kidnapping and various other crimes related to the dark web.  The Government's theory of the case is that Dr. Ilg, using the moniker "Scar215," communicated "with various administrators/representatives from dark-web sites to hire someone to harm two individuals."  (ECF No. 1 at 4.)

The "dark web" is a portion of the "Deep Web" of the Internet, where <u>individuals must use an anonymizing software or an application called a "darknet" to access contents and websites</u>.  The

Defendant's Motion to Exclude Alleged Dark
Web Messages and Websites- Page  2

ETTER, MᶜMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

> Deep Web is the portion of the Internet not indexed by search engines. Within the dark web, criminal marketplaces operate, allowing individuals to buy and sell illegal items, such as drugs, firearms, and other hazardous materials, with greater anonymity than is possible on the traditional Internet (sometimes called the "clear web" or simply the "web"). These online market websites use a variety of technologies, including the Tor network and other encryption technologies, to ensure that communications and transactions are shielded from interception and monitoring.

(*Id.* at 3 n. 1.) The "Tor Network"—an abbreviation for "The Onion Router"—is a "special network of computers on the Internet, distributed around the world, designed to conceal the true Internet Protocol ('IP') address of the computers accessing the network, and thereby, the location and identities of the network's users," along with the "servers hosting the websites." (ECF No. 98-1 at 7.)

The Government identifies three alleged dark websites where the communications with "Scar215" occurred. Initially, the Government obtained a "transcript" of the dark web messages after they were provided by unknown source(s), to the British Broadcasting Company ("BBC"), to Victim 2, and then subsequently to the Federal Bureau of Investigation ("FBI"). (*See* ECF No. 98-1 at 15-16.) According to the Government, BBC "was conducting an investigation for a series related to murder-for-hire services on the dark web" and "located a dark-web internet site offering murder-for-hire services in exchange for cryptocurrency." (ECF No. 1 at 3.)

Defendant's Motion to Exclude Alleged Dark
Web Messages and Websites- Page 3

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201  (509) 747-9100

The message "transcript" is copied and pasted into a separate word document and does not contain screenshots or files of the alleged original messages.  (*See* ECF No. 98-1 at 38-55.)  The first page of the "transcript" contains, *inter alia*, "Notes" allegedly identifying Dr. Ilg as "Scar215":

**Connection?**

There is a 'Dr. Ron C. Ilg' who is a neonatologist who might connect the two

https://health.usnews.com/doctors/ron-ilg-310690

(*Id*. at 38.)  The transcript is approximately 16 pages.  (*See id*. at 38-55.)

All of the dark web messages are alleged to have occurred through: (1) "DARK WEBSITE #1, which purported to provide murder for hire services"; (2) "DARK WEBSITE # 2," which "purported to be associated with a foreign cartel"; and (3) "DARK WEBSITE #3," a purported "dark web escrow service." (ECF No. 1 at 5-8.)   As part of the further investigation, the FBI allegedly was "able to locate actual copies of <u>several</u> of ILG's messages from DARK WEBSITEs #1-3."  (ECF No. 1 at 11; ECF No. 107 at 3.)  The FBI indicates that agents were able to login to the dark websites and "took screenshots of ILG's dark web messages." (ECF No. 1 at 11; *accord* Wagley Decl., Exs. A-C.)

As allegedly discovered during the Government's investigation, Dark Website #1 is called "Internet Killers" and appears as follows:

Defendant's Motion to Exclude Alleged Dark
Web Messages and Websites- Page  4

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100



(Wagley Decl., Ex. A.)  However, the alleged messages regarding Dark Website #1 "were <u>not located during the search</u>, indicating those messages were somehow deleted or not retained by the site."  (ECF No. 1 at 12 n. 5.)

Dark Website #2 is entitled "Sinaloa Cartel Marketplace":



(Wagley Decl., Ex. B.)  The messages allegedly obtained from Dark Website #2 include the following messages sent to "Scar215":

**"Juan admin":** Your new job request has been received . . .
**"Juan admin":** The hitman understand the goals perfectly. . . .

