Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Richard R. Barker
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| UNITED STATES OF AMERICA, | Case No. 2:21-CR-00049-WFN-1 |
|---|---|
| Plaintiff, | United States' Motion to Admit Evidence of Defendant's Attempted Flight to Show Consciousness of Guilt |
| v. | |
| RONALD CRAIG ILG (a/k/a "SCAR215"), | |
| Defendant | |

The United States of America, by and through United States Attorney Vanessa R. Waldref and Assistant United States Attorney Richard R. Barker, respectfully moves to admit evidence at trial of Defendant's attempted suicide as flight evidence. As set forth herein, Defendant's attempted suicide or flight occurred almost immediately after he was confronted with evidence that he was soliciting a number of hitmen to assault a former colleague and to kidnap his then-estranged wife.[1] Defendant's subsequent suicide attempt

---

[1] The United States recognizes that the Court's scheduling order does not require motions in limine to be filed until early September 2022. The government, however, is filing the motion at this time to potentially reduce the volume of issues that need to be resolved prior to trial. Additionally, adjudication of this matter may aid the parties in preparing their exhibit lists, draft jury instructions, trial briefs, as well as opening statements. Resolution of this issue may also be relevant for purposes of voir dire.

United States' Motion to Admit Evidence of
Defendant's Attempted Flight - 1

and the contemporaneous note are admissible at trial to show Defendant's consciousness of guilt and actual guilt.

### BACKGROUND

At trial, the United States anticipates that the evidence will show Defendant hired multiple purported hitmen to target a former work colleague and to kidnap Defendant's estranged wife. With respect to the former colleague (hereafter Victim 1), Defendant used the dark web moniker "Scar215" and directed that this victim "should be given a significant beating that is obvious: It should injure both hands significantly or break the hands." ECF No. 80; ECF No. 1 at 5.

In a separate series of messages, Defendant solicited another hitman to kidnap his estranged wife (Victim 2) to threaten her and have her injected with heroin. *Id.* at 6. In fact, messages recovered by the FBI directly from the dark websites demonstrate Defendant structured a bonus scheme if Victim 2 were kidnapped and persuaded to drop then pending divorce proceedings and return to her failed marriage with Defendant. *Id.* Records obtained by the FBI further demonstrate that Defendant paid tens of thousands of dollars in Bitcoin to effectuate his schemes. *Id.* at 9-10.

On April 11, 2021, Defendant agreed to a voluntary interview with the FBI and admitted to making Bitcoin payments to various sites on the dark web purporting to be associated with hitmen. ECF No. 122 at Ex. A at 27. Defendant affirmed his belief that these individuals were in fact hitmen, but claimed – contrary to the dark web messages actually recovered in this case – the payments were for the hitmen to kill Defendant. *See id.* During the interview, the FBI confronted Defendant with the actual dark web messages. *Id.* at 47. While Defendant initially denied that he sent messages pertaining to Victims 1 and 2, he confirmed his dark web moniker – "Scar215." *Id.* at 41. Tellingly, after the FBI outlined the repercussions of lying, explained that the evidence was not consistent with Defendant's account, and when given the opportunity to cooperate with

United States' Motion to Admit Evidence of
Defendant's Attempted Flight - 2

law enforcement, Defendant ultimately responded, "I hear what you're saying. And again, I would love to help you out the best way that I can to provide you guys whatever it is you need. But at the same time, I need somebody that has a clearer mind than mine to help me navigate that." *Id.* at 64. Toward the end of the interview, the FBI told Defendant, "In the future you're likely to be arrested." *Id.* at 62.

Following the interview, the FBI provided Defendant with a ride home. *See id* at 72. Upon arrival, Defendant opened a biometric safe with his fingerprint. ECF No. 1 at 11. Inside, the FBI recovered a sticky note with the username and password Defendant used to access the dark web to solicit various hitmen to harm Victims 1 and 2. *Id.* Using that username and password, the FBI was able to recover several of Defendant's actual messages soliciting a hitman to kidnap Victim 2.

Later that very same evening – April 11, 2021 – Defendant wrote out a note and placed on his kitchen counter next to FBI Special Agent Eric Barker's business card. *Id.* at 19. The Defendant than took approximately 40 Xanax pills in an attempt to escape from the consequences of his actions directed at Victims 1 and 2. *See id.* The note[2] is provided below:

> [Witness 1], I love you with everything I have. I'm sorry. Please remember the good. I loved no other more than you.
>
> [Victim 2], I loved you also. You mocked my love. You made fun of it. Why?? You laughed with your family + coworkers. Please care for [Minor 1] + love him like I do.
>
> I am about to drift off to sleep. I pray that God forgives me. I pray with all my heart that He does. I did this not for me. But for all of you. You can move on faster + easier + quicker. I just wanted to norm [sic] back but I couldn't see the path. I fucked it up. Irreparable fuck up. [Victim 2], if it is allowed

---

[2] Defendant's suicide note is plainly admissible as a statement of a party opponent pursuant to Federal Rule of Evidence 801(d)(2)(A).

