Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Richard R. Barker
Patrick J. Cashman
Assistant United States Attorneys
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 10, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>RONALD CRAIG ILG (a/k/a/ "SCAR215"),<br><br>　　　　　　Defendant. | Case No.  2:21-CR-0049-WFN-1<br><br>Rule 11(c)(1)(C)<br>Plea Agreement |

The United States of America, by and through United States Attorney Vanessa R. Waldref, Assistant United States Attorneys Richard R. Barker and Patrick J. Cashman, and Defendant RONALD CRAIG ILG (hereafter "Defendant"), both individually and by and through Defendant's counsel, Carl Oreskovich and Andrew Wagley, agree to the following Plea Agreement.

1.　　Guilty Plea, and Maximum Statutory Penalties

The Defendant agrees to plead guilty to Counts 1 and 4 of the Superseding Indictment dated February 1, 2022, charging the Defendant with Threats in Interstate Commerce in violation of 18 U.S.C. § 875(c).

Defendant understands the following potential penalties apply for each of these two counts:

　　　　a.  a term of imprisonment of up to 5 years for each count;

*United States v. Ronald Craig Ilg* - Plea Agreement

b. a term of supervised release of up to 3 years for each count

c. a fine of up to $250,000 for each count

d. Restitution for each count; and

e. a $100 special penalty assessment for each count.

The Defendant understands that by entering pleas of guilty to two charges, the Court may impose consecutive sentences and that the total maximum penalties applicable to this Plea Agreement and the Defendant's pleas of guilty are not more than a 10-year term of imprisonment; an aggregate fine of not more than $500,000; and a term of not more than 3 years supervised release. An aggregate special penalty assessment of $200 ($100 for each count of conviction) is statutorily prescribed and will be applied.

2.    <u>Supervised Release</u>

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, up to the following terms:

a.    5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

b.    3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

c.    2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense(s) of conviction.

3. <u>The Court is Not a Party to the Agreement</u>

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

      a.   sentencing is a matter solely within the discretion of the Court;

      b.   the Court is under no obligation to accept any recommendations made by the United States or Defendant;

      c.   the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

      d.   the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

      e.   the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

      f.   the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea, except for reasons as set forth below.

4. <u>Rule 11 Nature of the Plea Agreement</u>

Defendant acknowledges that this Plea Agreement is entered pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) ("Rule 11(c)(1)(C)"). Pursuant to Rule 11(c)(1)(C), the United States and Defendant agree that the appropriate disposition of the case falls within a range of 60-96 months custody. The United States and Defendant agree to make sentencing recommendations within this range to the Court. Although the United States and Defendant agree to make these recommendations to the Court pursuant to Rule 11(c)(1)(C), Defendant acknowledges that no promises of any type

have been made to Defendant with respect to the sentence the Court will ultimately impose.

Defendant understands that Defendant may withdraw from this Plea Agreement if the Court imposes a term of imprisonment of greater than 96 months' custody or indicates its intent to do so. Defendant also understands that the United States may withdraw from this Plea Agreement if the Court imposes a term of imprisonment of less than 60 months or indicates its intent to do so.

Defendant and the United States acknowledge that the imposition of any fine, restitution, as well as the terms or conditions of Supervised Release are not part of the Rule 11(c)(1)(C) nature of this Plea Agreement. Subject to the provisions set forth in this Plea Agreement, the parties are free to make any recommendation they deem appropriate as to the imposition of a fine, restitution, or the terms and conditions of Supervised Release; and that the Court will exercise its discretion in this regard. Defendant and the United States acknowledge that the Court's decisions regarding the imposition of a fine, restitution, or the terms and conditions of Supervised Release will not provide a basis for Defendant to withdraw Defendant's guilty plea or withdraw from this Rule 11(c)(1)(C) Plea Agreement.

Defendant acknowledges that if either Defendant or the United States successfully withdraws from this Plea Agreement, the Plea Agreement becomes a nullity, and the United States is no longer bound by any representations within it.

