Carl J. Oreskovich, WSBA #12779
Andrew M. Wagley, WSBA #50007
Etter, McMahon, Lamberson,
Van Wert & Oreskovich, P.C.
618 West Riverside Avenue, Suite 210
Spokane, WA 99201
(509) 747-9100
(509) 623-1439 Fax
Email: carl@ettermcmahon.com
Email: awagley@ettermcmahon.com
*Attorneys for Defendant Ronald C. Ilg, MD*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RONALD CRAIG ILG,<br><br>Defendant. | Case No. 2:21-cr-00049-WFN<br><br>**RESPONSE TO UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR AN UPWARD VARIANCE / DEPARTURE** |

COMES NOW, Defendant RONALD CRAIG ILG, by and through his attorneys of record, Carl J. Oreskovich and Andrew M. Wagley of Etter, McMahon, Lamberson, Van Wert & Oreskovich, P.C., and hereby respectfully submits the following Response to the United States' Sentencing Memorandum and Motion for Upward Variance / Departure (ECF No. 156).

Response to United States'
Sentencing Memorandum- Page 1

ETTER, MᶜMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201  (509) 747-9100

# INTRODUCTION

Before the Court is a 56-year-old physician, who, with the exception of an approximately three-and-a-half-month period of his life following a psychological collapse, has lived an exemplary crime-free life. Dr. Ilg does not come from an entitled background. Rather, he is one of eight children raised in rural Oregon by a janitor father and nurse mother. He is self-made, put himself through college and medical school, ultimately achieving dual Board certifications in Pediatrics and Neonatology. Since 2003 he has resided in Spokane, Washington and dedicated his career to the life saving treatment of newborn babies. He rose to the position of Corporate Medical Director of his medical group and Director of the Neonatology Unit at Deaconess Hospital. He volunteered his time to serve as the medical director of an upstart nonprofit organization, Maddie's Place, dedicated to providing housing and treatment for drug addicted mothers of newborn babies. He volunteered his time to serve as medical director of the Mt. Spokane Ski Patrol.

Beginning in the fall of 2019, Dr. Ilg became the subject of an unfounded workplace allegation and investigation that ultimately led to the loss of his job and corporate medical directorship. Following the initiation of the investigation, he went on Family Medical Leave and was evaluated by the

Response to United States'
Sentencing Memorandum- Page 2

ETTER, M<sup>c</sup>MAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201 (509) 747-9100

Washington Physicians Health Program (WPHP). WPHP diagnosed him with acute adjustment disorder with mixed anxiety and depressed mood based upon his work environment and his feelings of isolation from his family. WPHP recommended that he seek out patient treatment and consistent with that recommendation, Dr. Ilg began treatment with psychologist Jennifer Van Wey in December 2019. He continued that treatment until March 2021. During this period of treatment his stressors magnified and became unbearable. In May 2020, he lost his position as Corporate Medical Director of his Neonatology practice group. The following month, in June 2020, his wife, Victim 2, advised that she wanted a divorce. Finally, in December 2020, he was unexpectedly terminated from his employment. Dr. Ilg was emotionally devastated and suffered from suicidal ideation. It was within that emotional state, within that context, that he committed the crimes for which he is about to be sentenced.

In its Sentencing Memorandum, the United States discusses a number of reasons for the Court to depart upward from the sentencing range of 70 to 87 months and to impose the maximum 8-year sentence (96 months pursuant to Paragraph 11 of the 11(c)(1)(c) Plea Agreement). (ECF No. 142 at 14). This includes a discussion of the sentencing factors under 18 U.S.C. §3553(a);

Response to United States' Sentencing Memorandum- Page 3

ETTER, MᶜMAHON, LAMBERSON, VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201 (509) 747-9100

Efforts Toward Obstruction; Alleged Domestic Abuse and Stalking; and, Lack of Remorse.

Some of these issues have already been addressed in the Defendant's Sentencing Memorandum. (ECF No. 153.) To the extent that these issues have been discussed in that Memorandum they will not be reargued. Rather, this Response will focus on issues raised in the Government's Sentencing Memorandum. (ECF No. 156.)

## **SENTENCING FACTORS UNDER 18 U.S.C. §3553(a)**

1. <u>The Nature and Circumstances of the Offense.</u> In his Plea Agreement and at the Plea Hearing, the Defendant has candidly admitted the conduct recited in the Government's Sentencing Memorandum. Admittedly, these crimes are serious.

2. <u>History and Characteristics of the Defendant</u>. The Government's Memorandum underscores three inflammatory theories in support of its upward departure: (i) obstruction of justice; (ii) domestic abuse and stalking; and (iii) lack of remorse. Each of these will be addressed below.

