Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Richard R. Barker
Patrick J. Cashman
Brian M. Donovan
Assistant United States Attorneys
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RONALD CRAIG ILG,<br><br>Defendant. | Case No. 2:21-CR-0049-WFN-1<br><br>United States' Reply Brief to the Government's Sentencing Memorandum |

The United States of America, by and through United States Attorney Vanessa R. Waldref and Assistant United States Attorneys Richard R. Barker, Patrick J. Cashman, and Brian M. Donovan, submits this reply brief addressing the arguments in Defendant's Response to the Government's Sentencing Memorandum. *See* ECF No. 177.

### Defendant's History and Characteristics

Contrary to Defendant's sentencing arguments, his life – prior to hiring a dark web hitman – was neither "exemplary" nor "crime free." *See* ECF No. 177 at 2. As demonstrated throughout the parties' sentencing materials, Defendant subjected women to significant domestic violence and abuse. While Defendant claims his violent and aggressive relationships with Victim 1 and Witness 1 were consensual –

United States' Reply Brief to the Government's Sentencing Memorandum – 1

e.g., when Defendant locked Witness 1 in an old septic tank for several hours – the following text messages demonstrate otherwise:[1]

> **Witness 1:** Leave me alone I'm scared of you. Please don't hire someone to hurt me or my family.
>
> * * * * *
>
> **Witness 1**: [A]nd for some reason brushing my knees and legs and putting me down in some dark wet hole is going to make it better? Not in a million years will that work with me. [I] will never go back in the hole ever again ever[.] [I] was the one down in the hole all bruised up not you[.] [I]t finally hit me down in that hole. [N]ormal is not making me go done in that dark wet muddy hole and locking me in.
>
> **Defendant**: And you should want to be locked in a hole so you learn to be respectful[.] If you can't use the time in the hole to understand.

See PSIR at ¶ 61.

Defendant further challenges the government's evidence demonstrating Defendant's lack of remorse. ECF No. 177 at 10. As set forth in his November 4, 2022 jail call, Defendant has discussed ways to make money from his criminal activities – i.e., by selling the rights to his story to the media, apparently for a movie or book deal. See ECF No. 156 at Ex. H. Apparently, Defendant does not appreciate how a movie or book deal would revictimize those who have suffered because of his crimes. In seeking to profit, Defendant demonstrates the same callousness and pattern of exercising control over others that first led to Defendant's criminal behavior.

---

[1] In his response, Defendant claims that Witness 1 was a willing participant and consensual intimate partner throughout their relationship. While these messages and hundreds of others demonstrate otherwise (*See, e.g.*, PSIR at ¶ 62), Defendant further ignores that his relationships follow an all-too-familiar pattern of domestic abuse. *See, e.g.*, *Hernandez v. Ashcroft*, 345 F.3d 824, 836 (9th Cir. 2003) ("Abuse within intimate relationships often follows a pattern known as the cycle of violence, 'which consists of a tension building phase, followed by acute battering of the victim, and finally by a contrite phase where the batterer's use of promises and gifts increases the battered woman's hope that violence has occurred for the last time.'").

United States' Reply Brief to the Government's Sentencing Memorandum – 2

To the extent Defendant continues to claim that his life spiraled because of an unsubstantiated workplace investigation, the record demonstrates otherwise. ECF No. 177. The workplace investigation identified specific misconduct ultimately leading to Defendant's termination. ECF No. 174, Ex. A. Similarly, while Defendant asserts, without any evidence or support, that the entire investigation was meritless, Defendant is not a particularly reliable source or historian. *See* EFC No. 177 at 2-3. During the pendency of this investigation, Defendant lied to the FBI, made false statements to the media (describing himself as a hacking victim), and he lied to Witness 1 (claiming he did not send the dark web messages).

In short, Defendant's self-serving statements that he lived an exemplary life and simply went through a 3.5 month[2] lapse in judgement should carry very little weight with this Court. Defendant's pattern of seeking to exert control over his victims and attempts to make money by offering to sell the rights to his story have continued far beyond the period encompassing the charged offenses.

## Restitution

In his Response, Defendant has agreed to pay $15,600 in restitution to Victim 1, but he opposes some of the restitution on behalf of Victim 2. ECF No. 177 at 12. Specifically, Defendant opposes certain payments covering Victim 2's legal expenses. *Id.* After Defendant filed his brief, the United States further consulted with Victim 2 and her counsel about restitution. Following that consultation, the United

---

[2] Defendant's claim that his crimes occurred over 3.5 months is inaccurate. Defendant has admitted that his offenses began on or about December 31, 2020. ECF No. 142 at 4. The obstruction letter attempting to tamper with Witness 1 is dated July 10, 2021. ECF No. 146 at Ex. B. Stated otherwise, Defendant's offenses occurred over more than six months. All of that said, Defendant's devious and anti-social behavior occurred over several years, culminated in the crimes charged in this case, and has involved continued attempts to have others contact Witness 1 in violation of a no contact order.

United States' Reply Brief to the Government's Sentencing Memorandum – 3

States and Defendant have tentatively agreed to restitution in the amount of $15,600.00 on behalf of Victim 1 and $9,798.50 on behalf of Victim 2 and her minor child. This amount is slightly less than in the government's original request and includes only those legal fees paid by Victim 1 relating to the "investigation" and "proceedings" in this case. *See* 18 U.S.C. §§ 2248, 2259, 2264, and 2327.