ETTER, MᶜMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

**"Juan admin":** I checked the escrow transaction view code and I see you have added 0.664 to escrow. . . .  To earn the additional associated bonus, within 2 weeks of the target being released, she will have completed the specific goal. 1. Permanently withdraw all court motions and all mediated agreements. Bonus $10k 2. Return to your husband by asking to move back home AND fucking him at least three times within the 2 week time frame Bonus: $10k 3. Keep her mouth shut and tell no one, ever about the kidnapping Bonus $10k 4. Inject her daily with heroin and teach her to do it AND supply pics and videos of her injecting herself. $5k 5. Plant drugs and used needles with her DNA . . . Provide some pics of drugs and needles scattered around $5k It is important to note that the husband does NOT know this is happening.

**"Juan admin":** . . . The hitman is happy he sees the bonus in escrow; he is glad to know you have the money available.  He will follow the directions as exactly specified by you . . .

**"Juan admin":** . . . I see uou [sic] have added $5k to escrow here, and $10 k to external escrow as per the view code you provided.  This is $15 k of the bonus[.]  I talked to the hitman and he said he can fill the tasks for the bonus in max two weeks . . .

(ECF No. 107-1 at 2-13.)

In relation to Dark Website #3, the Government identifies it as "Dark Bitcoin Escrow (DBE)" and provides the following appearance:



Defendant's Motion to Exclude Alleged Dark
Web Messages and Websites- Page  6

ETTER, M<sup>c</sup>MAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

(Wagley Decl., Ex. C.)  The Government alleges that the DBE dark website shows "Pending funds from customer" and a balance of "0.664 BTC."  (ECF No. 107-3 at 2.)  Pertinent correspondence allegedly sent to "Scar215" indicates that "the bitcoin escrow has been started."  (*Id*. at 2-3.)

Based upon an FBI Serial 22 drafted on April 6, 2021, FBI Agents David DiBartolo and Christian Parker interviewed the BBC individuals associated with the unknown source(s).  (*See* Wagley Decl., Ex. D.)  The BBC associate allegedly stated "that an individual or group of people run scam websites on the dark web."  (*See id*. at p. 1.)  The associate further stated that "Sinaloa and Hydra [Dark Websites #1-2] are two of the sites linked to this person/group."  (*Id*.)  The witness further provided that "DBE [Dark Website #3] is a fake escrow site" and "is run by the same person/group."  (*Id*.)

Based upon the nature of the FBI's investigation, it is anticipated that the Government will not be able to secure the trial attendance and testimony of the "person/group" who allegedly was involved in the dark web messages with "Scar215," along with the administrators of the dark websites.

## POINTS & AUTHORITIES

Alleged Confrontation Clause violations are reviewed *de novo* on appeal. *United States v. Brooks*, 772 F.3d 1161, 1167 (9th Cir. 2014).  Although

Defendant's Motion to Exclude Alleged Dark
Web Messages and Websites- Page  7

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

determinations regarding the admissibility of evidence are left to the discretion of the Court, interpretations of the Federal Rules of Evidence are reviewed *de novo* as well. *United States v. Lindsay*, 931 F.3d 852, 859 (9th Cir. 2019).

**A. Admission of the Alleged Dark Web Messages, Transcript, and Dark Websites Violates the Confrontation Clause.**

Pursuant to the Sixth Amendment of the Constitution of the United States, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." In turn, "the 'bedrock procedural guarantee' of the Confrontation Clause 'commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing the crucible of cross-examination.'" *United States v. Esparza*, 791 F.3d 1067, 1071 (9th Cir. 2015) (quoting *Crawford v. Washington*, 541 U.S. 36, 42, 61 (2004)). The "principal evil" with which the Confrontation Clause was concerned was "the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused." *Crawford,* 541 U.S. at 51.

The stringent requirements of the Confrontation Clause do not allow for "open-ended exceptions from the confrontation requirement to be developed by the courts." *Bullcoming v. New Mexico*, 564 U.S. 647, 662 (2011). In this vein, the entire crux of modern Confrontation Clause jurisprudence is to reject the

Defendant's Motion to Exclude Alleged Dark
Web Messages and Websites- Page  8

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

right to confront witnesses predicated upon an amorphous "judicial determination of reliability" pertaining to *ex parte* statements. *Bullcoming*, 564 U.S. at 658. Furthermore, "the 'Confrontation Clause imposes a burden on the prosecution to present its witnesses, <u>not on the defendant to bring those adverse witnesses into court.</u>'" *United States v. Macias*, 789 F.3d 1011, 1018 (9th Cir. 2015) (quoting *Melndez-Diaz v. Massachusetts*, 557 U.S. 305, 324 (2009)).