United States' Motion to Admit Evidence of
Defendant's Attempted Flight - 3

   in my will[,] please share half with [Witness 1], somehow. She deserved
   that. [Victim 2], you have a big heart that I destroyed.

*Id.*

  Defendant survived the suicide attempt and made incriminating statements while he was recovering at a hospital in Spokane, Washington. *See id.* Specifically, Defendant admitted he had not been forthcoming with the FBI, stating "Do I tell the attorney the story I started with[,] or do I tell him everything and say, 'what do I do?'" ECF No. 89 at 11.

## ANALYSIS

  In the Ninth Circuit, "evidence of flight is generally admissible as evidence of consciousness of guilt and of guilt itself." *United States v. Harris*, 792, F.2d 866, 869 (9th Cir. 1986) (citations omitted). Flight is "essentially an admission by conduct" made by the defendant. *United States v. Felix-Gutierrez*, 940 F.2d 1200, 1207 (9th Cir. 1991). A defendant's flight is probative of guilt when four inferences can be drawn from the evidence: "(1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged." *Id.*

  Courts have routinely described a suicide attempt as a form of flight, and applied the same four-factor analysis in cases involving attempted suicide. *See e.g.*, *United States v. Cody*, 498 F.3d 582 (6th Cir. 2007); *see also Johnson v. Sublett*, 63 F.3d 926, 930, 931 (9th Cir. 1995) (describing the "great mass of evidence" against Johnson, including his "suicide notes," which were introduced "to show consciousness of guilt"). As one leading treatise put it:

   Evidence of attempted suicide by a person who is, at the time of the attempt
   . . . , charged with or suspected of a crime, is relevant as possibly indicating
   consciousness of guilt and admissible at trial for that crime for whatever

United States' Motion to Admit Evidence of
Defendant's Attempted Flight - 4

> weight the jury chooses to assign provided that the [Government] establishes a clear and unmistakable nexus linking the suicide attempt to a guilty conscience derivative of the offense for which the defendant is on trial.

29 Am Jur 2d, Evidence § 533; *see also* McCormick on Evid. § 263 (8th ed.) ("Many acts of a defendant after the crime seeking escape are received as admissions by conduct, constituting circumstantial evidence of consciousness of guilt and hence of the fact of guilt itself. In this class are flight from the scene . . . and[, and among other things,] suicide attempts by the accused."). Significantly, courts are virtually "unanimous[] that an accused's attempt to commit suicide is probative of a consciousness of guilt and is therefore admissible." 73 A.L.R.5th 615 (Originally published in 1999).[3]

---

[3] Numerous courts have permitted evidence of a suicide attempt or note as demonstrating consciousness of guilt. The following are samples of the many cases to address this issue:

- *Tug Raven v. Trexler*, 419 F.2d 536, 543 (4th Cir. 1969) ("Under generally accepted rules of evidence[,] flight after the commission of a criminal act constitutes circumstantial evidence of consciousness of guilt and suicide is a form of flight.").
- *United States v. Johnson*, 354 F. Supp. 939, 958 (N.D. Iowa 2005) ("Although the evidence of Johnson's suicide attempt is, at best, equivocal, the court nevertheless acknowledges that it is at least marginally probative of her involvement in the murders, because it may make it more probable that she knew about and participated in the crimes, in that it suggests Johnson's 'consciousness of guilt' for the murders.").
- *Woodley v. Maclaren*, No. 2:13-cv-350, 2016 WL 3057689, at *6 (W.D. Mich. May 31, 2016) ("[D]efendant testified that he contemplated suicide throughout the stand-off, and his suicidal ideation may be used as circumstantial evidence of consciousness of guilt.").
- *Aldridge v. Georgia*, 229 Ga. App. 544 (1997) (admitting testimony that, within hours of being accused of fondling an eight–year–old girl, the defendant attempted suicide first by swallowing pills and then by attempting to hang himself).
- *Peterson v. Warren*, No. 13-cv-4250, 2018 WL 3054680, at *16 (D. N.J. June 20, 2018) (upholding a jury instruction relating to the defendant's attempted suicide as evidence of the defendant's consciousness of guilt).
- *Mankyan v. Soto*, 13-cv-3615, 2015 WL 7820573, at *7 (C.D. Cal. Sept. 10, 2015) (upholding a jury instruction relating to the defendant's attempted suicide as evidence of the defendant's consciousness of guilt).
- *Oldham v. Felker*, No. 08-cv-2340, 2009 WL 1186680, at *12 (N.D. Cal. May 4, 2009) ("Petitioner's attempted suicide may be probative of consciousness of guilt" and "a showing of consciousness of guilt is probative of guilt.").