5.    Effect on Immigration Status

If Defendant is not a citizen of the United States, Defendant understands the following:

      a.    pleading guilty in this case may have immigration consequences;

      b.    a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

c.   removal from the United States and other immigration consequences are the subject of separate proceedings; and

d.   no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

6.   <u>Waiver of Constitutional Rights</u>

Defendant understands that by entering this guilty plea, Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

a.   the right to a jury trial;

b.   the right to see, hear and question the witnesses;

c.   the right to remain silent at trial;

d.   the right to testify at trial; and

e.   the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

7.   <u>Elements of the Offense</u>

The United States and Defendant agree that in order to convict Defendant of Threats in Interstate Commerce, the United States would have to prove the following beyond a reasonable doubt:

*United States v. Ronald Craig Ilg* - Plea Agreement

- 5-

Count 1:

*First*, beginning on or about December 31, 2020, and continuing until on or about February 24, 2021, in the Eastern District of Washington, Defendant knowingly transmitted an electronic communication in interstate commerce containing a threat to injure Victim 1.

*Second*, the communication was transmitted for purpose of issuing a threat, or with knowledge that the electronic communication would be viewed as a threat.

Count 4:

*First*, beginning on or about February 15, 2021, and continuing until on or about April 11, 2021, in the Eastern District of Washington, Defendant knowingly transmitted an electronic communication in interstate commerce containing a threat to kidnap Victim 2.

*Second*, the communication was transmitted for purposes of issuing a threat, or with knowledge that the electronic communication would be viewed as a threat.

8.    Factual Basis and Statement of Facts

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea. The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing, unless otherwise prohibited in this Plea Agreement.

In early 2021, Defendant attempted to hire hitmen on the dark web to harm a former work colleague (Victim 1) and to kidnap Defendant's estranged wife (Victim 2). Defendant transmitted dozens of messages from Eastern Washington, Mexico, and possibly elsewhere to websites on the dark web that were being operated outside the Eastern District of Washington. As part of this plan to hire dark web hitmen, Defendant used the moniker "Scar215" and logged into the sites using the password "Mufasa$$"

to conceal his identity. Defendant paid approximately $60,000 in Bitcoin to advance the two schemes. Like the dark web messages themselves, the approximately $60,000 in Bitcoin transactions were communicated in interstate and foreign commerce. Additional facts and evidence are set forth in further detail below:

Threats to Harm Victim 1

Beginning in early January 2021 and continuing until February 2021, in the Eastern District of Washington and elsewhere, Defendant accessed a site on the dark web to solicit a purported hitman to assault Victim 1, a neonatologist, who previously worked in Defendant's medical practice. In messages with the purported hitman, Defendant used the moniker Scar215 and specified that Victim 1 "should be given a significant beating that is obvious. It should injure both hands significantly or break the hands." Defendant also provided Victim 1's address to the purported hitman as well as a link to Victim 1's employer and Victim 1's picture.

As part of the threat to harm Victim 1, Defendant paid approximately $2,000 in Bitcoin for a hitman to assault Victim 1. In follow-up messages to the operators of the dark website, Defendant became frustrated when he did not receive confirmation of the assault. He also added, "I would like to see evidence that it happened. If this goes well, I have another, more complicated job" for "[a]n entirely different target with entirely different objectives."

Threats to Kidnap Victim 2

Beginning in late March 2021 and continuing until April 11, 2021, in the Eastern District of Washington and elsewhere, Defendant accessed the dark web to solicit a purported hitman to kidnap Victim 2, who was Defendant's estranged wife and, who was in the process of divorcing Defendant. At the time Defendant solicited the hitman, he was subject to a no contact order prohibiting from having direct or indirect contact with Victim 2, subject to limited exceptions that are not applicable here.

In furtherance of his plot to kidnap Victim 2, Defendant solicited hitmen from at least two sites on the dark web. Defendant then paid approximately $60,000 in Bitcoin

for these hitmen to kidnap Victim 2, extort her, inject her with heroin, and hold her hostage for seven days. Defendant, again using the moniker Scar215, even structured a bonus scheme for paying the hitman so long as certain goals were achieved:

*To earn the additional associated bonus, within 2 weeks of the target being released, she will have completed the specific goal.*

*1. Permanently withdraw all court motions and all mediated agreements. Bonus $10k*

*2. Return to your husband by asking to move back home AND fucking him at least three times within the 2 week time frame Bonus: $10k*

*3. Keep her mouth shut and tell no one, ever about the kidnapping Bonus $10k*

*4. Inject her daily with heroin and teach her to do it AND supply pics and videos of her injecting herself. $5k*

*5. Plant drugs and used needles with her DNA in the needles through her home. Provide some pics of drugs and needles scattered around $5k*

As part of the scheme, Defendant suggested that the hitmen should use any and "all means necessary," including, but not limited to, threatening to severely beat Victim 2's father, slaughtering Victim's dog, and threatening to cause Victim 2's older son to become addicted to heroin.