Notably absent, however, from the Government's Sentencing Memorandum is any discussion of the Defendant's life outside of the approximate three and a half months encompassing these offenses. As noted

Response to United States'
Sentencing Memorandum- Page 4

ETTER, MᶜMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

above, Dr. Ilg was a self-starter who achieved a high degree of success in the practice of medicine. His life and career were driven by the compassion to treat and save the lives of newborn babies. Equally important is the fact that Dr. Ilg's participation in these offenses was driven by an emotional breakdown caused by the loss of career, reputation, livelihood, and family. The offenses occurred in the fog of an adjustment disorder with mixed anxiety and depression. They occurred during Dr. Ilg's efforts to follow treatment recommendations from trusted healthcare professionals. They occurred during a timeframe when Dr. Ilg's mental health was so low that he suffered from suicidal ideation. Simply, this did not occur in a vacuum.

i. <u>Obstruction of Justice</u>.

The Government argues for an 8-year sentence on the theory that the Defendant has engaged in acts constituting obstruction. In part, in his Plea Agreement, the Defendant has admitted to a number of different acts that constitute obstruction, including sending a letter to Witness 1 while he was incarcerated. He admitted to not being totally truthful. (ECF No. 142, at 6-10). These acts have already been considered in the calculation of the sentencing guidelines by a 2-point increase for obstruction. (ECF No. 142, at 12; ECF No. 162, at 17.) Additionally, it should be pointed out that Defendant's efforts to

Response to United States'
Sentencing Memorandum- Page 5

ETTER, M<sup>c</sup>MAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

contact Witness 1 in May 2021, (*see* ECF No. 41, Exhibit 10, Call 4 at 6:45 and Exhibit A at 3:18 – 3:40), were not prohibited by any order of any Court. Further, they were precipitated by the Defendant's belief that he and Witness 1 were engaged to be married and that she remained supportive of him. They were not efforts of obstruction. The Government also cites phone calls to Witness 1 made by a former cell mate of the defendant and an email sent by the Defendant's current fiancé to Witness 1. The Government seeks to hold the Defendant accountable for the calls and email solely on the theory that it was his former cell mate and his fiancé who initiated the contacts. The Government argues that the Defendant does not take Court Orders seriously. Although there is a connection between the Defendant, the cell mate, and the fiancé, it does not prove that the Defendant precipitated the contact.

    ii.    <u>Domestic Abuse and Stalking</u>.

As part of the characteristics of the Defendant, the Government argues that he engaged in an escalating pattern of domestic abuse and stalking behavior. First, although the Government's characterization of this behavior is largely disputed it should again be emphasized that this alleged behavior occurred during the period of emotional collapse previously described. The behavior described does not recognize the exemplary life that Dr. Ilg led for

Response to United States'
Sentencing Memorandum- Page 6

ETTER, M<u>c</u>MAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201 (509) 747-9100

over 54 years. Further, the behavior described by the Government did not occur and in large part is overstated.

- First, the Defendant never placed Xanax in Victim 2's drinks, never directed what Victim 2 would eat or tasered Victim 2. These allegations are simply untrue.

- Tracking devices were placed on cars by both parties, Victim 2 and the Defendant. This was not conduct solely attributable to the Defendant. Further, both Victim 2 and Defendant participated in body building competitions; were trained by professional trainers, and whose diets were also directed by those same trainers. Although Dr. Ilg was supportive of his wife in following her training routine and diet, he certainly did not direct what she would eat or what her workout routine would be.

- The Government overstates Dr. Ilg's violations of two No Contact Orders arising out of the parties' dissolution. It asserts that the Defendant sent hundreds of messages in December 2020, in violation of the No Contact Order. This rendition is not correct. The first Petition for an Order of Protection – Harassment was filed with the Spokane County Superior Court on December 21, 2020. Accompanying this

Response to United States'
Sentencing Memorandum- Page 7

ETTER, M<sup>c</sup>MAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201 (509) 747-9100

petition are several attachments, which include text messages from Dr. Ilg to Victim 2 from December 10 until 18, 2020. Subsequently, Victim 2 filed a Motion for Temporary Family Law Order on February 9, 2021, wherein she requested the court enter a new anti-harassment order. In her declaration in support thereof, Victim 2 referenced an Agreed Civil No-Contact Order on January 20, 2021. She then alleged that the terms of the Agreed Civil No-Contact Order were that any communication between the parties would be limited to that regarding the shared custody of their child. The January 20, 2021 Agreed Civil No-Contact Order is included as an attachment in the February 19, 2021 Motion. Also attached to the February 19, 2021 Motion were text messages from February 13, 15, and 19, including some missed calls. Subsequently an Amended Agreed Civil No-Contact Order was entered on March 10, 2021, to settle the pending February 19, 2021 Motion for Temporary Family Law Order. The February text messages occurred while the Agreed Civil No-Contact Order from January 20, 2021 was in place, but the December text messages were not subject to a no-contact order.