<u>Imposition of a Fine</u>

The United States further reiterates its request that the Court order Defendant to pay a $250,000 fine. Such a fine is reasonable and consistent with this District's precedent. A fine is even required under the Guidelines when, as is the case here, Defendant has the resources and ability to pay the requested fine.

Defendant's anecdotal assertion that a fine in the amount requested is unprecedented in this District is simply mistaken. In the last five years alone, judges in this District have imposed significant fines solely against individuals, not just corporations. Most similarly to the instant matter, in *United States v. Black*, 4:18-cr-06029-EFS, ECF Nos. 82, 84, the Court imposed a $300,000 fine, less taxes, where the defendant had retirement assets in excess of $1 million in addition to ordering more than $400,000 in restitution. Likewise, in *United States v. Rosier*, 4:17-cr-06011-EFS, ECF No. 88, the Court imposed a $100,000 fine where the defendant's retirement assets also exceeded $1 million, and there was no restitution obligation. Other significant fines include *United States v. Blandi*, 2:19-cr-00161-WFN, ECF No. 34 (imposing a fine of $60,000 in addition to $598,700 in restitution where defendant had substantial assets in excess of $1 million) and *United States v. Bradley*, Case No. 2:20-cr-0034-RMP, ECF No. 81 (imposing a $55,000 fine where no restitution was imposed). The Government's requested fine is certainly not unprecedented, nor is it unwarranted.

The Guidelines <u>require</u> the imposition of a fine in <u>all cases</u>, unless the defendant establishes he is unable to pay. U.S.S.G. § 5E1.2(a) ("[T]he court <u>shall</u> impose a fine

United States' Reply Brief to the Government's Sentencing Memorandum – 4

in all cases, except the defendant establishes he is unable to pay and is not likely to pay any fine.") (emphasis added). Defendant cannot establish an inability to pay a fine.

Defendant places great weight on the fact that "he will never return to the earning capacity he once enjoyed prior to his arrest." ECF No. 177 at 14. The Government agrees that it is unlikely that Defendant will return to making more than $700,000 per year after he is released from prison, but diminished earning capacity is not a persuasive argument against a fine in this case. Rather, the Court should look at the assets available to the Defendant. By his own admission, Defendant has more than $1.2 million in retirement assets. ECF No. 158 at 47. Defendant's retirement savings alone would place him in the 95th-100th percentile of Americans. *See Retirement Savings Percentile Comparison Calculator by Age*, Personal Finance Data, *available at* https://personalfinancedata.com/retirement-account-value-percentile-calculator/; *Average Retirement Savings in the U.S.: $65,000*, August 5, 2022 *available at* https://www.fool.com/research/average-retirement-savings/. Moreover, Defendant has approximately $1 million in equity on his house in Spokane. *Compare* Spokane County Assessor's Website and Parel Look Up, *available at* https://cp.spokanecounty.org/SCOUT/PropertyInformation/Summary.aspx (assessed value of $1,197,00) *with* ECF No. 158 at 46 (outstanding mortgage balance of $272,329). Defendant further admits that his defense trust account will likely have approximately $100,000 at the time of sentencing. ECF No. 177 at 15. Based on these assets alone, Defendant clearly has the ability to pay the fine sought by the Government.

Additionally, Defendant's assets include more than his retirement account and the equity in this home, Defendant holds a 50% ownership interest in a 99-acre orchard in Wenatchee. Although he claims there is a $5,000 monthly mortgage associated with the orchard, the orchard appears profitable based on the documents

United States' Reply Brief to the Government's Sentencing Memorandum – 5

Defendant provided. ECF No. 158 at 47 (indicating significant assets in the orchard's bank account). Defendant cannot claim poverty related to the orchard, while at the same time earning profits from the business associated with that orchard.

Other than claiming that his income will no longer reach the high six-figures and noting two mortgage payments (one related to a profitable orchard), Defendant does not contest that the remaining factors of § 3572(a) and § 5E1.2(d) undoubtedly favor the imposition of a fine. *See* ECF No. 177. The bottom line is the Defendant has substantial assets to pay a fine, a fine is warranted to "to reflect the seriousness of the offense," the imposition of a fine would not burden any dependents or adversely impact his ability to pay restitution, and all remaining equities favor a fine. *See* § 5E1.2(d). The Court should therefore impose a fine in the amount requested by the Government.

## CONCLUSION

The Government recommends the Court sentence Defendant to ninety-six months' incarceration, a total of $25,398.50 in restitution, a $250,000 fine, and three years' supervised release. Such a sentence is sufficient, but not greater than necessary to promote the sentencing factors set forth in 18 U.S.C. § 3553(a).

Respectfully submitted this 20th day of January 2023.

                    Vanessa R. Waldref
                    United States Attorney

                    *s/ Richard R. Barker*
                    Richard R. Barker
                    Patrick J. Cashman
                    Brian M. Donovan
                    Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to counsel of record.

*s/ Richard R. Barker*
Richard R. Barker
Assistant United States Attorney