The Confrontation Clause applies when the Government offers: (1) "testimonial statements," (2) for "the truth of the matter asserted," and (3) absent "a prior opportunity for cross-examination." *Crawford*, 541 U.S. at 59 n. 9, 68; *accord Brooks*, 772 F.3d at 1167.

### 1. The Alleged Dark Web Messages, Transcript, and Dark Websites Are "Testimonial."

Under the Confrontation Clause, a statement is "testimonial" if its "'primary purpose'" is "to 'establish or prove past events <u>potentially relevant to later criminal prosecution.</u>'" *United States v. Vo*, 766 Fed. Appx. 547, 549 (9th Cir. 2019) (unpublished)[1] (quoting *Davis v. Washington*, 547 U.S. 813, 822 (2006)); *accord Esparza*, 791 F.3d at 1072. As such, a statement is "testimonial" if it "was 'made under circumstances which would <u>lead an</u>

---

[1] All unpublished and out-of-jurisdiction authorities herein are offered as nonbinding, persuasive authorities only. *See* LCivR 7(g)(2).

Defendant's Motion to Exclude Alleged Dark Web Messages and Websites- Page 9

ETTER, McMAHON, LAMBERSON, VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

objective witness reasonably to believe that the statement would be available for use at a later trial.'" *Bustamante*, 687 F.3d at 1194.  Therefore, "'the subjective or actual purpose of the individuals involved in a particular encounter'" is not dispositive. *Brooks*, 772 F.3d at 1168.

Although the Supreme Court has "declined 'to spell out a comprehensive definition of testimonial,'" various manifestations exist. *Bustamante*, 687 F.3d at 1193 (quoting *Crawford*, 541 U.S. at 68).  Classic examples include "'ex parte in-court testimony or its functional equivalent,'" including "'affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements.'" *Id*.  However, statements in virtually any medium are testimonial if the "primary purpose" test is satisfied. *See id*.

In this vein, "'[a] document created solely for an 'evidentiary purpose,' . . . made in aid of a police investigation, ranks as testimonial.'" *United States v. Anekwu,* 695 F.3d 967, 974 (9th Cir. 2012); *accord Bustamante*, 687 F.3d at 1194 .  Similarly, information provided by a confidential informant for purposes of a future criminal prosecution is clearly testimonial.  *See United States v. Lopez-Medina*, 596 F.3d 716, 730 (10th Cir. 2010) ("A confidential informant's statements to a law enforcement officer are clearly testimonial."); *accord United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004) ("[t]ips provided by

Defendant's Motion to Exclude Alleged Dark
Web Messages and Websites- Page  10

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

confidential informants are knowingly and purposely made to authorities, accuse

someone of a crime, and often are used against the accused at trial").

In *United States v. Vo*, 766 Fed. Appx. 547, 548-49 (9th Cir. 2019)

(unpublished), the Ninth Circuit held that recorded communications between the

defendant and a confidential informant were testimonial in a bribery

prosecution.    The Ninth Circuit focused on the nature of the confidential

informant's recitation of the status of the bribery transaction:

> 1) "It's like what you told me the other day if, you know, whatever
> it is, then you know, it's 15,000 on the side."
> 2) "Do you remember what you told me the other day? You said,
> 'Okay, pay 15,000 on the side.'"
> 3) "So then about the money, the 15,000 you talked about for the
> other side, I've got it all prepared already ok."

*Id.* at 549.  The Ninth Circuit reasoned that the informant's messages "went

beyond the bounds of placing the conversation in context."  *Id.*

Similarly, in *United States v. Cameron*, 699 F.3d 621, 642-651 (1st Cir.

2012), the First Circuit held that the admission of Yahoo! CP (child

pornography) Reports internet records were "testimonial" in a child

pornography prosecution.  The First Circuit reasoned that "[g]iven that Yahoo!

created CP Reports referring to 'Suspect[s]' and sent them to an organization

that is given a government grant to forward any such reports to law

Defendant's Motion to Exclude Alleged Dark
Web Messages and Websites- Page  11

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

enforcement," the statements were testimonial as "the primary purpose of the CP Reports was to 'establish[] or prov[e] past events potentially relevant to later criminal prosecution.'"   *Cameron*, 669 F.3d at 644 (alterations in original). Furthermore, the First Circuit noted "whoever generated the CP Reports in this case presumably knew that the Reports would most likely spark an investigation, and that as a result of such investigation, the government might request the CP Reports . . . for use as evidence." *Id*.