United States' Motion to Admit Evidence of
Defendant's Attempted Flight - 5

With this precedent in mind, and turning to the four-factor analysis set forth in *Harris*, the evidence in this case easily establishes each of the inferences for Defendant's attempted suicide and his note to be admitted in the government's case-in-chief at trial.

> (1) *Defendant's Behavior*

The *first* inference can be established by a defendant's behavior. For example, in *United States v. King*, the defendant fled to Mexico immediately prior to his scheduled extradition hearing. 200 F.3d 1207, 1215 (9th Cir. 1999). Likewise, in *United States v. Fox*, the inference existed where the defendant fled out the back of his residence in four-degree weather while wearing minimal clothing when police arrived at his home. 627 F. App'x 608, 609 (9th Cir. 2015). In both of these cases, the timing and circumstances of the defendants' actions showed he was not inadvertently moving away from law enforcement, he was fleeing.

Here, Defendant's actions also show he attempted suicide to avoid criminal prosecution and possible incarceration. Almost immediately after the FBI conducted search warrants of Defendant's home, phone, and personal belongings, Defendant wrote a suicide note expressing that he had "irrevocably fucked up" and expressing sorrow for what he had done. ECF No. 1 at 19. By attempting to end his life, Defendant was not merely depressed regarding the general circumstances of his life, he was seeking to avoid being charged and prosecuted for his crimes.

> (2) *Whether Defendant's Flight Establishes Consciousness of Guilt and Actual Guilt*

The *second*, *third*, and *fourth* inferences can be drawn from the fact that a defendant is aware of the charges against him or her. *Fox*, 627 F. App'x at 609; *see King*, 200 F.3d at 1215. In particular, the timing of a defendant's actions can show that he was engaged in flight because of the charged crime. *Felix-Gutierrez*, 940 F.2d at 1208. For that reason, "flight immediately after the commission of the crime, or immediately prior to trial, both support an inference of consciousness of guilt." *United States v. Hernandez-Miranda*,

601 F.2d 1104, 1107 (9th Cir. 1979). As an example, in *Hernandez-Miranda*, the inferences were supported because the defendant had recently been charged and confronted with the evidence against him. *Id.* Likewise, in *United States v. Harrison*, the inferences were supported where the defendant was aware that he had just struck a police officer in the face and that charges were likely to follow. 585 F.3d 1155, 1160 (9th Cir. 2009). On the other hand, when the record is devoid of evidence that the suspect knew he was under investigation or likely to be charged, courts have declined to permit evidence of flight. *See Embree v. United States*, 320 F.2d 666, 667 (9th Cir. 1963) ("Perhaps Embree's flight tends, circumstantially, tends to prove that he was guilty of some crime. But since there is nothing in the record to indicate that he was informed, before his attempted flight, that he was being sought in connection with the offenses involved in this case, such flight does not constitute an admission, or other evidence, that he is guilty of those crimes . . . .").

When considering whether flight evidence establishes an inference of consciousness of guilt and evidence of actual guilt, several courts have concluded that a suspect's statements made contemporaneously with the attempted flight or suicide are sufficient to draw the necessary inferences. *See e.g.*, *Cody*, 498 F.3d at 592 ("Cody made his statements about suicide while in the custody . . . . During the interview, defendant state[d] that he has considered suicide as an alternative to going to prison."). In *Johnson*, the Ninth Circuit affirmed the admission of a suicide note in which the accused "expressed his desire not to go to trial." 63 F.3d at 928.