In these messages, Defendant provided Victim 2's address, a link to her place of employment, as well as information about her work schedule. Defendant also directed that he had "other jobs worth quite a bit to accomplish in the near future. So, if all goes well, then we can work together on a few other things also."

While attempting to have Victim 2 kidnapped, Defendant also solicited a hacker on the dark web to hack into Victim 2's electronic devices and accounts to "infect [her] computer so it is not usable," to "delete all her files in her phone and on her computer," to access "her cameras and delete everything," and plant messages in his estranged wife's electronic devices indicating she was using drugs.Defendant also paid

approximately $3,000 in Bitcoin to Dark Web Hackers, which advertised the ability to hack into a victim's social media and/or computer and plant evidence.

> Identifying Defendant as Scar215

During the investigation, the FBI identified Defendant as Scar215 through various means. In an interview with the FBI, Defendant admitted that he was hiring hitmen on the dark web using the moniker "Scar2 something." Later in that same interview, Defendant responded in the affirmative when the FBI stated that they knew his moniker was "Scar215." Defendant also admitted to transmitting $10,000s of dollars in Bitcoin to sites affiliated with dark web hitmen. Although Defendant told the FBI at the time that he was paying the hitmen as a way to commit suicide, this was not true.

Defendant's identity as the author of the dark web messages is corroborated by the content of the messages themselves. Notably, the messages contain unique identification and/or verification codes Defendant saved to his phone and/or wrote down in a book, placed in his biometric safe, and sent to an encrypted email account. The messages also contain references to information that few, other than Defendant would possess – e.g., information about divorce proceedings, Victim 2's living situation, the existence of court-mediated agreements, as well as Bitcoin payment addresses belonging to Defendant. In addition, Scar215 knew Victim 2's work schedule as well as the temporary visitation schedule for Defendant and Victim 2's minor child. Scar215 also knew information about Victim 2's family – e.g., about her older son and dog, which were to be used as leverage to get Victim 2 to return to Defendant and be intimate with him. Scar215's messages even demonstrated an urgency based on the schedule in Defendant's divorce proceedings. Scar215 wanted the kidnapping completed prior to April 18, 2021; meanwhile, the divorce proceedings were scheduled for April 19, 2021. Even the username ("Scar215") and associated password ("Mufasa$$") are consistent with Defendant's affinity for lions. Finally, Defendant had a motive to harm both Victims 1 and 2 based on past incidents involving Defendant and his victims.

1    Defendant's Bitcoin transactions further corroborate that he is "Scar215" and
2    paid approximately $60,000 in Bitcoin to harm his victims. Notably, Defendant
3    conducted nearly all of his transactions on the dark web through one specific wallet – a
4    Bitcoin wallet the FBI recovered from information inside Defendant's Biometric safe.
5    Blockchain records, which document each Bitcoin transaction, demonstrate Defendant
6    funded this wallet with money from his Coinbase.com account. Defendant also made
7    deposits into his Bitcoin wallet from ATMs in Spokane, Washington, where Defendant
8    was captured on camera making the deposits. From the ATM kiosks, Defendant's
9    money went directly into the same Bitcoin wallet. From there, the money went directly
10    to purported hitmen.

11    Finally, after Defendant was confronted with the evidence against him, he took
12    several actions demonstrating consciousness of guilt. In fact, the same day the FBI
13    asked Defendant about his activities on the dark web, Defendant attempted to take his
14    life – describing his behavior/actions as an "irreparable fuck up." In a note to his family,
15    which was placed next to a business card from the FBI, Defendant prayed for
16    forgiveness and told his family he was sorry for what he had done. Notwithstanding the
17    Defendant ingested 40 Xanax pills, he survived this apparent suicide attempt.

18    While in custody, Defendant attempted to tamper with at least one of the
19    witnesses against him – begging a key witness to marry him so he could have control
20    over whether she would testify. If the witness did so, Defendant offered to pay tuition
21    for her children to attend a private school in Spokane. Defendant then directed the
22    witness to burn evidence of his efforts to tamper with the witness.