- It is true that a discussion occurred with regards to role playing in a "kidnapping scenario," but this occurred in 2018 during a period of a

Response to United States'
Sentencing Memorandum- Page 8

ETTER, MᶜMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201 (509) 747-9100

harmonious relationship with Victim 2, not in July 2020 as asserted by the Government.

- In rebuttal, The Government has proffered the Defendant's treatment of Witness 1 as further evidence of domestic abuse. Witness 1 willingly participated in these activities. The alleged "hole" incident occurred only weeks before Witness 1 took her two minor daughters on a trip to Mexico with the Defendant. It belies logic to believe that Witness 1 was horrified and frightened by the "hole" incident but would willingly travel out of the country with the Defendant and bring along her two minor daughters. Witness 1 voluntarily practiced Domination and Submission with the Defendant. (*see* attached Exhibit A, birthday card and photos of Domination and Submission props that Witness 1 gave to the Defendant on his birthday in August 2020.)

iii. <u>Lack of Remorse</u>.

In its Sentencing Memorandum, the Government points to two phone calls from which it argues that the Defendant lacks remorse. The first pertains to a June 11, 2021, recorded phone call between the Defendant and a reporter from the Daily Beast wherein the Defendant admittedly denied writing the emails to the Hitman Dark Web sites. (ECF No. 145, Exhibit 6 at 3:15). In response, the

Response to United States'
Sentencing Memorandum- Page 9

ETTER, M<u>c</u>MAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

Defendant would point out that these calls occurred 14 months prior to his change of plea wherein he clearly accepted full responsibility for his actions and demonstrated remorse for his actions and their consequences.

The second phone call with another person (Megan) occurred on November 4, 2022, nearly four months post plea. The Government mischaracterizes the contents of the phone call arguing that the Defendant discounts his crimes contrary to his plea agreement. A closer listening of the call establishes that the Defendant states that the whole story is different than what has been reported in the press. "No one really knows what the whole story is, different than what is being recorded in the press." Nowhere does the defendant discount the facts admitted to in the Plea Agreement. Nowhere does he indicate a lack of remorse.

### **UPWARD OR DOWNWARD DEPARTURE OR VARIANCE**

In its Sentencing Memorandum, the Government argues that a sentence of no less than 96 months is necessary based upon a number of different sentencing guidelines (Unusually Heinous, Brutal or Degrading to the Victims U.S.S.G. §5k2.8; The Use of Abduction or Unlawful Restraint U.S.S.G. §5k2.4; and The Psychological Impact on the Victims). The Presentence Investigation

Report also identifies these factors as a potential basis for an upward departure for this Court.

In rebuttal, the Defendant would point out that these were mere threats and not acts completed resulting in the type of harm that would take this case outside the "heartland" of sentencing. To the contrary, the Defendant asserts that the most significant factor placing this case out of the "heartland" for sentencing purposes are the personal history and characteristics of this Defendant exemplified by a successful, professional and volunteer life with the exception of the short period of time during which the Defendant committed these acts suffering extreme psychological stressors. When functioning normally the Defendant engaged in a very successful professional life that was dedicated to saving the lives of newborn babies. He rose to the top of his profession to be appointed the Corporate Medical Director of his medical group, as well as the Medical Director of the Neonatology Unit at Deaconess Hospital. He further served as the Medical Director of a non-profit organization that was developed to provide housing and treatment for drug addicted mothers of newborn babies. When functioning normally, the Defendant made significant contributions to society throughout his life. Unfortunately, as previously detailed in this Memorandum, the Defendant suffered a complete loss of his

Response to United States'
Sentencing Memorandum- Page 11

ETTER, M<sup>c</sup>MAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

professional life, reputation, job, and family. This loss had a devasting impact upon the Defendant's psychological state and led to the commission of the acts for which he is convicted. In context, these acts occurred over a three-and-a-half month period of the life of a 54 year old physician. Perhaps because of the length of time, i.e., three and a half months, this conduct does not constitute "aberrant" behavior, and it is a significant departure from the otherwise productive and valuable contributions that the Defendant had made to society. But for the psychological impact and condition under which the Defendant was functioning he would have not committed these crimes. It is in this context that the circumstances of this case are outside the "heartland" of the sentencing guidelines and support the Defendant's argument for a downward variance to the 60- month bracket of the 11(c)(1)(c) Plea Agreement.