In the situation at hand, the dark web messages, transcript, and dark websites are all "testimonial" pursuant to the Confrontation Clause.   The allegedly recovered dark web messages contain statements confirming "[y]our new job request has been received" and that an escrow transaction had been initiated.  (*See* ECF No. 107-1 at 2; *accord* ECF No. 107-3 at 2.)  Further, the alleged messages regarding Dark Website # 2 recite "goals," discuss the details of the "bonus," and confirm funds have been transferred.  (*See* ECF No. 107-1 at 2-13.)   Additionally, the transcript of the messages not only contains these details, but the first page has "Notes" identifying Dr. Ilg as "Scar215" because he "might connect the two."  (ECF No. 98-1 at 38.)  Moreover, the dark websites themselves are "testimonial" as they are "fake" websites "run by the same person/group" to create evidence that a suspect has solicited a hitman to

Defendant's Motion to Exclude Alleged Dark
Web Messages and Websites- Page  12

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

commit a crime, as opposed to traditional business records created to administer a legitimate website's affairs.  (*See* Wagley Decl., Ex. D at p. 1.)

Pursuant to the Confrontation Clause, the primary purpose of this evidence is to document events potentially relevant to a future criminal trial.  *See Vo*, 766 Fed. Appx. at 548-49; *accord Cameron*, 669 F.3d at 642-51.  As such, the dark web messages, transcript, and dark websites are "testimonial."

### 2.  *The Dark Web Evidence is Offered for the Truth.*

In addition to statements being "testimonial," the Confrontation Clause is implicated if the statements are "offered for their truth."  *Brooks*, 772 F.3d at 1170; *accord Vo*, 766 Fed. Appx. at 548-49.  Statements are offered for their truth if offered to establish foundation as "[f]oundational evidence is valuable . . . only if is true."  *Brooks*, 772 F.3d at 1170.  Additionally, statements may not be offered for "context" if the gravamen of the prosecution is dependent upon the hearsay statements.  *See Vo*, 766 Fed. Appx. at 549 ("[I]nvoking the word 'context' does not permit an end-run around the hearsay rules such that the government may smuggle into evidence all [the informant's] statements.").

Here, the alleged dark web messages, transcript, and dark websites are all offered for the truth of the matter asserted.  Absent the alleged conversation and forum, the Government has no direct proof that the conversations occurred.

Defendant's Motion to Exclude Alleged Dark
Web Messages and Websites- Page  13

ETTER, MᶜMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

### 3.  The Unknown Source(s) is Not Anticipated to Testify.

Finally, pursuant to the Confrontation Clause testimonial statements offered for the truth are barred "unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination." *Melendez-Diaz*, 557 U.S. at 309.  Despite this case being over a year old, the unknown source(s) have yet to be identified by the Government. The unknown source(s) is believed to reside outside the United States, and therefore, likely outside of the Government's compulsory process range.

The dark web messages, transcript, and dark websites are testimonial, offered for the truth of the matter asserted, and would be offered by the Government at the time of trial without Dr. Ilg's ability to confront the unknown source(s) in violation of the Confrontation Clause.  U.S. Const. amend. VI.

### B.  **The Government Cannot Properly Authenticate the Alleged Dark Web Messages, Transcript, and Dark Websites.**

Pursuant to Fed. R. Evid. 901(a), "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  In order to establish authenticity, the Government must: (1) "make a prima facie showing" via "sufficient proof" that "a reasonable juror could find

Defendant's Motion to Exclude Alleged Dark
Web Messages and Websites- Page  14

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

in favor of authenticity," and (2) "establish a connection between the proffered evidence and the defendant." *United States v. Tank*, 200 F.3d 627, 630 (9th Cir. 2000). Although the proponent "need not rule out all possibilities inconsistent with authenticity, . . . <u>there must nonetheless be at least sufficient proof . . . so that a reasonable juror could find in favor of authenticity</u>." *United States v. Vayner*, 769 F.3d 125, 130 (2d Cir. 2014).

The norm to authenticate evidence is testimony from a witness with knowledge "that an item is what it is claimed to be." Fed. R. Evid. 901(b)(1). Evidence may also be authenticated via "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item." Fed. R. Evid. 901(b)(4). Authentication by virtue of circumstantial evidence still requires some sort of evidence from a witness with direct knowledge. *See* Fed. R. Evid. 901, *Advisory Committee Notes* ("a document or telephone conversation may be shown to have emanated from a particular person by virtue of its disclosing knowledge of facts known peculiarly to him").