In the present case, both the timing of the attempted suicide and the content of Defendant's suicide note show that Defendant was aware that charges were likely – demonstrating the second, third, and fourth inferences are met. First, as in *Hernandez-Miranda* and *Harrison*, the timing of Defendant's attempted flight matches a key development in his case – Defendant attempted to commit suicide the same day as his

United States' Motion to Admit Evidence of
Defendant's Attempted Flight - 7

voluntary non-custodial interview with the FBI as well as the execution of a number of search warrants for Defendant's devices, luggage, and home. ECF No. 1 at 18-19. The FBI also had just recovered Defendant's credentials for logging-in to the dark websites. *Id*. During the interview about Defendant's conduct on the dark web, Defendant was even warned that while he was not being arrested that day, he was likely to be arrested in the future. ECF No. 122, Ex. A at 61. Accordingly, unlike in *Embree*, where the suspect was not informed of possible charges, the FBI made clear that an arrest related to Defendant's dark web messages was likely. *Id.*

If this were not enough, the note located in Defendant's home when local police responded to Defendant's residence on April 12, 2021, further demonstrates Defendant's consciousness of guilt and actual guilt. ECF No. 1 at 18. The note, which was adjacent to FBI Special Agent Eric Barker's business card, specified sorrow for Defendant's actions and expressed both love and scorn[4] for Victim 2. Perhaps more importantly, in his note, Defendant prayed for forgiveness in recognition of the fact Defendant could not undo the messages he sent on the dark web and return things back to normal. *See id.* In the note, Defendant continued, "I wanted to norm [sic] back, but I couldn't see the path. I fucked it up. Irreparable fuck up." *Id*. Again, Defendant's suicide attempt occurred the same evening as Defendant's interview with the FBI – an interview in which Defendant was confronted with his dark web activities. All of this occurred the same evening the FBI searched Defendant's phone, home, and biometric safe. This also was the same evening

---

[4] The suicide note is admissible for the separate reason that Defendant expressed the same sentiments as the author of the Dark Web Messages – i.e., demonstrating anger that Victim 2 was divorcing Defendant, but also expressing love and affection. Given these sentiments, which also are expressed in the dark web messages obtained by the FBI, the suicide note is evidence of Defendant's identity as the author of the dark web messages.

At trial, identity is almost certainly to be the main issue. Accordingly, any risk of prejudice stemming from the suicide note does not substantially outweigh the probative value of the Defendant's consciousness of guilt and of his identity as the author of the messages targeting Victim 2.

United States' Motion to Admit Evidence of
Defendant's Attempted Flight - 8

he was told he would likely be arrested and the same evening the FBI located Defendant's username and password inside Defendant's safe. *See id.* One this record, there is a reasonable inference that Defendant's "Irreparable fuck up" referred to his decision to solicit dark web hitmen to harm Victims 1 and 2.[5]

In sum, Defendant attempted to flee almost immediately after the FBI conducted search warrants in this case. If the search warrants were not enough, the FBI's interview, in which the agents addressed the evidence against Defendant and told him he was likely to be arrested in the future, clearly demonstrated the criminal exposure Defendant faced. The suicide note further indicates Defendant was seeking to escape arrest and prosecution for soliciting dark web hitmen to harm his victims. These facts, individually and collectively, show that Defendant was aware of likely charges, the compelling evidence against him, and establish an inference of consciousness of guilt of the charged crimes and actual guilt of those crimes.

### PROPOSED JURY INSTRUCTION

A flight jury instruction is appropriate where the evidence supports the four inferences discussed above. *United States v. Dixon*, 201 F.3d 1223 (9th Cir. 2000). That said, the Ninth Circuit has cautioned that, in most cases, "the general instruction on direct and circumstantial evidence is sufficient." *See* Ninth Circuit Model Jury Instruction 4.18 (Flight/Concealment of Identity). According to the model instructions, "[C]aution is warranted because evidence of flight can be consistent with innocence." *Id.* (citing *Dixon*, 201 F.3d at 1232. Where the facts support an inference of guilt, the Ninth Circuit has not foreclosed the use of a flight instruction. *United States v. Blanco*, 392 F.3d 382, 395-97 (9th Cir. 2004).

---

[5] As noted above, the entirety of Defendant's note is admissible as a statement of a party opponent. *See* Fed. R. Evid. 801(d)(2)(A).

United States' Motion to Admit Evidence of
Defendant's Attempted Flight - 9

To the extent appropriate, the government may submit a proposed flight instruction in its proposed jury instructions filing. At a hearing on this motion, however, the government is asking the Court to rule only on the admissibility of the flight evidence, not on the jury instructions, since the instructions can be addressed during the jury instruction conference.

## CONCLUSION

For the foregoing reasons, the government respectfully requests the Court admit evidence of Defendant's flight as relevant to showing consciousness of guilt.

Dated: July 1, 2022

Vanessa R. Waldref
United States Attorney

*/s/ Richard R. Barker*
Richard R. Barker
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following: Carl Oreskovich.

*/s/ Richard R. Barker*
Richard R. Barker
Assistant United States Attorney

United States' Motion to Admit Evidence of
Defendant's Attempted Flight - 10