23    **9.    The United States Agrees**

24    The United States Attorney's Office for the Eastern District of Washington
25    agrees that at the time of sentencing, the United States will move to dismiss the
26    remaining charges in the Superseding Indictment filed on February 1, 2022, which
27    charge Defendant with the following offenses: Counts 2 and 5 – Cyberstalking in
28    violation of 18 U.S.C. § 2261A(2)(B), 2261(b)(5); Count 3 – Attempted Kidnapping in

1   violation of 18 U.S.C. § 1201(a)(1), (d); Count 6 – Attempted Damage to a Protected

2   Computer in violation of 18 U.S.C. § 1030(a)(5)(A), (b), (c)(4)(G)(ii); and Count 7 –

3   Tampering with a witness in violation of 18 U.S.C. § 1512(b)(2).

4       The United States Attorney's Office for the Eastern District of Washington

5   agrees not to bring additional charges against Defendant based on information in its

6   possession at the time of this Plea Agreement that arise from conduct that is either

7   charged in the Indictment or identified in discovery produced in this case, unless

8   Defendant breaches this Plea Agreement before sentencing.

9       10.   United States Sentencing Guideline Calculations

10      Defendant understands and acknowledges that the United States Sentencing

11   Guidelines ("U.S.S.G." or "Guidelines") apply and that the Court will determine

12   Defendant's advisory range at the time of sentencing, pursuant to the Guidelines.

13   Defendant and the United States agree to the following Guidelines calculations.

14         a.   Count 1: Threats in Interstate Commerce Relating to Victim 1

15           i.   *Base Offense Level*

16      The United States and Defendant agree that the base offense level for Threats in

17   Interstate Commerce, in violation of 18 U.S.C. § 875(c) is 12. *See* U.S.S.G.

18   §2A6.1(a)(1).

19           ii.   *Specific Offense Characteristics*

20      The United States and Defendant agree that the following specific offense

21   characteristics apply:

22       –   The Offense involved conduct evidencing an intent to carry out the threat,

23           resulting in an upward adjustment of 6 levels. *See* U.S.S.G. § 2A6.1(b)(1);

24       –   The Offense involved more than two threats, resulting in an upward

25           adjustment of 2 levels. *See* U.S.S.G. § 2A6.1(b)(2)(A);

26       –   The Offense resulted in a substantial expenditure of funds to respond to

27           the offense, resulting in an upward adjustment of 4 levels. *See* U.S.S.G. §

28           2A6.1(b)(4); and

1        –   The Offense involved obstructing or impeding the Administration of

2             Justice, resulting in an upward adjustment of 2 levels. *See* U.S.S.G. §

3             3C1.1

4       a.  <u>Count 4: Threats in Interstate Commerce Relating to Victim 2</u>

5          i.  *Base Offense Level*

6         The United States and Defendant agree that the base offense level for Threats in

7    Interstate Commerce, in violation of 18 U.S.C. § 875(c) is 12. *See* U.S.S.G.

8    §2A6.1(a)(1).

9          ii.  *Specific Offense Characteristics*

10        The United States and Defendant agree that the following specific offense

11   characteristics apply:

12       –   The Offense involved conduct evidencing an intent to carry out the threat,

13            resulting in an upward adjustment of 6 levels. *See* U.S.S.G. § 2A6.1(b)(1);

14       –   The Offense involved more than two threats, resulting in an upward

15            adjustment of 2 levels. *See* U.S.S.G. § 2A6.1(b)(2)(A);

16       –   The Offense involved the violation of a court protection order, resulting in

17            an upward adjustment of 2 levels. *See* U.S.S.G § 2A6.1(b)(3);

18       –   The Offense resulted in a substantial expenditure of funds to respond to

19            the offense, resulting in an upward adjustment of 4 levels. *See* U.S.S.G. §

20            2A6.1(b)(4); and

21       –   The Offense involved obstructing or impeding the Administration of

22            Justice, resulting in an upward adjustment of 2 levels. *See* U.S.S.G. §

23            3C1.1

24      b.  <u>Multiple Count Analysis</u>

25        Pursuant to U.S.S.G. § 3D1.4, 1 unit is assigned to each of the two counts of

26   threats in interstate commerce, resulting in a 2-level increase to the count with the

27   highest offense level. Accordingly, the United States and Defendant agree that

28   Defendant's combined adjusted offense level is 30.

*United States v. Ronald Craig Ilg* - Plea Agreement

### c. Acceptance of Responsibility

The United States will recommend that Defendant receive a three-level downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), (b), if Defendant does the following:

    i.    accepts this Plea Agreement;

    ii.    enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

    iii.    demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

    iv.    provides complete and accurate information during the sentencing process; and

    v.    does not commit any obstructive conduct.