## **RESTITUTION**

The Plea Agreement at Paragraph 15 provides that the United States and the Defendant agree that restitution is appropriate and consistent with that agreement the Defendant agrees to the restitution request with one exception. (ECF No. 142, at ¶ 15.) In its restitution request, the Government requests $15,600.00 for Victim 1 for future counseling expenses and $15,366.00 on behalf of Victim 2 and her minor son. The $15,366.00 requested by Victim 2

Response to United States'
Sentencing Memorandum- Page 12

ETTER, M<sup>c</sup>MAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201  (509) 747-9100

includes $9,186.75 in attorneys' fees, most of which pertains to hearings, depositions, and discovery related to Victim 2 and the Defendant's visitation dispute in Spokane County Superior Court. Defense Counsel has reviewed the electronic format of the billings and has identified those entries related to Victim 2's attorneys' participation in this Federal criminal matter and has attached the highlighted portions of the request that it believes are an appropriate restitution reimbursement. The total for attorneys' fees amounts to $2,689.25, some $6,497.50 less than the $9,186.75 requested. The Defendant is agreeable to the payment of restitution to Victim 1 in the sum of $15,600.00 for future counseling expenses and the sum of $8,868.50 as restitution to Victim 2 ($15,366.00 less $6,497.50) of unrelated attorney fees.

The Defendant is prepared to tender that sum within ten days of sentencing.

## IMPOSITION OF FINE

In its Sentencing Memorandum, the Government asks this Court to impose a maximum fine of $250,000.00, arguing that the Plea Agreement provides for the Government's ability to do so. The Government's right to do so is not in dispute. However, the propriety of a fine of that nature is challenged.

Response to United States'
Sentencing Memorandum- Page 13

ETTER, M<sup>c</sup>MAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201 (509) 747-9100

From the outset anecdotally, it is difficult to recall a case in this District in the last twenty years that has resulted in the imposition of a significant fine of that nature. Typically, large fine amounts occur in cases where a corporation has committed a crime and when the prosecution and defendant agree to the amount of the fine.

Second, although the Defendant was a practicing neonatologist with a significant income, his profession and his future ability to earn money were taken away from him in December 2020. He has been unemployed since that time and has been incarcerated since April 16, 2021, nearly 21 months. He has not earned an income since that time. He will not earn an income during the period of his incarceration and he will never return to the earning capacity that he once enjoyed prior to his arrest. Although his financial declaration identifies assets, both pieces of real property that he has an interest in, i.e., his home and his 50% interest in a Wenatchee orchard, have significant mortgages resulting in monthly payments of over $7,000.00. His principal assets are in retirement accounts which will ultimately be used whenever he is released from incarceration to support him and whatever other obligations that he may have. His financial declaration signed in October 2022 identified $240,000.00 in attorney trust funds. However, those funds have been substantially depleted

Response to United States'
Sentencing Memorandum- Page 14

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201 (509) 747-9100

over the course of the last three months by transfers of funds to other law firms who are representing the Defendant in other matters and by payment to the undersigned for services that have been rendered. Although the present amount has not been calculated to the day, a remaining estimate taking into consideration work in progress is that the Defendant will have a maximum of approximately $100,000 remaining after sentencing. The sum will be reduced by restitution payments. It is also unknown what additional demands will be placed upon the Defendant for payments by other attorneys who are representing him in other matters.

In essence, the Defendant has no income, has little earning capacity, and has some financial resources that are principally contained in retirement accounts that will ultimately be used to pay his mortgage and living expenses. The pecuniary loss that was inflicted upon others will be paid in whole by restitution. The Defendant did not obtain any gains from this offense and has lost significantly in terms of having to liquidate his assets to provide for attorneys' fees and to fund the monthly mortgage obligations on the two properties that he has an interest in.

The Defendant has been in jail for the last twenty-one months, will likely lose his medical license and will have little, if any, skills that will lead to

Response to United States'
Sentencing Memorandum- Page 15

ETTER, M<sup>c</sup>MAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201 (509) 747-9100

employment whenever he is released from this lengthy period of incarceration. To that end, a fine of any nature, but particularly a fine as substantial as $250,000.00, is excessively punitive and not supported by the facts of this case.

## **CONCLUSION**

Based upon the foregoing, it is respectfully requested that this Court sentence the defendant to 60 months incarceration.

RESPECTFULLY SUBMITTED this 19th day of January, 2023.

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.


By: /s/ Carl J. Oreskovich
    Carl J. Oreskovich, WSBA #12779
    Andrew M. Wagley, WSBA #50007
    *Attorneys for Defendant Ronald C. Ilg, MD*

Response to United States'
Sentencing Memorandum- Page 16

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201 (509) 747-9100

## **CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury of the laws of the United States and the State of Washington that on the 19th day of January, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF System, which will send electronic service to all attorneys of record.

EXECUTED this 19th day of January, 2023 in Spokane, WA.


By: /s/ Jodi Dineen
Jodi Dineen

Response to United States'
Sentencing Memorandum- Page 17

ETTER, MᶜMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100