### 1. The Dark Websites Cannot be Authenticated.

Although "'[i]t is not necessary that the computer programmer testify in order to authenticate computer-generated records,'" authentication is generally obtained by virtue of "'one who has knowledge of the particular record

system.'"  *U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*, 576 F.3d 1040, 1045

(9th Cir. 2009).   Authentication of a website is typically obtained via "a

certification of a qualified person" pursuant to Fed. R. Evid. 803(13) and (14).

"Private web-sites, however, are not self-authenticating."  *Fraserside IP L.L.C.*

*v. Letyagin*, 885 F. Supp. 2d 906, 921 (N.D. Iowa 2012).

"The authentication of electronically stored information in general requires

consideration of the ways in which such data can be manipulated or corrupted."

*United States v. Browne*, 834 F.3d 403, 412 (3d Cir. 2016).

> Anyone can put anything on the Internet.  No web-site is monitored
> for accuracy and nothing contained therein is under oath or even
> subject    to    independent    verification    absent    underlying
> documentation.  Moreover, the Court holds no illusions that hackers
> can adulterate the content on any web-site from any location at any
> time.  For these reasons, any evidence procured off the Internet is
> adequate for almost nothing. . . .

*Wady v. Provident Life & Accident Ins. Co. of Am.*, 216 F. Supp. 2d 1060, 1065

(C.D. Cal. 2002) (internal quotations omitted).   As such, "the 'type and

quantum' of evidence necessary to authenticate a web page will always depend

on context."  *Vayner*, 769 F.3d at 133.

In *United States v. Tank*, 200 F.3d 627, 630 (9th Cir. 2000), the Ninth

Circuit held that "chat room log printouts were authenticated" by virtue of

witness testimony that "explained how [the witness] created the logs with his

Defendant's Motion to Exclude Alleged Dark
Web Messages and Websites- Page  16

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201  (509) 747-9100

computer and stated that the printouts . . . appeared to be an accurate representation." Similarly, In *United States v. Browne*, 834 F.3d 403, 413-14 (3d Cir. 2016), the Third Circuit held that social media messages were properly authenticated as individuals involved in the messages "offered detailed testimony about the exchanges," and the Government "supported the accuracy of the chat logs by obtaining them directly from Facebook and introducing a certificate." Finally, in *United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007), the Second Circuit held that adequate authentication of e-mails and transcripts of internet messages existed as "both the informant [involved in the communications] and Agent [] testified that the exhibits were in fact accurate records of [the defendant's] conversations."

On the other hand, in *United States v. Vayner*, 769 F.3d 125, 131 (2nd Cir. 2014), the Second Circuit held that the Government did not adequately authenticate a social media website profile based on law enforcement testimony that "he saw [the website] and this is what it says," despite that "the agent does not know who created it." In coming to this conclusion, the Second Circuit reasoned "[h]ad the government sought to introduce, for instance, a flyer found on the street that contained [the defendant's] Skype address and was purportedly written or authorized by him, the district court surely would have required some

Defendant's Motion to Exclude Alleged Dark
Web Messages and Websites- Page  17

ETTER, M\ᶜMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

evidence that the flyer did, in fact, emanate from [the defendant]." *Id.* at 132. Similarly, in *United States v. Jackson*, 208 F.3d 633, 638 (7th Cir. 2000), the Seventh Circuit held that the proponent of evidence "needed to show that the web postings . . . were posted by the groups, as opposed to be slipped on the groups' web sites by [the proponent] herself, who was a skilled computer user."

The Government cannot properly authenticate the dark websites at issue herein. The Government apparently does not know the identification of any administrators of the dark websites, as well as the identity of BBC's unknown source(s). These dark websites are "scam websites" and "fake." (Wagley Decl., Ex. D at p. 1.) Moreover, these dark websites are currently inactive and cannot be accessed by virtue of the links provided in discovery. Concerns regarding the authentication of regular websites are magnified by virtue of the anonymity associated with the dark web and the Tor Network. As the Government has not identified a single witness with direct knowledge of how the dark websites were created, maintained, and/or administered, such evidence must be excluded at the time of trial. *See* Fed. R. Evid. 901; *See Vayner*, 769 F.3d at 131-32.