Defendant and the United States agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

### d. No Other Agreements

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances. Defendant understands and acknowledges that the United States is free to make any sentencing arguments it sees fit, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Agreement, and Defendant's relevant conduct.

### e. Criminal History

The United States and Defendant have no agreement and make no representations about Defendant's criminal history category, which will be determined by the Court

1  after the United States Probation Office prepares and discloses a Presentence
2  Investigation Report.

3       11.    Incarceration

4       Consistent with this Rule 11(c)(1)(C) agreement, the United States agrees to
5  recommend a sentence no higher than 96 months of incarceration. Defendant agrees to
6  recommend a sentence of no less than 60 months of incarceration.

7       12.    Supervised Release

8       The United States and Defendant each agree to recommend 3 years of supervised
9  release. Defendant agrees that the Court's decision regarding the conditions of
10  Defendant's Supervised Release is final and non-appealable; that is, even if Defendant
11  is unhappy with the conditions of Supervised Release ordered by the Court, that will
12  not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this
13  Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised
14  Release. The term of supervised release is not part of the 11(c)(1)(C) nature of this plea
15  agreement.

16       The United States and Defendant agree to recommend that in addition to the
17  standard conditions of supervised release imposed in all cases in this District, the Court
18  should also impose the following conditions:

19       a. The United States Probation Officer may conduct, upon reasonable
20          suspicion, and with or without notice, a search of Defendant's person,
21          residences, offices, vehicles, belongings, and areas under Defendant's
22          exclusive or joint control.

23       b. Defendant shall complete mental health evaluations and treatment,
24          including taking medications prescribed by the treatment provider.
25          Defendant shall allow reciprocal release of information between the
26          Probation Officer and the treatment provider. Defendant shall contribute
27          to the cost of treatment according to the Defendant's ability.

28

13.   No Contact Order

The United States and Defendant agree that Defendant shall have no contact, either direct or indirect, with following individuals: Victim 1 and her immediate family; Victim 2 and her immediate family (other than court-authorized calls/visitation with Defendant's minor child); and Witness 1 and her immediate family. Prohibited forms of contact include, but are not limited to, telephone, mail, email, text, video, social media, and/or any contact through any third person or parties. *See* 18 U.S.C. 3771.

14.   Criminal Fine

The United States and Defendant may make any recommendation concerning the imposition of a criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

15.   Restitution

The United States and Defendant agree that restitution is appropriate and mandatory. 18 U.S.C. §§ 3663A and 3664. Defendant acknowledges that restitution is mandatory, without regard to Defendant's economic situation, to Victim 1 and Victim 2. The United States reserves the right to seek reasonable restitution, without regard to Defendant's economic situation, to any other identifiable victims directly and proximately harmed as a result of the commission of the Defendant's offense conduct who have suffered physical injury or pecuniary loss, pursuant to 18 U.S.C. §§ 3663A, 3664.

Pursuant to 18 U.S.C. § 3663(a)(3), in exchange for the United States dismissing counts and/or agreeing not to bring additional charges, Defendant voluntarily agrees to pay restitution to the witness who Defendant attempted to tamper with, as set forth in

the Factual Basis and Statement of Facts herein, whether or not Defendant pleads guilty to counts charging that specific conduct, and whether or not such counts are foregone pursuant to this Plea Agreement.

With respect to restitution, the United States and Defendant agree to the following:

### a.    Restitution Amount

The United States and Defendant stipulate and agree that, pursuant to 18 U.S.C. §§ 3663, 3663A and 3664, to the extent restitution is ordered, restitution should be ordered in an amount to be determined at or before the time of sentencing.

### b.    Payments

To the extent restitution is ordered, the United States and Defendant agree that the Court will set a restitution payment schedule based on Defendant's financial circumstances. 18 U.S.C. § 3664(f)(2), (3)(A). Regardless, Defendant agrees to pay not less than 10% of Defendant's net monthly income towards restitution if restitution is ordered.

### c.    Treasury Offset Program and Collection

Defendant understands the Treasury Offset Program ("TOP") collects delinquent debts owed to federal agencies. If applicable, the TOP may take part or all of Defendant's federal tax refund, federal retirement benefits, or other federal benefits and apply these monies to Defendant's restitution obligations. 26 U.S.C. § 6402(d); 31 U.S.C. § 3720A; 31 U.S.C. § 3716.