### 2. The Alleged Dark Web Messages Cannot be Authenticated.

In addition to the concerns regarding the dark websites, the alleged dark web messages likewise cannot be properly authenticated. Not only can the

Defendant's Motion to Exclude Alleged Dark
Web Messages and Websites- Page  18

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

Government not authenticate the medium of the messages (*i.e.*, the dark websites), it has not offered a witness that was a party to the messages and/or otherwise had knowledge of the messages contemporaneous with their creation. *See Browne*, 634 F.3d at 410-11 (noting that Facebook records custodian could only attest "that the depicted communications took place between certain Facebook accounts, on particular dates, or at particular times," which "is <u>no more sufficient to confirm the accuracy or reliability of the contents of the Facebook chats than a postal receipt would be to attest to the accuracy or reliability of the contents of the enclosed mailed letter</u>").  As such, the alleged dark web messages must likewise be excluded at the time of trial.  *See id*.

### 3.  The Alleged Dark Web Transcript Cannot be Authenticated.

Finally, the Government cannot authenticate the purported dark web messages transcript.  Under the Government's theory, this transcript was created directly by the unknown source(s).  This is a separate and apart document from the alleged messages themselves.  "The foundation is laid for receiving a document in evidence by the testimony of a witness with personal knowledge of the facts who <u>attests to the identity and due execution of the document</u>." *United States v. Dibble*, 429 F.2d 598, 602 (9th Cir. 1970).  As the Government has not identified the creator / author of the transcript, it is inadmissible.  *See id*.

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

**C.** **The Alleged Dark Web Messages, Transcript, and Dark Websites Are Inadmissible Hearsay.**

"Hearsay" constitutes a "statement" that the declarant "does not make while testifying at the current trial or hearing" and "a party offers in evidence to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c).  Hearsay is inadmissible unless an exception applies.  Fed. R. Evid. 802.

The dark web messages, transcript, and dark websites are out-of-court statements offered for the truth of the matter.  *See, e.g., Vo*, 766 Fed. Appx. at 549 (messages from confidential informant).  First, the messages purport to recite various statements from the unknown source(s) to "Scar215" that go to the crux of the alleged dark web plot.  Second, the transcript not only repeats portions of these messages, but is a separate document, containing notes from the unknown source(s).  Third, the dark websites contain multiple extrajudicial statements regarding the purpose of the websites as offering criminal services in exchange for monetary compensation.  *See* Fed. R. Evid. 801(c).

No exceptions or exclusions to the rule against hearsay apply.  First, the unknown source(s) does not constitute a "coconspirator" under Fed. R. Evid. 801(d)(2)(E) because the alleged dark web plot was "fake" and a "scam."  *See United States v. Wilkerson*, 469 F.2d 963, 968 (5th Cir. 1972) (declarant must be

Defendant's Motion to Exclude Alleged Dark
Web Messages and Websites- Page  20

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

coconspirator).  Second, the business records exception does not apply as the dark web evidence was not "kept in the course of a regularly conducted activity" and "indicate[s] a lack of trustworthiness."  Fed. R. Evid. 803(3).  Third, the evidence does not constitute a present sense impression as it was not "describing or explaining an event or condition, made while or immediately after the declarant perceived it" based upon the nature and timing of the conversation. Fed. R. Evid. 803(1).  Fourth, Fed. R. Evid. 803(3) does not apply as the "scam" nature of the dark websites does not document "the declarant's then-existing state of mind (such as motive, intent, or plan)."

## CONCLUSION

Based upon the foregoing, Dr. Ilg respectfully requests that the Court exclude the alleged dark web messages, transcript, and dark websites at trial.

RESPECTFULLY SUBMITTED this 1st day of July, 2022.

By: /s/ Andrew M. Wagley
Carl J. Oreskovich, WSBA #12779
Andrew M. Wagley, WSBA #50007
*Attorneys for Ronald C. Ilg, MD*

Defendant's Motion to Exclude Alleged Dark
Web Messages and Websites- Page  21

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 1, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all attorneys of record in this matter.

EXECUTED in Spokane, Washington this 1st day of July, 2022.

By: /s/ Jodi Dineen
Jodi Dineen, Paralegal

Defendant's Motion to Exclude Alleged Dark
Web Messages and Websites- Page  22

ETTER, MᶜMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100