Defendant understands that the United States may, notwithstanding the Court-imposed payment schedule, pursue other avenues to ensure the restitution obligation is satisfied, including, but not limited to, garnishment of available funds, wages, or assets. 18 U.S.C. §§ 3572, 3613, and 3664(m). Nothing in this acknowledgment shall be construed to limit Defendant's ability to assert any specifically identified exemptions as provided by law, except as set forth in this Plea Agreement.

Until a fine or restitution order is paid in full, Defendant agrees fully to disclose

all assets in which he has any interest or over which he exercises control, directly or indirectly, including those held by a spouse, parent, nominee, or third party. Defendant agrees to truthfully complete the Financial Disclosure Statement that will be provided by the earlier of 30 days from Defendant's signature on this plea agreement or the date of Defendant's entry of a guilty plea, sign it under penalty of perjury and provide it to both the United States Attorney's Office and the United States Probation Office. Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on Defendant upon the signing of this Plea Agreement. Until such time as the fine or restitution order is paid in full, Defendant agrees to provide waivers, consents or releases requested by the U.S. Attorney's Office to access records to verify the financial information. The parties agree that Defendant's failure to timely and accurately complete and sign the Financial Disclosure Statement, and any update thereto, may, in addition to any other penalty or remedy, constitute Defendant's failure to accept responsibility under U.S.S.G § 3E1.1.

        d.   Notifications and Waivers

Defendant agrees to notify the Court and the United States of any material change in Defendant's economic circumstances (e.g., inheritances, monetary gifts, changed employment, or income increases) that might affect Defendant's ability to pay restitution. 18 U.S.C. § 3664(k). Defendant agrees to notify the United States of any address change within 30 days of that change. *See* 18 U.S.C. § 3612(b)(1)(F). These obligations ceases when Defendant's restitution is paid-in-full.

Defendant acknowledges that the Court's decision regarding restitution is final and non-appealable; that is, even if Defendant is unhappy with the amount of restitution ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or restitution order.

    16.   Payments While Incarcerated:

1    If Defendant lacks the financial resources to pay the monetary obligations
2    imposed by the Court, Defendant agrees to earn money toward these obligations by
3    participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

4    17.    <u>Additional Violations of Law Can Void Plea Agreement</u>

5    The United States and Defendant agree that the United States may, at its option
6    and upon written notice to the Defendant, withdraw from this Plea Agreement or modify
7    its sentencing recommendation if, prior to the imposition of sentence, Defendant is
8    charged with or convicted of any criminal offense or tests positive for any controlled
9    substance.

10    18.    <u>Waiver of Appeal Rights</u>

11    Defendant understands that Defendant has a limited right to appeal or challenge
12    Defendant's conviction and the sentence imposed by the Court.

13    In return for the concessions that the United States has made in this Plea
14    Agreement, Defendant agrees to waive Defendant's right to appeal Defendant's
15    conviction and sentence if the Court imposes a term of imprisonment consistent with
16    the terms of this Rule 11(c)(1)(C) Plea Agreement.

17    If the Court indicates its intent to impose a sentence above the Rule 11(c)(1)(C)
18    terms of this Agreement and Defendant chooses not to withdraw, then Defendant: (a)
19    may appeal only Defendant's sentence, but not Defendant's conviction; (b) may appeal
20    Defendant's sentence only if it exceeds the high end of the Guidelines range determined
21    by the Court; and (c) may appeal only the substantive reasonableness of Defendant's
22    sentence. Defendant expressly waives Defendant's right to appeal any fine, term of
23    supervised release, or restitution order imposed by the Court.

24    Defendant expressly waives the right to file any post-conviction motion attacking
25    Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255,
26    except one based on ineffective assistance of counsel arising from information not now
27
28

1  known by Defendant and which, in the exercise of due diligence, Defendant could not

2  know by the time the Court imposes sentence.

3      Nothing in this Plea Agreement shall preclude the United States from opposing

4  any post-conviction motion for a reduction of sentence or other attack upon the

5  conviction or sentence, including, but not limited to, writ of habeas corpus proceedings

6  brought pursuant to 28 U.S.C. § 2255.

7      19.  Compassionate Release

8      In consideration for the benefits Defendant is receiving under the terms of this

9  Plea Agreement, Defendant expressly waives Defendant's right to bring any motion

10  for Compassionate Release other than a motion arising from one of the specific bases

11  set forth in this paragraph of this Plea Agreement. The United States retains the right

12  to oppose, on any basis, any motion Defendant files for Compassionate Release.

13      The only bases on which Defendant may file a motion for Compassionate

14  Release in the Eastern District of Washington are the following:

15      a.  Medical Condition of Defendant.

16          i.   Defendant is suffering from a terminal illness (i.e., a serious and

17              advanced illness with an end of life trajectory). A specific

18              prognosis of life expectancy (i.e., a probability of death within a

19              specific time period) is not required. Examples include

20              metastatic solid-tumor cancer, amyotrophic lateral sclerosis

21              (ALS), end-stage organ disease, and advanced dementia; or

22          ii.  Defendant is suffering from a serious physical or medical

23              condition, a serious functional or cognitive impairment, or

24              deteriorating physical or mental health because of the aging

25              process that substantially diminishes the ability of the defendant

26              to provide self-care within the environment of a correctional

27              facility and from which Defendant is not expected to recover.

28      b.  Age of Defendant.

*United States v. Ronald Craig Ilg* - Plea Agreement
- 19-

    i.   Defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process; and has served at least 10 years or 75 percent of Defendant's term of imprisonment, whichever is less; or

    ii.   Defendant is at least 70 years old and has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which Defendant is imprisoned.

c.  Family Circumstances.

    i.   The caregiver of Defendant's minor child or children has died or become incapacitated, and Defendant is the only available caregiver for Defendant's minor child or children; or

    ii.   Defendant's spouse or registered partner has become incapacitated, and Defendant is the only available caregiver for Defendant's spouse or registered partner.

d.  Subsequent Reduction to Mandatory Sentence.

    i.   Defendant pleaded guilty to an offense which, on the date of Defendant's guilty plea, carried a mandatory minimum sentence; and

    ii.   after the entry of judgment, the length of the mandatory minimum sentence for Defendant's offense of conviction was reduced by a change in the law; and

    iii.   the application of the reduced mandatory minimum sentence would result in Defendant receiving a lower overall sentence.

e.  Ineffective Assistance of Counsel.

    i.   Defendant seeks Compassionate Release based on a claim of ineffective assistance of counsel arising from information that Defendant both

1.   did not know at the time of Defendant's guilty plea, and

2.   could not have known, in the exercise of due diligence, at the time the Court imposed sentence.

20.   <u>Withdrawal or Vacatur of Defendant's Plea</u>

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

a.   this Plea Agreement shall become null and void;

b.   the United States may prosecute Defendant on all available charges;

c.   The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

d.   the United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim that the United States has violated Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to, alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

21.   Waiver of Attorney Fees and Costs

Defendant agrees to waive all rights Defendant may have under the "Hyde Amendment," Section 617, P.L. 105- 119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including, without limitation, any charges to be dismissed pursuant to this Plea Agreement or any charges previously dismissed or not brought as a result of this Plea Agreement).

22.   Integration Clause

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.  This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.  The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Vanessa R. Waldref
United States Attorney

Ri Bah                                                          8/1/2022
_____                    _____
Richard R. Barker                                               Date
Patrick J. Cashman
Assistant U.S. Attorneys

I have read this Plea Agreement and I have carefully reviewed and discussed every part of this Plea Agreement with my attorney.  I understand the terms of this Plea Agreement.  I enter into this Plea Agreement knowingly, intelligently, and voluntarily.

*United States v. Ronald Craig Ilg* - Plea Agreement

- 22 -

1  I have consulted with my attorney about my rights, I understand those rights, and I am

2  satisfied with the representation of my attorney in this case.  No other promises or

3  inducements have been made to me, other than those contained in this Plea Agreement.

4  No one has threatened or forced me in any way to enter into this Plea Agreement.  I

5  agree to plead guilty because I am guilty.

6

7  _____          _____
   RONALD CRAIG ILG                                     Date

8  Defendant

9

10      I have read the Plea Agreement and have discussed the contents of the

11  agreement with my client. The Plea Agreement accurately and completely sets forth

12  the entirety of the agreement between the parties.  I concur in my client's decision to

13  plead guilty as set forth in the Plea Agreement.  There is no legal reason why the

14  Court should not accept Defendant's guilty plea.

15

16  _____          _____
   Carl Oreskovich                                     Date

17  Andrew Wagley
   Attorneys for Defendant

18

19

20

21

22

23

24

25

26

27

28